# EXHIBIT 1

| | |
|---|---|
| DISTRICT COURT<br>DOUGLAS COUNTY, COLORADO<br>4000 JUSTICE WAY<br>CASTLE ROCK, COLORADO  80109<br><br>**PLAINTIFFS:**  DOUGLAS COUNTY FEDERATION, DEBORAH HINCHEY, CHRISTINA KAVAS THORSEN, SARAH STAEBELL, SUSAN ARCHIBALD, SCOTT T. DAHM, MICHAEL D. HITCHINGHAM<br><br>v.<br><br>**DEFENDANT:**  DOUGLAS COUNTY SCHOOL DISTRICT RE-1 | <span style="color:red">EFILED Document<br>CO Douglas County District Court 18th JD<br>Filing Date: February 15, 2013 4:54 PM<br>Filing ID: 49563911<br>Review Clerk: Tanja Gorenc</span><br><br>**DATE FILED:** February 15, 2013<br>**CASE NUMBER:** 2013CV30181<br><br>COURT USE ONLY |
| Attorneys for Plaintiffs:<br>Joseph M. Goldhammer, Atty. Reg. # 5761<br>Andrew H. Turner, Atty. Reg. # 43869<br>**Buescher, Goldhamer, Kelman, & Perera, P.C.**<br>600 Grant Street, Suite 450<br>Denver, CO  80203<br>Phone Number: 303.333.7751<br>Fax Number: 303.333.7758<br>jgoldhammer@laborlawdenver.com<br>aturner@laborlawdenver.com | Case Number:<br><br><br><br>Ctrm/Div: |

**DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT**

1.  **This cover sheet shall be filed with each pleading containing an initial claim for relief in every district court civil (CV) case, and shall be served on all parties along with the pleading.**  It shall not be filed in Domestic Relations (DR), Probate (PR), Water (CW), Juvenile (JA, JR, JD, JV), or Mental Health (MH) cases. Failure to file this cover sheet is not a jurisdictional defect in the pleading but may result in a clerk's show cause order requiring its filing.

2.  **Check one of the following:**

    ☐ This case is governed by Chief Justice Directive ("CJD") 11-02 and the "Colorado Civil Access Pilot Project Rules Applicable to Business Actions in District Court" because:

    -   The case is filed within the period of January 1, 2012 through December 31, 2013; *AND*

    -   The case is filed in a Pilot Project participating jurisdiction (Adams County, Arapahoe County, Denver County, Gilpin County, or Jefferson County); *AND*

    -   The case is a "Business Action" as defined in CJD 11-02, Amended Appendix A for inclusion in the Pilot Project.

    ☒ This case is not governed by the Colorado Civil Access Pilot Project Rules.

NOTE: *Cases subject to the Colorado Civil Access Pilot Project must be governed by the Rules in CJD 11-02 (available at http://www.courts.state.co.us/Courts/Supreme_Court/Directives/Index.cfm). The presiding judge will review Item 2 for accuracy. The designation on this initial Cover Sheet will control unless the Court orders otherwise.*

**3. If this case is not governed by the Colorado Civil Access Pilot Project Rules as indicated in Item 2, check the following:**

❑This case is governed by C.R.C.P. 16.1 because:

- The case is not a class action, forcible entry and detainer, C.R.C.P. 106, C.R.C.P. 120, or other similar expedited proceeding; *AND*

- A monetary judgment over $100,000 is not sought by any party against any other single party. This amount includes attorney fees, penalties, and punitive damages; it excludes interest and costs, as well as the value of any equitable relief sought.

☒This case is not governed by C.R.C.P. 16.1 because (check ALL boxes that apply):

☒The case is a class action, forcible entry and detainer, C.R.C.P. 106, C.R.C.P. 120, or other similar expedited proceeding.

❑A monetary judgment over $100,000 is sought by any party against any other single party. This amount includes attorney fees, penalties, and punitive damages; it excludes interest and costs, as well as the value of any equitable relief sought.

*NOTE: In any case to which C.R.C.P. 16.1 does not apply, the parties may elect to use the simplified procedure by separately filing a Stipulation to be governed by the rule within 35 days of the at-issue date. See C.R.C.P. 16.1(b)(1) (re: case type) and C.R.C.P. 16.1(e) (re: amount in controversy). In any case to which C.R.C.P. 16.1 applies, the parties may opt out of the rule by separately filing a Notice to Elect Exclusion (JDF 602) within 45 days of the at-issue date. See C.R.C.P. 16.1(d).*

❑A Stipulation or Notice with respect to C.R.C.P. 16.1 has been separately filed with the Court, indicating:

❑C.R.C.P. 16.1 applies to this case.

❑C.R.C.P. 16.1 does not apply to this case.

**4.** ❑This party makes a **Jury Demand** at this time and pays the requisite fee. See C.R.C.P. 38. (Checking this box is optional.)

Date: February 15, 2013                    "Electronically Filed"
                                           /S/ ANDREW H. TURNER
                                           Signature of Attorney for Party

| DISTRICT COURT<br>DOUGLAS COUNTY, COLORADO<br>4000 JUSTICE WAY<br>CASTLE ROCK, COLORADO 80109<br><br>**PLAINTIFFS:** DOUGLAS COUNTY FEDERATION, DEBORAH HINCHEY, CHRISTINA KAVAS THORSEN, SARAH STAEBELL, SUSAN ARCHIBALD, SCOTT T. DAHM, MICHAEL D. HITCHINGHAM<br><br>**v.**<br><br>**DEFENDANT:** DOUGLAS COUNTY SCHOOL DISTRICT RE-1 | EFILED Document<br>CO Douglas County District Court 18th Judicial Dist.<br>Filing Date: February 15, 2013 2:34 PM MST<br>Filing ID: 49563911<br>Review Clerk: Tanja Gorenc<br><br>DATE FILED: February 15, 2013<br>CASE NUMBER: 2013CV30181<br><br><br>COURT USE ONLY |
|---|---|
| Attorneys for Plaintiffs:<br>Joseph M. Goldhammer, Atty. Reg. # 5761<br>Andrew H. Turner, Atty. Reg. # 43869<br>**BUESCHER, GOLDHAMER, KELMAN, & PERERA, P.C.**<br>600 Grant Street, Suite 450<br>Denver, CO 80203<br>Phone Number: 303.333.7751<br>Fax Number: 303.333.7758<br>jgoldhammer@laborlawdenver.com<br>aturner@laborlawdenver.com | Case Number:<br><br><br><br><br>Ctrm/Div: |
| **DISTRICT COURT CIVIL SUMMONS** ||

**TO THE ABOVE NAMED DEFENDANT:** DOUGLAS COUNTY SCHOOL DISTRICT, RE-1, c/o Elizabeth Fagen, Superintendent, 620 Wilcox St., Castle Rock, CO 80104.

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this Court an answer or other response to the attached Complaint. If service of the Summons and Complaint was made upon you within the State of Colorado, you are required to file your answer or other response within 21 days after such service upon you. If service of the Summons and Complaint was made upon you outside of the State of Colorado, you are required to file your answer or other response within 35 days after such service upon you. Your answer or counterclaim must be accompanied with the applicable filing fee.

If you fail to file your answer or other response to the Complaint in writing within the applicable time period, the Court may enter judgment by default against you for the relief demanded in the Complaint without further notice.

JDF 600   R12/07   DISTRICT COURT CIVIL SUMMONS

Dated: February 15, 2013

*S/ ANDREW H. Turner*
Issued by Attorney Andrew H. Turner

*S/ ANDREW H. Turner*
Signature by Attorney Andrew H. Turner for Plaintiff

BUESCHER, GOLDHAMMER, KELMAN & PERERA, P.C.
600 Grant St. – Suite 450
Denver, CO 80203
303.333.7751
Plaintiff's Phone Number

**This Summons is issued pursuant to Rule 4, C.R.C.P., as amended. A copy of the Complaint must be served with this Summons. This form should not be used where service by publication is desired.**

JDF 600   R12/07   DISTRICT COURT CIVIL SUMMONS

DISTRICT COURT
DOUGLAS COUNTY, COLORADO
4000 JUSTICE WAY
CASTLE ROCK, COLORADO  80109

**PLAINTIFFS:** DOUGLAS COUNTY FEDERATION, DEBORAH HINCHEY, CHRISTINA KAVAS THORSEN, SARAH STAEBELL, SUSAN ARCHIBALD, SCOTT T. DAHM, MICHAEL D. HITCHINGHAM

**v.**

**DEFENDANT:** DOUGLAS COUNTY SCHOOL DISTRICT RE-1

EFILED Document
CO Douglas County District Court 18th JD
DATE FILED: February 15, 2013 4:34 PM
Filing CASE NUMBER: 2013CV30581
Filing ID: 49563911
Review Clerk: Tanja Gorenc

COURT USE ONLY

Attorneys for Plaintiffs:
Joseph M. Goldhammer, Atty. Reg. # 5761
Andrew H. Turner, Atty. Reg. # 43869
**Buescher, Goldhamer, Kelman, & Perera, P.C.**
600 Grant Street, Suite 450
Denver, CO  80203
Phone Number: 303.333.7751
Fax Number: 303.333.7758
jgoldhammer@laborlawdenver.com
aturner@laborlawdenver.com

Case Number:

Ctrm/Div:

**CLASS ACTION COMPLAINT**

Plaintiffs file this Complaint as follows:

**STATEMENT OF THE CASE**

1.  This case arises from the Defendant School District's employment of the Plaintiffs, who are members of the Douglas County Federation ("DCF" or "Federation"), a labor union affiliated with the American Federation of Teachers, AFL-CIO.  Defendant and the Plaintiff Federation had a collective bargaining relationship from 1972 through September 5, 2012, when Defendant unilaterally declared a cessation of negotiations with the Federation and the latest contract expired without renewal.

2.  Defendant recognized DCF as the exclusive collective bargaining representative of two distinct groups of Douglas County School District employees – the teachers and the classified employees.  The classified employees' bargaining unit included custodians, secretaries, nutrition services workers, childcare workers, educational assistants, and facilities maintenance personnel employed by the Douglas County

School District.  During their collective bargaining relationship, the parties negotiated thirty-three successive collective bargaining agreements in the teachers unit.

3.  Defendant and DCF were party to two collective bargaining agreements effective from July 1, 2011through June 30, 2012 ("2011-2012 agreements").  One agreement defined the terms and conditions of employment applicable to Douglas County School District teachers ("DCF Teachers") while the other defined the terms and conditions of employment applicable to classified employees ("DCF Classified Employees").   All individual Plaintiffs in this action worked under the 2011-2012 agreement between Defendant and the DCF Teachers.  Following the June 30, 2012 expiration of the two collective bargaining agreements between Defendant and DCF, no successor agreements were reached.

4.  Following Defendant's September 5, 2012 cessation of negotiations with the Federation, Defendant has discontinued and disregarded disability benefits vested under the 2011-2012 agreement, in violation of the Colorado Constitution.

5.  Following Defendant's September 5, 2012 cessation of negotiations with the Federation, Defendant has refused to meet with the Federation to develop policies regarding teachers displaced by downsizing, as required by statute.  Defendant has implemented teacher displacement procedures unilaterally.   Defendant has violated the statutory rights of nonprobationary teachers displaced by downsizing.

6.  This lawsuit arises from the foregoing violations of Colorado law.

7.  The Plaintiff Douglas County Federation brings all claims on behalf of each of its members affected by these violations of law.  Plaintiffs Deborah Hinchey, Christina Kavas Thorsen, Sarah Staebell present their claims as representatives of a putative class of all similarly situated teachers employed by the Douglas County School District.

## THE PARTIES

8.  The Douglas County Federation ("DCF" or "Federation") is an unincorporated association and is a labor organization representing teachers and other employees in the teaching and allied professions.  In this action, DCF acts in a representative capacity for all of its members who are subject to the policies challenged in this lawsuit. The DCF is affiliated with the American Federation of Teachers, a national labor organization with approximately 1.5 million members nationwide.

9.   Plaintiff Deborah Hinchey is a middle school teacher employed by Defendant. She has taught in the Douglas County School District for eighteen years.  She is a member of the DCF.  She worked under the 2011-2012 agreement between Defendant and the DCF Teachers.

10. Plaintiff Christina Kavas Thorsen is a high school teacher employed by

Defendant. She has taught in the Douglas County School District for six years. She is a member of the DCF. She worked under the 2011-2012 agreement between Defendant and the DCF Teachers.

11. Plaintiff Sarah Staebell is an elementary school teacher employed by Defendant. She has taught in the Douglas County School District since 1999. She is a member of the DCF. She worked under the 2011-2012 agreement between Defendant and the DCF Teachers.

12. Plaintiff Susan Archibald is a certified kindergarten through sixth grade teacher employed by Defendant. She has taught in the Douglas County School District for eight years. She is a member of the DCF. She worked under the 2011-2012 agreement between Defendant and the DCF Teachers. She is a non-probationary teacher.

13. Plaintiff Scott T. Dahm, is a certified kindergarten through sixth grade teacher employed by Defendant. He has taught in the Douglas County School District for nine years. He is a member of the DCF. He worked under the 2011-2012 agreement between Defendant and the DCF Teachers. He is a non-probationary teacher.

14. Plaintiff Michael D. Hitchingham, is a certified secondary level mathematics teacher employed by Defendant. He has taught in the Douglas County School District for seven years. He is a member of the DCF. He worked under the 2011-2012 agreement between Defendant and the DCF Teachers He is a non-probationary teacher.

15. The Defendant Douglas County School District is a school district organized under the laws of Colorado. The Defendant School District was formed in 1958 through the consolidation of 17 smaller school districts. The Defendant School District currently employs each of the individual Plaintiffs.

## STATEMENT OF FACTS

16. Defendant and the Plaintiff DCF had a collective bargaining relationship from 1972 through September 5, 2012, when Defendant declared a cessation of negotiations with the Federation.

17. From 1972 through September 5, 2012, Defendant recognized DCF as the collective bargaining representative of Douglas County School District teachers. During that time, the parties negotiated thirty-three successive collective bargaining agreements.

18. From 2005 through September 5, 2012 Defendant recognized DCF as the exclusive collective bargaining representative of Douglas County School District classified employees.

19. Defendant and DCF were party to two collective bargaining agreements effective

3

from July 1, 2011through June 30, 2012 ("2011-2012 agreements").  One agreement defined the terms and conditions of employment applicable to the DCF Teachers, while the other defined the terms and conditions of employment applicable to the DCF Classified Employees.

20. All individual Plaintiffs in this action worked under the 2011-2012 agreement between Defendant and the DCF Teachers.

21. Following the June 30, 2012 expiration of the 2011-2012 agreements, no new agreements  between Defendant and DCF were reached.

22. On September 5, 2012, Defendant unilaterally ceased negotiations with the Federation.

**TERMINATION OF SICK LEAVE BANK BENEFIT - DCF TEACHERS**

23. The Defendant School District executed its first collective bargaining agreement with the DCF in 1979.

24. The 1979-1980 collective bargaining agreement between the DCF Teachers and the Defendant School District established a shared "sick leave bank" disability benefit which provided additional sick leave to DCF Teachers who exhausted their own accrued sick leave. This bank consisted of sick days contributed to the bank by DCF Teachers.

25. The successor collective bargaining agreements between the DCF Teachers and the Defendant School District, ratified between 1980 and 2011, similarly provided a sick leave bank benefit, funded with sick days contributed to the bank by DCF Teachers.

26. Between 1979 and June 30, 2000, the sick leave bank provisions in the parties' collective bargaining agreements specified that any days remaining in the sick leave bank at the end of a school year would not be available for use during subsequent school years.

27. The July 1, 2000 – June 30, 2002 collective bargaining agreement between the DCF Teachers and the Defendant School District expressly changed the 1979-June 30, 2000 language limiting carryover and accrual of sick days in the sick leave bank, providing instead that "[a]ny days remaining in the sick leave bank at the end of a school year will be available for use during any subsequent school year."  Successor collective bargaining agreements governing the time period between July 1, 2000 and June 30, 2012 restated this understanding that days remaining in the sick leave bank at the conclusion of a school year would be carried over for use in subsequent school years.

28. The 2011-2012 collective bargaining agreement between the DCF Teachers and the Defendant School District has been attached to this Complaint as Plaintiffs' Exhibit 1.  That 2011-2012 agreement discussed the sick leave bank benefit, providing in

pertinent part:

H.    SICK LEAVE BANK. The licensed employee sick leave bank was created by reducing licensed employees' sick leave yearly accrual by one (1) day. Prior to the creation of the sick leave bank, licensed employees accrued ten (10) such days per year. After the creation of the sick leave bank, they accrued nine (9) days per year.

The one (1) day deducted annually from each licensed employee is the basis of the sick leave bank and the amount of the days available for use by the licensed employees. When the balance in the sick leave bank is exhausted, every licensed employee will be assessed one (1) additional day. If the employee does not have one (1) day of sick leave to be assessed, the assessment will occur at the beginning of the next school year. Any days remaining in the sick leave bank at the end of a school year will be available for use during any subsequent school year.

1. Benefits of the sick leave bank shall be used only when a teacher is deemed unable to work due to illness or disability as defined in policy and procedure established jointly by the District and the DCF. Benefits do not cover illness or disability of family members.

2. Teachers who have exhausted their accumulated sick and personal leave and are unable to work due to illness or disability may apply to the sick leave bank for extended sick leave coverage.

3. A minimum of twelve (12) days of any medical or disability-related absence will not be covered by the sick leave bank, but must be covered by the teacher's own accumulated sick leave and/or personal leave. If the teacher does not have twelve (12) days of accumulated leave, his/her annual salary will be reduced by the teacher's per diem rate for the portion of the twelve (12) days not covered by such accumulated leave.

The first day of absence not covered by the employee's accumulated leave will not be covered by the sick leave bank, but will result in the teacher's salary being reduced by one day's per diem rate of pay.

4. Initial application for sick leave bank benefits will require medical certification and shall be made in writing on the form prescribed by the Office of Human Resources. Any application to extend sick leave bank benefits beyond the initial request will require updated medical verification of an employee's inability to return to work. Such application for continuation of sick leave bank benefits for the same illness will not require any days without pay.

5. Additional medical verification may be required for any leave request that

exceeds standards for a particular medical condition. The District reserves the right to request verification from a physician who specializes in the particular medical condition.

6. A maximum of forty-eight (48) days may be withdrawn by any full-time teacher, or on a prorated basis for less than full-time, during any school year, or for any illness or disability which bridges two (2) school years. If a teacher's sick leave bank benefits bridge two school years, the nine (9) sick and two (2) personal leave days provided by this agreement at the start of a new school year, may not be used consecutively with sick leave bank benefits.

7 Any subsequent request for sick leave bank benefits for a new and distinct illness or disability during the course of any school year must follow the same guidelines and procedures described above with the exception that only six (6) days will not be covered by the sick leave bank and will result in the teacher's salary being reduced at the rate of his/her per diem pay.

8. The District is authorized to seek independent medical opinions at any time to determine the nature and extent of the teacher's disability. The authority to grant benefits and develop guidelines rests with the District, operating through the Office of Human Resources, and the President of the DCF or his/her designee.

9. Teachers who are unable to return to work due to a chronic illness or disability, and have exhausted their sick leave bank benefit. may apply for long-term disability benefits.

10. Decisions regarding the granting of sick leave benefits are final and not subject to appeal or the grievance procedure, whether in contract or policy.

11. The Office of Human Resources shall maintain all records and shall make forms, guidelines and procedures available to employees.

29. As specified in the agreement quoted above, the DCF Teachers contributed their own sick days to the shared sick leave bank so that they and their fellow teachers could gain access to additional sick leave in the event of a serious, extended illness. The DCF Teachers made these contributions of their own sick days each school year between 1979 and 2012.

30. In June of 2012, the balance of unused, accrued sick days in the DCF Teachers' sick leave bank was approximately 10,000 days.

31. In approximately June of 2012, Douglas County School District officials estimated

the value of the accrued sick days in the DCF Teachers' sick leave bank at approximately $850,000.00.

32. The 2011-2012 collective bargaining agreement between the DCF Teachers and the Defendant School Board expired on June 30, 2012. The parties did not reach a new collective bargaining agreement after the expiration of the 2011-2012 agreement.

33. In August of 2012, the Defendant announced its intention to terminate the sick leave bank benefit effective October 1, 2012, replacing it with a short term disability insurance plan provided through the Standard Insurance Company, a subsidiary of StanCorp Financial Group, Inc. Neither the Federation nor the individual Plaintiffs agreed to this change. Defendant acted unilaterally.

34. On October 1, 2012, the Defendant School District ceased to honor the sick leave bank created by DCF Teachers. Neither the Federation nor the individual Plaintiffs agreed to this change. Defendant acted unilaterally. Defendant has made no refund of sick days donated to the bank by DCF Teachers. Defendant has made no refund of the cash value of the sick days donated to the bank by DCF Teachers.

35. A document entitled "Buy-up Short Term Disability Insurance: Answers to Your Questions About Coverage from Standard Insurance Company for the Employees of Douglas County School District" and published by the Standard Insurance Company is attached to this Complaint as Plaintiffs' Exhibit 2.

36. The Standard Insurance Company's Group Short Term Disability Insurance Policy issued to the Douglas County School District effective October 1, 2012 is attached to this complaint as Plaintiffs' Exhibit 3.

37. The Short-Term Disability Insurance Plan ("STDI plan"), with which Defendant replaced the sick leave bank, provides a benefit inferior to the sick leave bank in several respects.

38. The Defendant's STDI plan offers employees coverage at two levels. The base coverage level provides employees with 50% of predisability earnings during a qualifying disability. The Defendant's STDI plan also offers "buy-up" coverage which provides a qualifying employee with 70% of predisability earnings during a qualifying disability. Pl. Ex. 2 at 6; Pl. Ex. 3 at 2-3.

39. While the sick leave bank maintained the disabled employee's predisability income at 100% during utilization of that benefit, the STDI plan provides the disabled employee with just 50-70% of predisability income during utilization of that benefit.

40. The sick leave bank benefit did not exclude any employee from full participation based upon poor health or other insurability concerns. The STDI plan requires that at least some employees, who wish to be insured for 70% of lost salary, prove good health and insurability to the Standard Insurance Company. Pl. Ex. 2 at 3-5; Pl. Ex. 3 at 4-5.

41. The sick leave bank benefit did not exclude part time employees from participation.  The STDI plan limits participation to teachers regularly working at least 0.5 full time equivalency.  Pl. Ex. 2 at 4; Pl. Ex. 3 at 1.

42. The sick leave bank did not feature an eligibility waiting period delaying an employee's participation in the bank.  The STDI plan features an eligibility waiting period which delays employees' participation in the plan.  Pl. Ex. 3 at 1.

43. While the sick leave bank charged employees no premium for coverage, the STDI plan charges employees, who wish to be insured for 70% of lost salary, monthly premiums for participation.  Those employees who elect to be insured for only 50% of lost salary are not charged a monthly premium for participation in the STDI plan.  Pl. Ex. 2 at 10; Pl. Ex. 3 at 2-3.

44. The STDI plan limits the incontestability of insurance where a beneficiary has made a misrepresentation in obtaining or increasing insurance.  Pl. Ex. 3 at 16.  The sick leave bank did not allow for contestability based on any such misrepresentations.

45. The qualification of a particular disability for the utilization of the sick leave bank was determined according to requirements established jointly by the District and the DCF.  The qualification of a disability for the utilization of the STDI plan is determined unilaterally by the Standard Insurance Group.  Pl. Ex. 3 at 14-15.

46. The sick leave bank did not feature a cap on the monetary value of benefit payments.  The STDI plan features a monetary cap on the amount of weekly benefit payments.  Pl. Ex. 2 at 6; Pl. Ex. 3 at 1-2.

47. The sick leave bank provided continuation of lost earnings during disability without delay.  The STDI plan provides for payment of benefits within sixty days after a beneficiary satisfies its proof of loss requirements.  Pl. Ex. 3 at 14.

48. The STDI plan provides for reduction of benefits payable in the event a beneficiary receives money from various other enumerated sources including worker's compensation benefits, social security benefits and/or unemployment benefits, during disability precluding employment by the District.  The sick leave bank has no such benefit reduction provisions.  Pl. Ex. 2 at 7-9; Pl. Ex. 3 at 9-11.

49. The STDI plan provides for subrogation of benefits in the event a beneficiary's disability is caused by a third party.  The STDI Plan requires beneficiaries to preserve legal claims which may lie against any third party, and entitles the Standard Insurance Company to recover litigation costs and attorney's fees from the beneficiary's disability benefits.  The sick leave bank has no such subrogation provisions.  Pl. Ex. 2 at 8; Pl. Ex. 3 at 10-12.

50. The STDI plan provides for reduction or termination of benefits in the event that a

beneficiary earns significant income from other employment, during a disability precluding employment by the District.  The sick leave bank has no such reduction or termination provisions.  Pl. Ex. 2 at ; Pl. Ex. 3 at 7-11.

51. While utilization of the sick leave bank did not have the effect of decreasing an employee's  "salary" as defined by Colo.Rev.Stat. § 24-51-101(42) and "highest average salary" as defined by Colo.Rev.Stat. § 24-51-101(25), for the purposes of the PERA retirement system, utilization of the STDI plan does have these adverse effects on the PERA retirement benefits of employees.

52. The STDI plan contains coverage exclusions, limitations, reductions and terminating events which were inapplicable to the sick leave bank benefit.

53. The STDI plan excludes from coverage any disability resulting in whole or in part from a workplace injury or accident.  The sick leave bank benefit featured no such exclusion. Pl. Ex. 2 at 9; Pl. Ex. 3 at 12-13.

54. The STDI plan provides for the termination of benefits upon the beneficiary's qualification for benefits under any other disability plan, including any long-term disability plan.  The sick leave bank benefit did not provide for termination of benefits under such circumstances.  Pl. Ex. 2 at 9.

55. While the sick leave bank was a collectively bargained benefit which could not be terminated unilaterally, the STDI plan permits unilateral termination of the Group Policy or of coverage for any class or group of plan members at any time upon written notice from the Defendant.

56. While the sick leave bank was a collectively bargained benefit which could not be changed unilaterally, the STDI plan permits changes on any scale, whenever any change or clarification in law or governmental regulation affects the insurer's obligations or with the Defendant's consent.

57.   Plaintiff Deborah Hinchey is a middle school teacher currently employed by Defendant.  She has taught in the Douglas County School District for eighteen years. She is a member of DCF.

58. Plaintiff Hinchey has contributed sick days to the sick leave bank.

59. Plaintiff Hinchey worked under the 2011-2012 Agreement.

60. Plaintiff Hinchey suffered a significant illness during 2012.  Plaintiff Hinchey began a lengthy sick leave on November 26, 2012.  She would have qualified to use her accrued sick leave, followed by the sick leave bank benefit, had the Defendant School District not discontinued the sick leave bank benefit and imposed the STDI plan in its place.

61. Defendant required Plaintiff Hinchey to utilize the STDI plan during her sick leave.  Defendant denied Plaintiff Hinchey's request to utilize the sick leave bank benefit.

62. Because Plaintiff Hinchey was forced to utilize the STDI plan, she received non-payroll benefit payments, rather than the salary she would have received under the sick leave bank system.  This has the effect of reducing both Ms. Hinchey's "salary" as defined by Colo. Rev. Stat. § 24-51-101(42) and her "highest average salary" as defined by Colo. Rev. Stat. § 24-51-101(25), for the purposes of the PERA retirement system.  This has the effect of reducing Ms. Hinchey's PERA retirement benefits.

63. Because Plaintiff Hinchey was forced to utilize the STDI plan, she has suffered and will continue to suffer significant harm in the form of reduced PERA retirement benefits.

64. Plaintiff Christina Kavas Thorsen is a high school teacher currently employed by Defendant.  She has taught in the Douglas County School District for six years.  She is a member of DCF.

65. Plantiff Kavas Thorsen has contributed sick days to the sick leave bank.

66. Plaintiff Kavas Thorsen worked under the 2011-2012 agreement.

67. Plaintiff Kavas Thorsen suffered a significant illness during 2012.  Plaintiff Kavas Thorsen began a lengthy sick leave on November 27, 2012.  She would have qualified to use her accrued sick leave, followed by the sick leave bank benefit, had the Defendant School District not discontinued the sick leave bank benefit and imposed the STDI plan in its place.

68. Defendant has rejected Plaintiff Kavas Thorsen's request to utilize the sick leave bank benefit.

69. Because Plaintiff Kavas Thorsen was forced to utilize the STDI plan, rather than the sick leave bank benefit, she was paid at 70% of salary during her sick leave.  Had she been permitted to utilize the sick leave bank benefit, Plaintiff Kavas Thorsen would have been paid at 100% of salary during her sick leave.

70. Because Plaintiff Kavas Thorsen was forced to utilize the STDI plan rather than the sick leave bank benefit, she was required to pay premiums for STDI plan coverage.

71. Plaintiff Kavas Thorsen has suffered and will continue to suffer significant harm in the form of lost earnings and premiums paid as a result of the Defendant's unilateral discontinuation of the sick leave bank benefit.

72. Plaintiff Sarah Staebell is an elementary school teacher employed by Defendant. She has taught in the Douglas County School District since 1999.  She is a member of

DCF.

73. Plaintiff Staebell has contributed sick days to the sick leave bank.

74.  Plaintiff Staebell worked under the 2011-2012 Agreement.

75. Plaintiff Staebell suffered a significant illness during 2012.  She began a lengthy sick leave on December 6, 2012.  Plaintiff Staebell would have qualified to use her accrued sick leave, followed by the sick leave bank benefit, had the Defendant School District not discontinued the sick leave bank benefit and imposed the STDI plan in its place.

76. Defendant has rejected Plaintiff Staebell's request to utilize the sick leave bank benefit.

77. Because Plaintiff Staebell was forced to utilize the STDI plan, rather than the sick leave bank benefit, she was paid at 70% of salary during her sick leave.  Had she been permitted to utilize the sick leave bank benefit, Plaintiff Staebell would have been paid at 100% of salary during her sick leave.

78. Because Plaintiff Staebell was forced to utilize the STDI plan rather than the sick leave bank benefit, she was required to pay premiums for STDI plan coverage.

79. Plaintiff Staebell has suffered and will continue to suffer significant harm in the form of lost earnings and premiums paid as a result of the Defendant's unilateral discontinuation of the sick leave bank benefit.

**TERMINATION OF SICK LEAVE BANK BENEFIT - DCF CLASSIFIED EMPLOYEES**

80. The 2011-2012 collective bargaining agreement between the DCF Classified Employees and the Defendant School District has been attached to this Complaint as Plaintiffs' Exhibit 4.

81. That 2011-2012 agreement provided a shared "sick leave bank" benefit, providing in pertinent part:

B. Sick Leave Bank

The District will provide a sick leave bank to provide limited income continuation for employees who have an extended illness or disability, subject to the following conditions:

1. Eligibility. Sick leave bank benefits are only available to employees who are eligible to earn sick leave. Additionally, the employee must have been an active employee for a period of ninety (90) calendar days. After the ninety (90) calendar day probationary period, the employee will be eligible to use up to and including

twenty (20) sick leave bank days. After employment of one hundred twenty (120) calendar days, the employee will be eligible to use up to and including fifty-one (51) sick leave bank days.

2. Employee Must Be Disabled. Sick leave bank benefits are only available to cover absence due to the illness and disability of the eligible employee.

3. Application and Medical Verification. Employees who have exhausted their accumulated sick and personal leave, and who are unable to work due to illness or disability may apply for sick leave bank benefits. The initial application for sick leave bank benefits will require medical verification substantiating the illness or disability on the prescribed District form. Any application to extend sick leave bank benefits beyond the initial request will require updated medical verification of the employee's inability to return to work. Additional medical verification may be required by the District for any leave request that exceeds standards for a particular medical condition. The District reserves the right to request verification from a physician who specializes in the particular medical condition of the employee. The District may seek independent medical opinions at any time to determine the nature and extent of the employee's disability or long-term illness. All medical reports called for in this section should be submitted to the Human Resources Department or its designee.

4. Not Covered by the Bank. The first ten (10) days of any episode of illness or disability will not be covered by the sick leave bank. Rather, nine (9) days of such absence must be covered by the employee's own accumulated sick leave, personal leave, vacation, or absence without pay. At least one (1) day of this period will be without pay. Additionally, sick leave bank benefits are not available to employees who are receiving disability or worker's compensation payments.

5. Multiple Requests. Each succeeding request for sick leave bank benefits from an employee during each school year will require that the first day of leave will not be covered by the bank, but must be covered by absence without pay unless the succeeding applications are for a continuation of an illness or disability for which benefits of the bank were previously provided.

6. Maximum Benefits. An employee is eligible for a maximum of fifty-one (51) scheduled work days of sick leave bank benefits during any one (1) school year, or for any illness or disability which bridges two (2) school years. For employees who work less than a 40-hour week, the maximum benefit will be pro rated on the same basis that their normal work schedule compares to a 40-hour work week.

7. Program Administration. The District Benefits Office will administer the sick leave bank program, will determine operating guidelines and consider requests for benefits. Decisions regarding the granting of sick leave bank benefits are final

and neither subject to appeal nor to challenge through the grievance procedure set forth in this Agreement, nor the procedure in Board Policy.

8. Records. The District Benefits Office shall maintain all records and make forms, guidelines and procedures available to employees.

9. Long-Term Disability. Employees who are unable to return to work due to a long- term illness or disability, and who have exhausted their sick leave bank benefits may apply for long-term disability benefits.

Pl. Ex. 4 at 31-32.

82. The 2011-2012 collective bargaining agreement between the DCF Classified Employees and the Defendant School Board expired on June 30, 2012.  No new collective bargaining agreement was reached after the expiration of the 2011-2012 agreement.

83. On October 1, 2012, the Defendant School District unilaterally ceased to honor the sick leave bank benefit negotiated with the DCF Classified Employees.

84. Effective October 1, 2012, Defendant replaced the sick leave bank benefit with a short term disability insurance plan provided through the Standard Insurance Company, a subsidiary of StanCorp Financial Group, Inc.  The Federation did not agree to this change.  Defendant acted unilaterally.

85. The Short-Term Disability Insurance Plan ("STDI plan") with which Defendant replaced the sick leave bank previously negotiated with DCF Classified Employees, is the same STDI plan Defendant now provides to DCF Teachers.

86. The STDI plan, with which Defendant replaced the   sick leave bank previously negotiated with DCF Classified Employees, is described by Plaintiffs' Exhibits 2 and 3.

87. The STDI plan, with which Defendant replaced the sick leave bank, provides a benefit which is inferior to the sick leave bank benefit for the reasons recited in ¶¶ 39, 40, 42, 43, 44, 46, 47, 49, 51, 52 55 and 56 *supra*.

88. The STDI plan with which Defendant replaced the DCF Classified Employees' sick leave bank benefit is also inferior to the sick leave bank benefit because DCF Classified employees were not required to contribute their own sick days in order to access the sick leave bank benefit.  Classified employees are required to contribute one accrued sick leave day per year in order to participate in the STDI plan.

**DISPLACEMENT OF NONPROBATIONARY TEACHERS**

89. During 2011 and 2012, the Douglas County School District faced funding limitations and a decreased student population, which necessitated staff reductions.

Numerous schools were called upon to eliminate teachers during this time period. Numerous teachers were displaced as a result of drops in enrollment, reductions in programs and/or reductions in building staff.

90. Teachers eliminated in this downsizing process, were invited to apply for open positions in the District, which corresponded to their training and certification.

91. By statute, active, nonprobationary teachers "displaced as a result of drop in enrollment; turnaround; phase-out; reduction in program; or reduction in building, including closure, consolidation or reconstitution" must be placed in a "priority hiring pool, which priority hiring pool shall ensure the nonprobationary teacher a first opportunity to interview for available positions for which he or she is qualified in a school district." Colo. Rev. Stat. § 22-63-202(2)(c.5).

92. Plaintiff Susan Archibald is a certified kindergarten through sixth grade teacher employed by Defendant. She has taught in the Douglas County School District for eight years. She is a nonprobationary teacher.

93. Plaintiff Archibald was an active, nonprobationary teacher during the 2011-2012 school year.

94. Plaintiff Archibald was certified as a kindergarten through sixth grade teacher throughout 2012.

95. Early in 2012, Plaintiff Archibald was notified that she was displaced from her position as an elementary school classroom teacher, as a result of downsizing or a reduction in her building.

96. In the Spring of 2012, Plaintiff Archibald applied for more than thirty-five open positions, within the Defendant School District, for which she was qualified.

97. Plaintiff Archibald was given an opportunity to interview for only approximately four of the more than thirty-five available positions for which she applied.

98. Plaintiff Scott T. Dahm is a certified kindergarten through sixth grade teacher employed by Defendant. He has taught in the Douglas County School District for nine years. He is a nonprobationary teacher.

99. Plaintiff Dahm was an active, nonprobationary teacher during the 2011-2012 school year.

100.    Plaintiff Dahm was certified as a kindergarten through sixth grade teacher throughout 2012.

101.    Early in 2012, Plaintiff Dahm was notified that he was displaced from his position as an elementary school classroom teacher, as a result of downsizing or a

reduction in his building.

102.    In the Spring of 2012, Plaintiff Dahm applied for approximately one hundred forty-seven open positions, within the Defendant School District, for which he was qualified.

103.    Plaintiff Dahm was given an opportunity to interview for only fourteen of the approximately one hundred forty-seven available positions for which he applied.

104.    Plaintiff Michael D. Hitchingham, is a certified secondary level mathematics teacher employed by Defendant.  He has taught in the Douglas County School District for seven years.  He is a non-probationary teacher.

105.    Plaintiff Hitchingham was an active, nonprobationary teacher during the 2011-2012 school year.

106.    Plaintiff Hitchingham was certified as a secondary level mathematics teacher throughout 2012.

107.    Early in 2012, Plaintiff Hitchingham was notified that he was displaced from his position as a high school classroom teacher, as a result of downsizing or a reduction in his building.

108.    In the Spring of 2012, Plaintiff Hitchingham applied for ten open positions, within the Defendant School District, for which he was qualified.

109.    Plaintiff Hitchingham was given an opportunity to interview for only one of the ten available positions for which he applied.

110.    As it became aware of these problems in placement of displaced nonprobationary teachers, DCF wished to discuss improving that process with the Defendant School District.

111.    By letter dated October 3, 2012, counsel for DCF expressed the Federation's desire to meet regarding teacher displacement policies.  This correspondence is attached to this Complaint as Plaintiffs' Exhibit 5.

112.    By letter dated October 31, 2012, counsel for DCF again expressed the Federation's desire to meet regarding teacher displacement policies.  This correspondence is attached to this Complaint as Plaintiffs' Exhibit 6.

113.    Counsel for the Defendant School District responded by letter dated November 1, 2012 indicating that he would have an opportunity to discuss the Federation's request to meet regarding teacher displacement policies on November 13, 2012.  This correspondence is attached to this Complaint as Plaintiffs' Exhibit 7.

114.    By letter dated November 9, 2012, counsel for DCF reaffirmed the
Federation's desire to meet regarding teacher displacement policies, and asked that he
be advised of the Defendant's response after the November 13, 2012 Board of
Education meeting.  This correspondence is attached to this Complaint as Plaintiffs'
Exhibit 8.

115.    More than three months after the November 13, 2012 Board of Education
meeting, the Defendant School District has still not responded to the Federation's
requests to meet regarding teacher displacement policies.

116.    Teachers such as Plaintiffs Archibald, Dahm and Hitchingham have
suffered harms as a result of the Defendant School District's administration of teacher
displacement.  The DCF seeks to improve this process through consultation with
Defendant.

117.    Defendant refuses to meet with the DCF regarding teacher displacement
policies.

## CLASS ACTION ALLEGATIONS

## DCF TEACHERS' SICK LEAVE BANK – COUNTS I & II

118.    Pursuant to C.R.C.P. 23, Plaintiffs Hinchey, Kavas Thorsen and Staebell
seek to represent a class composed of all Douglas County School District teachers (as
defined by the 2011-2012 DCF Teachers Collective Bargaining Agreement) who utilized
Defendant's STDI plan in conjunction with sick leaves beginning on or after the
Defendant's October 1, 2012 termination of the DCF Teachers' sick leave bank benefit.

119.    Plaintiffs Hinchey, Kavas Thorsen and Staebell seek certification of the
class defined above with respect to Counts I and II, which seek redress for the
termination of the DCF Teachers' sick leave bank.

120.    The proposed class is so numerous that joinder of all members is
impracticable.  The Defendant School District employs approximately three thousand
teachers.  Defendant has superior access to information regarding the number of sick
leaves taken since October 1, 2012 which utilized the STDI plan benefit, and the
number of qualifying sick leaves projected to be taken in each given year as this case
proceeds.

121.    There are questions of law and fact common to the class.  Common
questions include whether the sick leave bank benefit survived the expiration of the
2011-2012 collective bargaining agreement; whether the class members' rights to use
the sick leave bank were substantive rights; whether the class members' rights to use
the sick leave bank benefit were vested; whether Defendant's substitution of the STDI
plan for the sick leave bank was an adverse change which was not balanced by a
corresponding change of a beneficial nature;  whether Defendant's substitution of the

STDI plan for the sick leave bank was actuarially necessary; and whether Defendant's termination of the sick leave bank benefit impermissibly impaired the obligation of contracts in violation of Article II, Section 11 of the Colorado Constitution.

122.    The claims of the representative parties are typical of the claims of the class.  The claim presented by putative class representatives Hinchey, Thorsen and Staebell are typical of those possessed by all members of the proposed class.  The representatives were prejudiced by Defendant's uniform termination of sick leave bank benefits.  This termination was equally applicable to all members of the proposed class, and to the named representatives.

123.    The representative parties will fairly and adequately protect the interests of the class.  The claims of the putative class representatives are in no way antagonistic to those of the members of the absent class.  The representative parties will litigate their claims fully.  The representative parties are represented by counsel experienced in the class action litigation of labor claims.

124.    The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct.  If Defendant's termination of the sick leave bank benefit was unconstitutional, it was unconstitutional as to all members of the proposed class.  If Defendant's termination of the sick leave bank was constitutional, it was constitutional as to all members of the proposed class.  Multiple adjudications of the question can only create confusion.

125.    The Defendant has acted and refused to act on grounds generally applicable to all members of the proposed class, making final injunctive relief appropriate with respect to the proposed class as a whole. Defendant's termination of the sick leave bank benefit was uniformly applicable to all members of the putative class.  Defendant acted on the same grounds with respect to the entire proposed class.

126.    As set forth above, questions of law common and fact common to the class predominate over any questions affecting only individual members.  For reasons of efficiency and judicial economy, the class action vehicle is the superior manner of adjudication in this case.

127.    Plaintiffs are unaware of any members of the putative class who are interested in presenting their claims in a separate action.

128.    Plaintiffs are unaware of any litigation concerning this controversy which has already been commenced by any member of the class.

129.    The concentration of all claims arising from this controversy in this forum is desirable because all claims across this alleged class arose in Douglas County.

130.    No significant difficulties are likely to be encountered in the management

of this class action.  The contours of the class will be easily defined as the class members request sick leaves from Defendant.   Notice will be easily distributed, as Defendant employs, or recently did employ, all members of the putative class.

## CLAIMS FOR RELIEF

## COUNT I:  TERMINATION OF SICK LEAVE BANK BENEFIT – DCF TEACHERS

131.    This count is asserted by Plaintiffs Douglas County Federation of Teachers, Deborah Hinchey, Christina Kavas Thorsen and Sarah Staebell against the Defendant Douglas County School District, RE-1.

132.    Plaintiff DCF asserts this claim on behalf of all of its members affected by the conduct complained of in this count.

133.    Plaintiffs Hinchey, Kavas Thorsen and Staebell assert this claim on behalf of themselves and on behalf of all absent members of the alleged class, as set forth in paragraphs 118-130 *supra*.

134.    Plaintiffs re-allege and  incorporate by reference the factual allegations in paragraphs 23-79 *supra*.

135.    Plaintiffs' rights to utilize the sick leave bank benefit survived the expiration of the 2011-2012 agreement.

136.    Plaintiffs' rights to utilize the sick leave bank benefit are substantive rights.

137.    Plaintiffs' rights to utilize the sick leave bank benefit are vested rights.

138.    Plaintiffs' rights to utilize the sick leave bank benefit were vested when Defendant unilaterally terminated the sick leave bank.

139.    In the alternative, Plaintiffs' rights to utilize the sick leave bank benefit were subject to limited vesting when Defendant unilaterally terminated the sick leave bank. Defendant's substitution of the STDI plan for the sick leave bank was an adverse change which was not balanced by a corresponding change of a beneficial nature. Defendant's substitution of the STDI plan for the sick leave bank was neither actuarially necessary nor did it strengthen or improve the Plaintiffs' benefit plan.

140.     Defendant's termination of the sick leave bank benefit violated Article II, Section 11 of the Colorado Constitution because it impermissibly impaired the obligation of contracts.  *Colo. Const.* Art. II, Section 11 (2013).

141.    Plaintiffs have suffered and continue to suffer substantial damages as a result of Defendant's unlawful conduct.

142.    Plaintiffs are entitled to an award of injunctive relief and back benefits.

## COUNT II: BREACH OF CONTRACT - TERMINATION OF SICK LEAVE BANK BENEFIT – DCF TEACHERS

143.    This count is asserted by Plaintiffs Douglas County Federation of Teachers, Deborah Hinchey, Christina Kavas Thorsen and Sarah Staebell against the Defendant Douglas County School District, RE-1.

144.    Plaintiff DCF asserts this claim on behalf of all of its members affected by the conduct complained of in this count.

145.    Plaintiffs Hinchey, Kavas Thorsen and Staebell assert this claim on behalf of themselves and on behalf of all absent members of the alleged class, as set forth in paragraphs 118-130 *supra*.

146.    Plaintiffs re-allege and  incorporate by reference the factual allegations in paragraphs 23-79 *supra*.

147.    Plaintiff DCF's members' rights to utilize the sick leave bank benefit survived the expiration of the 2011-2012 agreement.

148.    Plaintiffs' rights to utilize the sick leave bank benefit survived the expiration of the 2011-2012 agreement.

149.    The named, individual Plaintiffs and absent members of the alleged class are third party beneficiaries of the 2011-2012 agreement between DCF and the Defendant.

150.    Defendant's unilateral termination of the sick leave bank breached its contract with Plaintiffs.

151.    Defendant continues to breach its contract with Plaintiffs by refusing to honor the sick leave bank benefit.

152.    Plaintiff DCF's members have suffered cognizable harms as a result of Defendant's breach of contract.

153.    Plaintiffs have suffered cognizable harms as a result of Defendant's breach of contract.

154.    Plaintiffs are entitled to an award of injunctive relief and back benefits.

## COUNT III:  TERMINATION OF SICK LEAVE BANK BENEFIT – DCF CLASSIFIED EMPLOYEES

155.     This count is asserted by Plaintiff Douglas County Federation of Teachers against the Defendant Douglas County School District, RE-1.  Plaintiff DCF asserts this claim on behalf of all of its members affected by the conduct complained of in this count.

156.     Plaintiff re-alleges and incorporates by reference *supra* paragraphs 80-88.

157.     Plaintiff's members' right to utilize the sick leave bank benefit survived the expiration of the 2011-2012 agreement.

158.     Plaintiff's members' right to utilize the sick leave bank benefit are substantive rights.

159.     Plaintiff's members' right to utilize the sick leave bank benefit are vested rights.

160.     Plaintiff's members' right to utilize the sick leave bank benefit were vested when Defendant unilaterally terminated the sick leave bank.

161.     In the alternative, Plaintiff's members' right to utilize the sick leave bank benefit was subject to limited vesting when Defendant unilaterally terminated the sick leave bank. Defendant's substitution of the STDI plan for the sick leave bank was an adverse change which was not balanced by a corresponding change of a beneficial nature.  Defendant's substitution of the STDI plan for the sick leave bank was neither actuarially necessary nor did it strengthen or improve Plaintiff's members' benefit plan.

162.      Defendant's termination of the sick leave bank benefit violated Article II, Section 11 of the Colorado Constitution because it impermissibly impaired the obligation of contracts.  *Colo. Const.* Art. II, Section 11 (2013).

163.     Plaintiff's members have suffered and continue to suffer substantial damages as a result of Defendant's unlawful conduct.

164.     Plaintiff is entitled to an award of injunctive relief and back benefits.

## COUNT IV: BREACH OF CONTRACT - TERMINATION OF SICK LEAVE BANK BENEFIT – DCF CLASSIFIED EMPLOYEES

165.     This count is asserted by Plaintiff Douglas County Federation of Teachers against the Defendant Douglas County School District, RE-1.  Plaintiff DCF asserts this claim on behalf of all of its members affected by the conduct complained of in this count.

166.     Plaintiff re-alleges and incorporates by reference the factual allegations in

paragraphs 80-88 *supra*.

167.     Plaintiffs' members' rights to utilize the sick leave bank benefit survived the expiration of the 2011-2012 agreement.

168.     Defendant's unilateral termination of the sick leave bank breached its contract with Plaintiff.

169.     Defendant continues to breach its contract with Plaintiff by refusing to honor the sick leave bank benefit.

170.     Plaintiff's members have suffered cognizable harms as a result of Defendant's breach of contract.

171.     Plaintiff is entitled to an award of injunctive relief and back benefits.

## COUNT V:  VIOLATION OF C.R.S § 22-63-202 TEACHER DISPLACEMENT PROVISIONS

172.     This count is asserted by Plaintiffs Douglas County Federation of Teachers, Susan Archibald, Scott T.Dahm and Michael D. Hitchingham against the Defendant Douglas County School District, RE-1.  Plaintiff DCF asserts this claim on behalf of all of its members affected by the conduct complained of in this count.

173.     Plaintiffs re-allege and incorporate by reference the factual allegations in paragraphs 89-109 *supra.*

174.     Plaintiffs Archibald, Dahm and Hitchingham are active nonprbationary teachers who were, in 2012, "displaced as a result of drop in enrollment; turnaround; phase-out; reduction in program; or reduction in building, including closure, consolidation or reconstitution".  Colo. Rev. Stat. § 22-63-202(2)(c.5)(VII).

175.     The Defendant School District was required to place Plaintiffs Archibald, Dahm and Hitchingham in a "priority hiring pool, which priority hiring pool shall ensure the nonprobationary teacher a first opportunity to interview for available positions for which he or she is qualified in a school district."  Colo. Rev. Stat. § 22-63-202(2)(c.5)(II)(A).

176.     In the Spring of 2012 hiring cycle, Plaintiffs sought interviews for available positions for which they were qualified within the Douglas County School District.

177.     Plaintiffs were not given an opportunity to interview for available positions for which they were qualified.

178.     Defendant violated Colo. Rev. Stat. § 22-63-202(2)(c.5) by failing to give the Plaintiffs opportunities to interview for available positions corresponding to their

qualifications.

179.    Plaintiffs are entitled to injunctive relief making them whole for this violation of their rights.

## COUNT VI: REFUSAL TO WORK WITH DCF TO DEVELOP TEACHER DISPLACEMENT POLICIES

180.    This count is asserted by Plaintiff Douglas County Federation of Teachers against the Defendant Douglas County School District, RE-1.

181.    Plaintiff re-alleges and incorporates by reference the factual allegations in paragraphs 110-117 *supra.*

182.    Plaintiff is the local teachers association in Douglas County.

183.    Plaintiff sought the opportunity to work with the Defendant School District to develop policies regarding teacher displacement for the local school board to adopt.

184.    The Defendant School District refused to meet with DCF to develop such policies.

185.    Defendant violated Colo. Rev. Stat. § 22-63-202(2)(c.5)(II)(B).

186.    Plaintiff is entitled to injunctive relief.


## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray:

I.    As to the First Count for violation of *Colo.Const.* Art. II, Section 11, set forth in paragraphs 131-142, Plaintiffs seek an Order from the Court:

    a.    Certifying this action as a class action pursuant to C.R.C.P. 23;

    b.    Permitting Plaintiff DCF to proceed on behalf of all affected members;

    c.    Awarding injunctive relief and back benefits to the named plaintiffs and to the absent members of the alleged class;

    d.    Ordering Defendant to reinstate the sick leave bank benefit until such time as the days accrued in the sick leave bank have been exhausted; and

e.  Awarding such other and further relief as may be necessary and appropriate.

II.  As to the Second Count for Breach of Contract, set forth in paragraphs 143-154, Plaintiffs seek an Order from the Court:

a.  Certifying this action as a class action pursuant to C.R.C.P. 23

b.  Permitting Plaintiff DCF to proceed on behalf of all affected members;

c.  Awarding injunctive relief and back benefits to the named plaintiffs and to the absent members of the alleged class;

d.  Ordering Defendant to reinstate the sick leave bank benefit until such time as the days accrued in the sick leave bank have been exhausted; and

e.  Awarding such other and further relief as may be necessary and appropriate.

III.  As to the Third Count for violation of *Colo.Const*. Art. II, Section 11, set forth in paragraphs 155-164, Plaintiff seeks an Order from the Court:

a.  Permitting Plaintiff DCF to proceed on behalf of all affected members;

b.  Awarding injunctive relief and back benefits to the affected DCF members;

c.  Ordering Defendant to reinstate the sick leave bank benefit until such time as the days accrued in the sick leave bank have been exhausted; and

d.  Awarding such other and further relief as may be necessary and appropriate.

IV.  As to the Fourth Count for Breach of Contract, set forth in paragraphs 165-171, Plaintiffs seek an Order from the Court:

a.  Permitting Plaintiff DCF to proceed on behalf of all affected members;

b.  Awarding injunctive relief and back benefits to the members of Plaintiff DCF;

c.  Ordering Defendant to reinstate the sick leave bank benefit until such time as the days accrued in the sick leave bank have been exhausted; and

d.  Awarding such other and further relief as may be necessary and appropriate.

V.     As to the Fifth Count for violation of Colo. Rev. Stat. § 22-63-202, set forth in paragraphs 172-179, Plaintiffs seek an Order from the Court:

   a.  Permitting Plaintiff DCF to proceed on behalf of all affected members;

   b.  Ordering Defendant to make Plaintiffs whole – particularly redressing the effects of Colo. Rev. Stat. § 22-63-202(2)(c.5)(IV); and

   c.  Awarding such other and further relief as may be necessary and appropriate.

VI.    As to the Sixth Count for violation of Colo. Rev. Stat. § 22-63-202, set forth in paragraphs 180-186, Plaintiff seeks an Order from the Court:

   a.  Compelling Defendant to work with Plaintiff DCF to develop policies for the local school board to adopt; and

   b.  Awarding such other and further relief as may be necessary and appropriate.


Dated: February 15, 2013  **BUESCHER, GOLDHAMMER, KELMAN & PERERA, P.C.**


                         *S/ JOSEPH M. GOLDHAMMER*
                         <u>Signed original on file and available for inspection at:</u>
                         Joseph M. Goldhammer
                         Andrew H. Turner
                         BUESCHER, GOLDHAMMER, KELMAN & PERERA, P.C.
                         600 Grant Street – Suite 450
                         Denver, CO 80203
                         303.333.7751
                         Fax: 303.333.7758
                         aturner@laborlawdenver.com

                         *Attorneys for Plaintiffs*

<u>Plaintiff's Address:</u>
Douglas County Federation
801 S. Perry St. – Suite 104
Castle Rock, CO  80104

EFILED Document
CO Douglas County District Court 18th JD
DATE FILED: February 15, 2013 4:54 PM
FILING ID: 6AB6C201763V918ST
Filing Clerk: Tanja Gorenc
CASE NUMBER: 2013CV918
Filing ID 49563911
Review Clerk: Tanja Gorenc

# 2011-2012 Contract

Between

# Douglas County

# Federation of Teachers

# Local No. 2265 AFL-CIO

and

# Douglas County

# School District Re-1

For the Period

# July 1, 2011 through June 30, 2012

2011 – 2012 Revisions in Blue

2010 – 2011 Revisions in Green



EXHIBIT
1

Table of Contents

I.  DEFINITIONS...................................................................................................1

    A.  LIVING CONTRACT ...............................................................................1

    B.  TEACHER .............................................................................................1

    C.  SENIORITY............................................................................................2

    D.  PER DIEM SALARY ..............................................................................2

    E.  SCHOOL YEAR.....................................................................................2

II.  RECOGNITION .................................................................................................2

III.  GENERAL ........................................................................................................3

    A.  MEETINGS WITH THE SUPERINTENDENT ........................................3

    B.  ORIENTATION FOR NEW TEACHERS .................................................3

    C.  AUTHORIZED UNION REPRESENTATIVES.........................................3

    D.  DUES DEDUCTION. .............................................................................3

    E.  UNION PRESIDENT..............................................................................3

    F.  UNION SHORT TERM LEAVE ..............................................................3

    G.  UNION EXTENDED LEAVE ..................................................................4

    H.  BULLETIN BOARDS and TEACHERS' BOXES .....................................4

    I.  USE OF SCHOOL DISTRICT DELIVERY SERVICE ..............................4

    J.  ACCESS TO BUILDINGS .....................................................................4

    K.  MEETINGS IN SCHOOL BUILDINGS ...................................................5

    L.  USE OF SCHOOL EQUIPMENT...........................................................5

    M.  NO JOB ACTIONS................................................................................5

    N.  HEADINGS ...........................................................................................5

    O.  SAVINGS CLAUSE ...............................................................................5

IV.  INFORMATIONAL MATERIAL ..........................................................................5

    A.  BOARD MEETING AGENDAS ..............................................................5

    B.  BOARD MINUTES.................................................................................5

    C.  LISTING OF EMPLOYEES....................................................................5

*07/01/11*

D.  COPIES OF CONTRACT ................................................................6

E.  COPIES OF BOOKLETS EXPLAINING BENEFITS...........................................6

F.  AUDIENCES AT BOARD MEETINGS ...............................................6

G.  BOE/ADMINISTRATIVE POLICY INFORMATION ........................................6

V.  PERSONNEL RECORDS ................................................................6

A.  MATERIAL IN FILES ................................................................6

B.  PRINCIPAL'S WORKING FILES ................................................................6

C.  OFFICIAL FILES ................................................................6

D.  ACCESS TO OFFICIAL FILES................................................................7

E.  REMOVAL OF MATERIAL ................................................................7

VI.  TEACHER HOURS and TEACHING DAY ................................................................7

A.  WORK YEAR................................................................7

B.  WORK WEEK................................................................7

C.  WORK DAY................................................................7

D.  SUPERVISORY DUTIES ................................................................7

E.  OTHER TIME RESPONSIBILITIES ................................................................7

F.  INSTRUCTIONAL DUTIES ................................................................8

G.  PLANNING TIME ................................................................8

H.  CLASS COVERAGE ................................................................8

I.  LEAVING WORK DURING THE SCHOOL DAY ................................................................9

J.  EMERGENCY SCHOOL CLOSINGS ................................................................9

VII.  OTHER TEACHER WORKING CONDITIONS ................................................................9

A.  FACILITIES IN SCHOOLS................................................................9

B. YEAR-ROUND SCHOOLS ................................................................9

C.  MULTI-TRACK SCHOOLS................................................................10

D.  REFERRALS TO THE PRINCIPAL ................................................................10

E.  REPORTING TO THE SUPERINTENDENT'S OFFICE................................................................10

F.  ASSIGNMENTS................................................................10

G.  JOB SHARE................................................................11

*07/01/11*

H.  ASSISTANCE FOR TEACHERS WITH LARGE CLASSES .......................... 11

I.  EDUCATIONAL MATERIALS ...................................................... 12

J.  STUDENT TEACHERS ............................................................ 12

K.  STUDENT DISABILITIES ........................................................ 12

L.  PROFESSIONAL DAYS .......................................................... 12

M.  DAYS WITHOUT STUDENTS .................................................... 13

N.  INSTRUCTIONAL SUPPORT ..................................................... 13

O.  DEPARTMENT CHAIRPERSONS ................................................. 13

P.  LIBRARY MEDIA SPECIALISTS .................................................. 14

VIII.  TEACHER EVALUATION ............................................................. 14

A.  PROCEDURES ................................................................... 14

B.  OBSERVATIONS ................................................................. 14

C.  REPORT ......................................................................... 14

D.  EVALUATION APPEALS .......................................................... 14

E.  NO CHANGES IN PROCEDURES DURING SCHOOL YEAR .................... 14

F.  CHANGES IN PROCEDURES ..................................................... 14

G.  COMPLAINTS AGAINST TEACHERS ............................................ 15

IX.  VACANCIES and NEW POSITIONS ................................................ 15

A.  POSTING ........................................................................ 15

B.  VOLUNTARY TRANSFERS ...................................................... 16

C.  INVOLUNTARY ADMINISTRATIVE PLACEMENT ............................... 17

D.  INVOLUNTARY TRANSFERS . TEACHER DISPLACEMENT, REASSIGNMENT OR INVOLUNTARY TRANSFERS DUE TO CHANGES IN PROGRAM, STUDENT ENROLLMENT OR FISCAL REDUCTIONS ................ 17

E.  TEACHERS ON SPECIAL ASSIGNMENTS ....................................... 19

F.  NEW HIRING ..................................................................... 19

G.  NEW SCHOOLS .................................................................. 20

H.  REDUCTION IN FORCE (RIF) ................................................... 20

iv

X.  ADMINISTRATIVE, PROFESSIONAL AND TECHNICAL CAREER OPPORTUNITIES..................................................................................22

    A.  POSTING VACANCIES.............................................................22

    B.  APPLICATIONS .......................................................................22

    C.  CONSIDERATION OF APPLICANTS AND INTERVIEW STATUS..............22

    D.  POSITIONS NOT TO BE REQUIRED TO BE FILLED..................................22

XI.  TEMPORARY LEAVES OF ABSENCE ......................................................23

    A.  APPLICATIONS FOR TEMPORARY LEAVES OF ABSENCE ....................30

    B.  EFFECT OF TEMPORARY LEAVES OF ABSENCE....................................23

    C.  JURY DUTY LEAVE...................................................................23

    D.  COURT APPEARANCE LEAVE .................................................23

    E.  PERSONAL LEAVE....................................................................23

    F.  PROFESSIONAL MEETINGS and SCHOOL VISITATION LEAVE..............24

    G.  SICK LEAVE ...........................................................................24

    H.  SICK LEAVE BANK..................................................................25

    I.  FAMILY MEDICAL LEAVE ACT (FMLA) .........................................27

    J.  BEREAVEMENT LEAVE............................................................27

    K.  WORKER'S COMPENSATION .................................................27

    L. OTHER ABSENCES .................................................................27

XII.  EXTENDED LEAVES OF ABSENCE .......................................................27

    A.  GENERAL PROVISIONS APPLICABLE TO ALL EXTENDED LEAVES.......27

    B.  CHILD CARE LEAVE. ...............................................................28

    C.  MILITARY LEAVE. ....................................................................29

    D.  EDUCATION LEAVE.................................................................30

    E. D.  OTHER EXTENDED LEAVES OF ABSENCE WITHOUT PAY ...............31

XIII.  TUITION REIMBURSEMENT..................................................................31

    A.  TUITION REIMBURSEMENT PROGRAM.....................................31

    B.  LOW COST LOAN PROGRAM .................................................32

XIV.  COMPENSATION.................................................................................32

*07/01/11*

A. SALARY ....................................................................................................32

    1. 2010-2011 Compensation ......................................................................32

    2. Base Salary Formula ..............................................................................33

    3. Limits on Knowledge Level BA + 36 (Semester Hours).....................35

    4. Probationary Teachers ...........................................................................36

    5. Longevity Pay ........................................................................................36

    6. Initial Salary Determination ..................................................................36

    7. Knowledge Level Advancement............................................................37

B. PART-TIME TEACHERS ...........................................................................39

C. EXTRA CLASSES TAUGHT ......................................................................39

D. CLASS COVERAGE PAY ..........................................................................39

E. EXTENDED CONTRACTS .........................................................................39

F. COUNSELORS WORK YEAR ....................................................................39

G. CURRICULUM COMMITTEES...................................................................39

H. PERFORMANCE PAY COMPONENTS .....................................................40

    1. OUTSTANDING TEACHER ...............................................................40

    2. MASTER TEACHER ..........................................................................40

    3. GROUP INCENTIVE ..........................................................................40

    4. SKILL BLOCKS .................................................................................40

    5. EDUCATIONAL RESEARCH AND DISSEMINATION PROGRAM ....40

    6. NATIONAL BOARD CERTIFIED TEACHERS ...................................41

I. SPECIAL ASSIGNMENT PAY ....................................................................41

    1. Secondary School Activities .................................................................41

    2. Elementary Co-Curricular Pay ..............................................................41

    3. Site-Based Responsibility Pay...............................................................41

    4. District-Based Responsibility Pay .........................................................42

J. MILEAGE ALLOWANCE............................................................................42

K. INSURANCE PROGRAMS..........................................................................42

    1. Health/Medical Coverage ......................................................................42

*07/01/11*

2. Dental Coverage ..................................................................42

3. Vision Coverage ..................................................................42

4. Life and Accidental Death Insurance Coverage ................................43

5. Disability Protection Coverage..................................................43

6. Leave of Absence - Effect on Insurance Coverage...........................43

7. District Insurance Committee....................................................43

8. District and Employee Contributions ...........................................44

L. SEVERANCE PAY...................................................................45

M. EXTENDED SERVICE SEVERANCE BENEFITS..........................................45

1. Purpose..........................................................................45

2. Eligibility.........................................................................45

3. Application.......................................................................45

4. Benefit ...........................................................................45

N. ANNUAL STATEMENT ...............................................................46

XV. GRIEVANCE PROCEDURE ................................................................46

A. DEFINITIONS .......................................................................46

B. PURPOSE............................................................................47

C. PROCEDURE ........................................................................47

1. Level I.............................................................................47

2. Level II............................................................................47

3. Level III...........................................................................47

D. MISCELLANEOUS ...................................................................48

XVI. YEAR-ROUND MULTI-TRACK SCHOOLS...............................................50

A. DEFINITION ........................................................................50

B. GENERAL ...........................................................................50

C. CLASSROOM CONDITIONS .........................................................50

D. CLASSROOM SHARING and STORAGE ..............................................50

E. INSTRUCTIONAL SUPPORT..........................................................50

F. DAYS WITHOUT STUDENTS .........................................................51

     G.  PERSONAL LEAVE ........................................................................52

     H.  COMMUNICATION ......................................................................52

     I.  REGULAR TEACHERS SERVING AS SUBSTITUTES ................................52

     J.  TRACK SELECTION.....................................................................52

XVII.  NEW BUILDING PLANNING TEAMS ........................................................53

     A.  PURPOSE..............................................................................53

     B.  FORMATION ...........................................................................53

     C.  STIPEND...............................................................................53

     D.  RELEASE DAYS ......................................................................53

     E.  EXCEPTIONS .........................................................................53

XVIII.  NEGOTIATIONS...........................................................................53

XIX.   TERM OF CONTRACT....................................................................54

SCHEDULE A: ~~2010-2011~~ 2011-2012 Activities..........................................55

MOU REGARDING THE 21ST CENTURY PARTNERSHIP ............................................56

MOU REGARDING THE ADDITION OF ONE WORKDAY FOR THE 2011-2012..........57

MOU REGARDING CONTRACT LANGUAGE ALIGNMENT COMMITTEE FOR ~~THE CENTER FOR STAFF AND COMMUNITY DEVELOPMENT (CSCD)~~ THE CENTER FOR PROFESSIONAL DEVELOPMENT (CPD)..............................58

WAIVER PROGRAM FLOWCHARTS ...........................................................61

MOU REGARDING THE EARLY SEPARATION AGREEMENT 2009-2013..................65

MOU REGARDING ELEMENTARY PLANNING ~~2011-2012~~..........................67

MOU REGARDING EXTENDED SERVICE SEVERANCE 2011-2012 ..........................71

MOU REGARDING HEALTH SAVINGS ACCOUNTS ....................................................74

MOU REGARDING MODEL FOR TEACHER DEVELOPMENT AND EVALUATION ....76

MEMORANDUM OF UNDERSTANDING REGARDING PAY FOR PERFORMANCE AGREEMENT ~~2010-2011~~ 2011-2012 ................................................77

MOU REGARDING STUDENT LOAD/CLASS SIZE.......................................................78

MOU REGARDING TEACHER COMPENSATION..........................................................79

LETTER OF AGREEMENT REGARDING eDCSD.........................................................80

SALARY SCHEDULE (Frozen for 2009-2010, 2010-2011, 2011-2012) ..........................83

CONTRACT

This Contract is made and entered into by and between Douglas County Federation of Teachers, Local No. 2265, AFL-CIO, hereinafter referred to as "Union" or the Douglas County Federation of Teachers, "DCFT," and Douglas County School District Re-1, hereinafter referred to as "School District," "District," or "the Board."

WITNESSETH THE FOLLOWING

I.    DEFINITIONS

    A.    LIVING CONTRACT. The Douglas County Federation of Teachers and the Douglas County School District agree to establish a Living Contract. This will provide for on-going discussion and timely decision-making on matters that will maintain positive Union-District relations and build a more effective overall system.

        The Negotiations Teams shall be authorized to discuss any issue of mutual interest or concern and to reach tentative agreements on issues in a timely manner without delaying action until the expiration and re-negotiation of the collective bargaining agreement.

        The Negotiations Teams shall have the ability to amend the Contract provided that any amendments shall be subject to internal ratification and approval procedures of the District and DCFT.

        The overall charge of the Negotiations Teams utilizing a Living Contract shall include but not be limited to the following:

- Adopt "what's best for students" as the shared value for any specific proposal advanced by either the District or the DCFT;
- Conduct ongoing negotiations;
- Resolve disputes or problems in the interpretation and application of the contract as they arise;
- Revise the provisions of the Contract in order to clarify language and meaning, correct contradictions or inconsistencies, remove outdated language, and organize and streamline it;
- View collective bargaining as collaboration rather than positional by using the Interest-Based Bargaining process.
- Use the Interest Based Bargaining process to build a more genuine profession for teachers and more effective schools for Douglas County School District students.

    B.    TEACHER . The term "teacher" as used in this Contract shall refer to and include any licensed persons of the bargaining unit represented by the Union; whose pay is determined by the Teacher Salary Schedule; and who is employed to provide instruction, administer instruction, monitor

*07/01/11*

instruction, or generally directs or supervises some aspect of the instructional program of the District. By definition, "teacher" shall include but not be limited to the following positions in the District:

1) Classroom Teacher
2) Specials / Elective Teacher
3) Instrumental Music Teacher
4) Learning Specialist Teacher (moderate needs, SIED, SSN, DHH / TOD, visually impaired)
5) Nurse
6) Speech/Language Pathologist
7) Audiologist
8) Occupational Therapist
9) Physical Therapist
10) Social Worker
11) Psychologist
12) Counselor
13) ESL Teacher
14) Specialist (Math / Literacy)
15) Library/Media Specialist
16) Gifted/Talented Teacher
17) Itinerant Teacher (any teacher providing service at two or more sites)
18) Dean/Administrative Intern
19) Building Resource Teacher
20) Teacher of Special Assignment
21) Coordinator 2 & 3
22) Waiver Candidate Teacher (after 90 days)

C.     SENIORITY. Whenever in this Contract reference is made to "seniority" as the basis for decision, it shall mean length of service with the District.

D.     PER DIEM SALARY. "Per diem salary" in a given school year is the employee's salary divided by the number of contract days.

E.     SCHOOL YEAR. The term "school year" shall mean the period beginning on the 1st day of July and ending on the 30th day of June.

II.     RECOGNITION

A.     The Board recognizes the Union as the exclusive bargaining agent for the unit of teachers as herein above defined, for the purpose of bargaining on the following:

1.     A bargaining procedure, including methods of resolving impasse;
2.     Salaries and fringe benefits;
3.     Leaves of absence;
4.     Grievance procedure;
5.     Hours of work; and
6.     Other working conditions as may be mutually agreed upon.

*07/01/11*

III.    GENERAL

    A.    **MEETINGS WITH THE SUPERINTENDENT.** At the request of either party, the Superintendent or his/her designee will meet at least monthly with up to three (3) authorized representatives of the Union to discuss matters of mutual concern and matters relating to the implementation of this Contract.

    B.    **ORIENTATION FOR NEW TEACHERS.** The Union shall have the right to participate in required orientation activities for new teachers according to a time mutually agreed upon with the administration.

    C.    **AUTHORIZED UNION REPRESENTATIVES.** The Union shall make available to the District an official list of all Union building representatives and designated authorized representatives assigned to each school by the end of the second week of September of each year. If any changes occur during the school year, the Union will notify the District as soon as possible.

    D.    **DUES DEDUCTION.** The Board agrees to deduct from the salaries of teachers who have written authorizations therefore in effect the monthly amount stated in such authorization for dues to the Union and to remit the same to the Union at the address furnished by the Union within ten (10) days after the date monthly salary payments are due to teachers authorizing deductions. The Union will be charged a fee of $.05 per transaction payable at the conclusion of the fiscal year, to compensate the District for this service. The Union must submit the signed dues deduction authorization form to the District by the first (1st) day of the month to be effective for that month's payroll. Cancellation requests received by the District payroll department by the first (1st) day of the month will be honored effective for that month's payroll and any subsequent payrolls.

    E.    **UNION PRESIDENT**

        1.    The Union President shall receive a standard teacher contract (minimum 185 days @ 7.5 hours per day). The cost of compensation and benefits for the Union President shall be proportionately paid by the Union and the District according to the agreed upon percentage of 50/50.

    F.    **UNION SHORT TERM LEAVE.** The Union will be granted leave during the school year for DCSD projects and assignments, DCFT projects and assignments, and joint DCSD/DCFT projects and assignments.

        1.    DCSD projects and assignments will be paid 100% by the district.

        2.    DCFT projects and assignments will be paid 100% by DCFT.

        2.    Joint DCSD/DCFT projects and assignments will be paid 50/50 by DCSD and DCFT.

        3.    All requests for leave must be submitted to the appropriate building principal at least forty-eight (48) hours in advance. In case of extenuating circumstances, the principal may approve Union leave on less than forty-

*07/01/11*

eight (48) hours notice. Such cases involving the negotiating teams will be referred to the Superintendent or his/her designee.

4. The School business office and DCFT will keep records of all absences under this category as a separate item and will furnish Union officers/DCSD this information on request.

G. UNION EXTENDED LEAVE

1. Leaves of absence without pay may be requested by District employees for the purpose of serving the Union in a state or national capacity. Such leave requests would be submitted to the Board of Education. As an alternative, the Union may request that a teacher be released from an assignment with pay to perform services for the Union, provided the Union reimburses the District for the salary and benefit cost of the teacher. Such an arrangement will be considered a Union Leave.

2. If a Union Leave affects no more than two (2) consecutive semesters, the teacher shall be returned to the teacher's previous position if the teacher has requested return to that position in the written request for leave and if the position still exists.

3. A teacher on Union Leave will be considered in the same manner as a member of the staff of the school to which he/she was assigned prior to the leave for such matters as determining involuntary transfers, class assignments, etcetera. Notices regarding assignments requested by Article VII.F. of this Contract shall be given to teachers on leave, provided the teacher on leave has supplied the school with a mailing address.

4. Teacher status will not be affected during Union Leave, but if such leave is granted to exceed ninety (90) working days, the teacher will not be eligible for an evaluation increase for that year.

H. BULLETIN BOARDS and TEACHERS' BOXES. The Union, through its authorized representatives, shall have the right to post notices and other materials relating to Union activities or bulletin board space provided in each building, and to distribute such materials by placing copies of the same in teachers' boxes where such are provided in the buildings of the School District, provided that informational copies of such materials shall be furnished to the principal or other person in charge of the building at the time of posting or distribution.

I. USE OF SCHOOL DISTRICT DELIVERY SERVICE. The Union may distribute materials which may be posted or placed in teachers' boxes or via e-mail provided in section H of this Article, through the School District Delivery Service and/or e-mail system.

J. ACCESS TO BUILDINGS. The Union President or any other representative authorized in writing by the Union President, not to exceed three (3) persons at any one time, shall be allowed access to any school in the School District during the regular workday, provided that the principal or other person in charge of the

building is notified of their presence and the purpose of the visit at the time of entrance to the school, and provided that classes are not interrupted by the visit.

K.    MEETINGS IN SCHOOL BUILDINGS.  On notice to the principal of the school, the authorized representative of the Union shall have the right to schedule up to two (2) meetings per month in a school building before and after regular duty hours, provided that such meetings do not conflict with any other scheduled activities.  Any additional custodial expenses resulting from such meetings will be paid by the Union.

L.    USE OF SCHOOL EQUIPMENT.  Upon request, the Union shall be permitted to use computers, copying machines, office machines, and duplicating equipment when not in use and where no additional cost is incurred by the District.  If any additional cost is necessary, the Union shall pay the actual additional cost.

M.    NO JOB ACTIONS.  The Union and the Board subscribe to the principle that any and all differences between them and the members of the unit should be resolved by peaceful and appropriate means without interruption of the District's operations.  Accordingly, the Union agrees that it will not instigate, engage in, support, encourage or condone in any way, strike, work stoppage, or other concerted refusal to perform work on the part of any of the members of the unit.

N.    HEADINGS.  Any heading preceding the text of the articles and sections herein is inserted solely for convenience or reference and shall not constitute part of this Contract, nor shall it affect the meaning, construction or effect of any of the articles and sections of this Contract.

O.    SAVINGS CLAUSE.  This Contract shall be governed and construed according to the Constitution and laws of the State of Colorado.  In the event any provision of this Contract is or shall be at any time held to be contrary to that law by a court of last resort of Colorado or of the United States, or by a court of competent jurisdiction from whose judgment or decree no appeal has been taken within the time provided for doing so, all other provisions of this Contract shall remain in effect and, within ten (10) days after such provision has been held to be contrary to the law, the parties shall meet to negotiate a substitute provision.

IV.    INFORMATIONAL MATERIAL.

A.    BOARD MEETING AGENDAS.  An advance copy of the agenda for each meeting of the Board of Education will be provided to the Union, if available, at least twenty-four (24) hours prior to the meeting.

B.    BOARD MINUTES.  The School District will provide the Union with unofficial copies of the minutes of regular and special meetings of the Board of Education at the same time it makes distribution of said minutes to principals.  Unofficial minutes shall contain listings of all approved personnel changes, but need to contain salaries of individual employees.  Copies of official minutes will be furnished to the Union upon the request of the Union President.

C.    LISTING OF EMPLOYEES.  The School District will provide the Union with the names, addresses and assignments of all teachers then employed at least one

(1) week prior to opening school in the fall, and will provide the Union with the names and addresses of all teachers hired after that date at the request of the Union.

D.  COPIES OF CONTRACT.  The School District will make an electronic copy of the contract available on the District website.  Each year, the contract will be updated on the website to indicate any additions and/or modifications, including omissions, using colored font and strike-outs, respectively.

E.  COPIES OF BOOKLETS EXPLAINING BENEFITS.  The School District will provide each teacher upon request, and each new teacher upon hiring, with a copy of available explanatory booklets published by carriers of insurance programs provided by the School District.

F.  AUDIENCES AT BOARD MEETINGS.  The Union president or a person designated by him/her in writing shall have the right to address the Board of Education during the audience portion of the agenda of all its regular meetings, subject to any reasonable time limitations then in effect.

G.  BOE/ADMINISTRATIVE POLICY INFORMATION.  The District will provide the DCFT with copies of any Board and Administrative policy changes and allow time for feedback prior to the final adoption of such policies by the BOE and/or Superintendent.

V.  PERSONNEL RECORDS. All official personnel records of teachers shall be maintained in compliance with the following requirements.

A.  MATERIAL IN FILES.  Only material directly related to professional development and performance shall be placed in the file.   No anonymous communications shall be included in the file.

B.  PRINCIPAL'S WORKING FILES.  These files include information that a principal or assistant principal gathers on an ongoing basis that might be used in conferring with teachers, or as part of a formal evaluation document.  This information will be purged unless referenced in the year-end evaluation document.  If so used, it will be kept in the official file and a copy will be provided to the teacher. Teachers may access this file upon a seventy-two (72) hour notice to the principal.  A letter of concern or other documentation may only be retained if referenced in the year-end evaluation documents.

C.  OFFICIAL FILES.  Only one (1) official personnel file shall be kept for each teacher and it shall be kept at a central place.  No derogatory material shall be placed in the file unless the teacher acknowledges that he/she has read the material by affixing his/her signature on the file copy of the material, it being understood that such signature merely signifies that the teacher has read the material to be filed, and is not an indication that the teacher agrees with its content.  If a teacher refuses to sign, or fails to sign within ten (10) days after notice to him/her, the material may be filed with a notation thereon that the teacher was given an opportunity to sign and refused or failed to sign.  The teacher shall have the right to file a written reply to any material in the file. Material furnished by the teacher and copies of correspondence addressed to the

*07/01/11*

teacher shall not require the teacher's signature.

D.     ACCESS TO OFFICIAL FILES.  Upon request, a teacher shall be given access to his/her own personnel file without delay. The teacher shall have the right to be provided with copies of any material in his/her official personnel file, except letters of reference, at his/her expense.  The District may charge a reasonable fee for copies of file contents.

E.     REMOVAL OF MATERIAL.  All material in a teacher's official personnel file which is false or unrelated to his/her professional development and performance shall be removed.

VI.     TEACHER HOURS and TEACHING DAY

A.     WORK YEAR

The contracted work year for teachers shall be 186 days for beginning teachers, and 185 days for returning teachers.  Up to 180 days may be scheduled (or re-scheduled because of school cancellation) as pupil contract days.  Teachers new to the School District will attend one (1) additional day of orientation.

1.     The parties recognize that during each fiscal year of this Contract, this section is subject to adjustment pursuant to C.R.S. 22-44-115.5, or any revision thereof. The District agrees that during any contract year, any reduction of the work year will be determined consistent with that section. The Board will notify the Union thirty (30) days prior to the hearing required by statute.  In the event of salary reduction, the Board shall reduce the salary of all personnel within the District on a proportional basis.  Any work year reduction shall be equitably applied to all personnel.

B.     WORK WEEK.  Teachers shall be available for assigned duties thirty-seven and one-half (37½ ) hours during each full calendar week that schools are in session.

C.     WORK DAY.  The regular working day shall consist of seven and one-half (7½ ) consecutive hours, including a duty-free lunch period of twenty-five (25) minutes, not including passing time.  Teachers are expected to attend meetings scheduled during the regularly scheduled workday.  Any absence from such meeting(s), unless excused by the principal, shall be considered absence without leave. Service on committees that meet beyond the seven and one-half (7½ ) hour day is voluntary.

D.     SUPERVISORY DUTIES.  The District and the Union recognize that as professionals, the primary responsibility of teachers is the education of students. However, teachers may be assigned to non-instructional supervisory and student activity assignments during the regular school day, but shall be equitably distributed within each building.

E.     OTHER TIME RESPONSIBILITIES.  The parties agree that there are other responsibilities beyond the regular workday and the duty hours specified above which are incidental to the practice of the teaching profession.  These

responsibilities cannot be quantified in terms of time, and teachers do not receive additional compensation for them.

F.    INSTRUCTIONAL DUTIES.

    1.    Secondary teachers may be assigned to instruct students for 280 minutes of any regular working day.

    2.    Secondary teachers may be assigned to instruct students for an additional twenty (20) minutes during any regular working day, provided that a plan for use of such time is approved by the principal and a majority of the department chairpersons in the school.

G.    PLANNING TIME.

    1.    Elementary teachers shall have at least forty (40) continuous minutes of duty-free planning time during each regular workday. When an acceptable schedule cannot be developed at a particular school to accommodate a continuous forty (40) minute period, the teacher shall file a letter with the Douglas County Federation claiming that a hardship exists. If the Douglas County Federation determines that a hardship exists, part of the teacher's supervisory and/or instructional duties during the regular workday will be re-assigned by the principal to allow for continuous forty (40) minute planning period each day.

    2.    Secondary school teachers shall have a time equivalent to one (1) instructional period set aside for planning and conference. However, when special schedules are in effect, planning and conference time should average the equivalent of one (1) instructional period per day.

    3.    Nothing in this section shall preclude any teacher and the administration from agreeing on additional planning time.

H.    CLASS COVERAGE. In the event the District, after a good faith effort, is unable to hire a substitute for a classroom teacher and is unable to find teachers within the building to volunteer to cover classes during their preparation periods, the following procedure will be followed: *Note :See Class Coverage Pay In Article XIV for payment information.*

    1.    The building administration will first check any substitutes currently in the building to see if their planning time allows them to cover a class.

    2.    The building administration will assign a staff member on a non-voluntary basis to cover the class. The selection will follow guidelines established at each school and will be made without prejudice. All certified staff, including principals and counselors, will be equal participants in their school's emergency class coverage plan.

    3.    All schools shall have an emergency class coverage plan available and on file with the school administrator.

*07/01/11*

I.     LEAVING WORK DURING THE SCHOOL DAY.  Teachers are expected to remain at the building(s) to which they are assigned during the normal work day unless they have made prior arrangements with the principal.

J.     EMERGENCY SCHOOL CLOSINGS.  When school is dismissed early due to emergency conditions such as water or power failure, severe storms and the like, teachers will be permitted to leave the building to which they are assigned after students have left the building and the teacher's presence is no longer necessary for the welfare of the students.

VII.    OTHER TEACHER WORKING CONDITIONS

A.     FACILITIES IN SCHOOLS

1.     Telephone.  A telephone shall be made available in each building for the use of teachers in making and receiving telephone calls to parents and others as necessary in the performance of their duties.  To the extent permitted by the physical layout of the building, the telephone will be located in a place that affords the teacher privacy.

2.     Storage.  Each teacher shall be provided secure facilities adequate to store personal belongings and instructional materials which require security, but the School District shall not be held to be the insurer of teachers' belongings stored in such facilities.  Upon request, teachers will be provided a key to such locked facilities and the School District agrees that no persons other than those to which the space is assigned may enter such locked facility except in emergencies when the teacher is absent from school.

3.     Other Facilities.  Teacher restrooms, a faculty lounge, and workroom will be provided in all buildings constructed or remodeled after the date of this Contract.  Present facilities will be continued and remain available to teachers, except in emergency situations.

4.     Equipment.  For the purpose of preparing necessary instructional materials, all Douglas County teachers shall have support and/or availability to the following equipment during the hours buildings are normally open on regular working days: work table, laminating machine, paper cutter, fax machine, computer, and photocopy machine.

a.     Materials necessary to the use of that equipment will be made available to all Douglas County teachers within budget limitations.

b.     Reasonable rules and regulations governing the use of such equipment and supplies may be promulgated by the appropriate administrator.

B.     YEAR-ROUND SCHOOLS.  In year-round schools, when a problem arises pertaining to room temperature, transition between tracks, custodial assistance or storage, a teacher shall have fifteen (15) calendar days to file a letter with the Douglas County Federation claiming a hardship exists.  If they determine that a

9                                        07/01/11

hardship exists, they shall make recommendations to alleviate the hardship.

C.    MULTI-TRACK SCHOOLS.  Teachers in multi-track schools who are authorized in writing by the principal will be compensated at the extra-duty rate for all time worked outside the normal work week to facilitate a smooth transition between tracks.

D.    REFERRALS TO THE PRINCIPAL. A student shall be referred immediately to the principal or the appropriate building administrator for:

   1.    Willful disobedience or open and persistent defiance of proper authority;
   2.    Willful destruction or defacing of school property; or
   3.    Behavior that is detrimental to the health, safety, welfare, morals, or education of others.

Whenever such infractions occur (and if requested by the principal), the teacher who refers a student will furnish the principal with written details of the situation as promptly as his/her teaching duties allow:

   a.    Upon the first (1st) referral, the principal shall meet with the teacher and student to determine the measures to be taken prior to re-admittance of the student to the teacher's class, and possible measures to be taken in the event of future infractions.

   b.    Upon the second (2nd) referral of the pupil by the same teacher, the principal will meet with the teacher to determine if and how the parents are to be notified and other disciplinary action to be taken. The principal shall record the disciplinary action taken.

   c.    In the event a teacher subsequently refers the same student to the principal's office during the same academic year for the same or similar disruptive conduct, the principal shall request a parent conference and consider temporarily suspending the student from school, recommending expulsion for the remainder of the academic year, or other actions available to him/her.

   d.    Upon the fourth (4th) referral by the same teacher, the teacher may request a meeting with the Superintendent and the principal to discuss further action.

E.    REPORTING TO THE SUPERINTENDENT'S OFFICE.  Whenever a teacher is required to report to the Superintendent's or the Superintendent's designee's office for disciplinary reasons, he/she shall be entitled to be accompanied by a Union representative.

F.    ASSIGNMENTS.  Teachers interested in changing their grade level, team or course assignments for the coming year must notify their principal in writing by March 1st of each school year.  In making assignments, the principal shall give consideration to but not be bound by such requests.

1.    Assignments shall be given to teachers no later than May 20th of each school year.

2.    A teacher who questions his/her assignment may meet with the principal or assistant principal for the purpose of discussing the matter. This meeting shall take place before June 1st of that school year.

EFILED Document
CO Douglas County District Court 18th JD
Filing Date: Apr 05 2017 5:04 PM
Filing ID:
Review Clerk: Tanja Gorenc

3.    If a situation develops which would make it necessary to change a final assignment prior to the opening of school, the changes and reasons for the changes shall be given or mailed to the teacher within forty-eight (48) hours of the actual time of the change.

G.    JOB SHARE. Whenever two teachers desire to engage in a job share, they may propose such arrangement to the building administrator, provided the total cost to the District of the salary and benefits for both employees shall not exceed the cost of the senior employee, were they working full-time. Employees interested in a job share must develop an annual plan that is educationally appropriate, and secure the agreement of the building principal which shall not be unreasonably denied. The plan should include a description of how the time will be handled. If for any reason the principal feels that the plan would harm the educational opportunities of the children, or works a hardship on administration or other staff members, he/she need not approve the job share plan and it will not be implemented. The job share plan may be submitted for review and approval to the principal at any time during the year when change to such a plan may be appropriate.

A teacher participating in a job share arrangement will retain any teacher status including *pro rated* salary and benefits attained prior to undertaking a shared time assignment.

A teacher participating in a job share arrangement will be guaranteed a full-time position in the same school for no longer than three (3) years, providing a vacancy exists for which they are qualified.

H.    ASSISTANCE FOR TEACHERS WITH LARGE CLASSES

(Article VII.H.1-3 suspended for the 2010-11 school year. See MOU Regarding Student Load/Class Size)

1.    Elementary Schools. Whenever elementary classes exceed the limits specified below for any period of thirty (30) calendar days, the teacher so affected shall have fifteen (15) calendar days to file a letter with the Douglas County Federation claiming that a hardship exists. If DCF determine that a hardship exists, the building's aide hours will be re-assigned by the principal to provide the following assistance, unless the size of such classes are reduced to the limits specified below or fewer at the end of the 30-day period:

a.    In grades K-2, at least one (1) hour of instructional aide time per day when classes are twenty-eight to thirty (28 - 30) pupils, and

one (1) full-time instructional aide, or a part-time teacher when classes exceed thirty (30) pupils.

b.     In grades 3-6, at least one (1) hour of instructional aide time per day when classes are twenty-eight to thirty-two (28-32) pupils, and one (1) full-time instructional aide or a part-time teacher when classes exceed thirty-two (32) pupils.

c.     Exclusive of designated combination schools, when split classes occur, the teacher shall be provided with one (1) hour of instructional aide time per day when such classes are larger than twenty-two (22) pupils.

2.    Secondary Schools.  Whenever a secondary teacher's load exceeds one hundred-fifty (150) pupils for any period of thirty (30) days and his/her load cannot be reduced by student schedule changes, then he/she will be provided with the following assistance, unless his/her load is reduced to one hundred-fifty (150) or less at the end of the thirty (30) day period:

a.     For 151 to 160 pupils, one (1) hour per day of instructional aide assistance.

b.     For 161-171 pupils, two (2) hours per day of instructional aide assistance.

3.    It is recognized that these limitations do not apply to subject areas such as music, band, orchestra, and physical education; however, these standards are not intended as maximums, and more aide time may be assigned where approved by the principal.

I.    EDUCATIONAL MATERIALS.  When it becomes necessary for a teacher to purchase educational materials that are not provided by the school and said teacher has prior approval from his/her principal, the school shall fully reimburse the teacher immediately when presented with a receipt.

J.    STUDENT TEACHERS.  Student teachers shall be approved by the principal and assigned on a voluntary basis to regular teachers, or teachers with a minimum of five (5) years of teaching experience.

K.    STUDENT DISABILITIES.  Teachers shall be provided the reported and legally disclosable health and physical disabilities information on students in their classes.  Teachers shall also be provided training and aid, as specified in the student's Individualized Education Program (IEP) to deal with the severely handicapped.

L.    PROFESSIONAL DAYS.  The Board shall encourage employees to attend professional meetings, workshops, classes, conferences and conventions. Teachers assigned to a particular school will be treated equitably with regard to reimbursement for expenses incurred in attending approved professional activities.

M.   **DAYS WITHOUT STUDENTS.**  Teachers in traditional calendar schools will have the following days without students within the designated school year to be used for working on report cards/progress reports and preparation for the next grading period:

    1.   One half-day (1/2) at the end of the first 9-week (or 12-week) grading period;

    2.   One full-day (1) at the end of the first semester;

    3.   One full-day (1) at the end of the third 9-week or (second 12-week) grading period; and

    4.   One half-day (1/2) at the end of the school year.

    5.   The Board may use one half-day (1/2) of this time for building level in-service training for teachers; the agenda to be determined by building leadership, inclusive of teacher input.

    6.   All teachers on the traditional schedule shall have one full-day (1) without students at the beginning of the school year for planning and preparation.

    7.   Teachers will receive two days (2) compensatory time per year for time spent in parent-teacher conferences.

    8.   Schools that modify calendars will receive the equivalent amount of time within the designated school year, to be used for working on report cards/progress reports and preparation for the next grading period.

N.   **INSTRUCTIONAL SUPPORT.**  All certified and non-certified services shall be provided to schools on modified calendars.

O.   **DEPARTMENT CHAIRPERSONS.**  When Human Resources agrees on the need to designate a Department Chairperson position, such a position may be established.

    1.   In each middle school and senior high school, the teachers in a department shall provide input into the selection of the Department Chairperson. A job description regarding the Department Chairperson's tasks and overall responsibilities shall be developed by and reside in the Office of Human Resources. A copy will be sent to each secondary building. Department Chairpersons shall not be considered administrative employees, nor shall they rate or evaluate teachers.

    2.   Department Chairpersons shall be paid the negotiated rate for their position.

    3.   In schools where teacher and administrative teams agree to organize in other than a departmental configuration, or in combinations of departmental or other configurations, they may seek the support of the appropriate Learning Services Director who will recommend the

*07/01/11*

alternative plan to Human Resources. Alternative plans may include, but are not limited to: team leaders, head teachers, grade level leaders, or any such persons who have coordinating and planning functions in lieu of Department Chairpersons. These individuals will be paid the negotiated rate established for Department Chairpersons. The total amount paid for these positions in secondary schools may not exceed the amount that would have been expended for the approved number of Department Chairs for that building.

4. Department chairs may qualify for additional compensation through performing agreed upon responsibilities in excess of the Department Chair job description. Any site requesting such additional compensation must apply to the Department of Human Resources for approval. The funding for this program will be determined by the District and the DCFT.

P. LIBRARY MEDIA SPECIALISTS. Every junior (middle schools) and senior high school shall be staffed with a full-time Library Media Specialist. Elementary school libraries should be supervised and available to students during the school day.

VIII. TEACHER EVALUATION

A. PROCEDURES. Evaluation of a teacher's performance shall be conducted in accordance with procedures approved by the Board. During the first four (4) weeks of the school year, the principal of each school or other administrative evaluator will advise all teachers to be evaluated as to the evaluation procedures to be used, the number of observations and evaluations to be made during the school year, the timing of those observations and evaluations, and the specific persons who will or might act as evaluators. All teachers will be subject to DCSD evaluation procedures.

B. OBSERVATIONS. Monitoring or formal observations of teacher performance incident to the evaluation process shall be conducted with full knowledge of the teacher.

C. REPORT. Teachers will be given a copy of every evaluation report and shall be entitled to request a conference with the evaluator prior to submission of the report to the teacher's Central Office File.

D. EVALUATION APPEALS: The District and the DCFT will have a mutually agreed upon appeal process for hearing and ruling on appeals of summative evaluation ratings by non-probationary teachers.

E. NO CHANGES IN PROCEDURES DURING SCHOOL YEAR. Evaluation procedures approved by the Board shall not be changed during any school year. Changes for subsequent years shall be made before August 15th of such years.

F. CHANGES IN PROCEDURES. The Union shall have the right to appoint the teacher members on any committee organized to review and recommend revisions in evaluation procedures. Any such committee shall be composed of

14                                                           07/01/11

an equal number of teachers and administrators.

G.   COMPLAINTS AGAINST TEACHERS.  A teacher's official evaluator shall work with the teacher to address the concerns of a specific individual about a teacher's performance.  The goal is to maintain professional relationships and support teacher performance, while remaining responsive to the community.  Complaints by an individual other than the evaluator shall not be used in the evaluation process unless the following conditions have been met:

1.   When possible, the complaint should be in writing.  If this is impossible, the evaluator shall reduce the complaint to writing and paraphrase the issues as specifically as possible.  A complaint is not data or information solicited by a school administrator for the purpose of investigation or evaluation.

2.   The evaluator will review the written complaint with the teacher within five (5) school days and provide the teacher with a copy of the written specifics.

3.   The complaints must correlate with the professional indicators for teachers within the Douglas County School District Evaluation Guidelines.

4.   The evaluator shall investigate the complaint and determine that the complaint is inconclusive, valid, or invalid.  The evaluator shall provide the teacher with a written record of their determination in a timely manner.

5.   Records of complaints found invalid or inconclusive will be purged from the teacher's file. Records that the district reasonably believes need to be kept to protect the District from possible litigation (i.e., sexual harassment, child abuse, reckless endangerment) will be forwarded to a central file in the Human Resources Office. Such records will not be used in the teacher's evaluation or included in his/her permanent files.

IX.   VACANCIES and NEW POSITIONS.

A.   POSTING.  Vacant positions and new positions in the teacher bargaining unit, if not being filled by a teacher returning from leave or by an involuntary transfer, shall be posted as follows:

1.   All vacancies occurring prior to the school year which are to be filled by a contracted teacher shall be posted for at least ten (10) consecutive working days. All vacancies occurring during the school year shall be posted for a period of at least five (5) consecutive working days. The posting shall specify the requirements and qualifications for the position. Positions filled with a substitute or 1-year contract teachers shall be posted again for the next school year if the position becomes a continuing contract.

2.   All postings as described above shall be made by posting on the School District's Office of Human Resources website.

*07/01/11*

B.  VOLUNTARY TRANSFERS.  The District and the Union support and encourage the efforts of our valued employees to secure new positions through the voluntary transfer process.  We believe that such opportunities for professional growth benefit both the teacher and the District.

1.  A teacher must be compliant with "No Child Left Behind" requirements to apply for transfer.  To be considered for transfer, a Transfer Request Form must be completed and sent concurrently to the school principal and Office of Human Resources prior to the posted closing date for the position.

2.  The teacher requesting transfer must provide Human Resources and the hiring administrator the following:

    a.  A copy of the Transfer Request Form;
    b.  A cover letter;
    c.  A current resume.

3.  After May 15 of each school year, voluntary transfers between schools will require the consent of both building principals.  Guidelines for Voluntary Teacher Transfers:

    Exceptions: Teachers will be eligible to transfer or apply for positions under the following conditions, regardless of the proximity in time to the start of the school year:
    a.  The position increases or decreases entitled FTE;
    b.  The position is outside of the conventional classroom or a new job classification (TOSA, BRT, Dean, Administrative Intern, Counselor, etc.).

4.  District teacher applicants who meet the minimum qualifications set forth in the posting will be interviewed.

5.  When all other qualifications and abilities are equal, preference will be given to the regular teacher employed by the School District based on length of service in the District.

6.  Any teacher who has applied for a voluntary transfer in accordance with this Article and who has not been selected, will be promptly notified.  If the teacher submits a written request, reasons for not being selected will be provided.

7.  The parties agree that continuity of a school's program is essential and therefore, agree that no more than one-third (1/3) of the teaching staff may receive voluntary transfers out of an existing building in one (1) school year.

*07/01/11*

C.    INVOLUNTARY ADMINISTRATIVE PLACEMENT A teacher may be transferred from one school or position within the School District to another by the Superintendent for up to one year in order to meet the educational needs of the School District.

    1.    Written notice of involuntary transfer explaining specific reasons for the change shall be provided to the teacher at least thirty (30) days prior to the effective day of the transfer.

    2.    ~~After notice and transfer, a teacher shall have a right to a conference with the appropriate administrator and, if not satisfied with the results of the conference, the teacher may have a conference with the Superintendent or his/her designee.~~

D.    ~~INVOLUNTARY TRANSFERS DUE TO CHANGES IN PROGRAM OR STUDENT ENROLLMENT.~~ TEACHER DISPLACEMENT, REASSIGNMENT OR INVOLUNTARY TRANSFERS DUE TO CHANGES IN PROGRAM, STUDENT ENROLLMENT OR FISCAL REDUCTIONS. A non-probationary teacher may be transferred from one school or position within the School District to another when programs are moved or modified, when student enrollment changes, or when fiscal reductions necessitate staff downsizing.

    1.    When making ~~these decisions, the site administrator must first ask for a volunteer from those teachers with satisfactory performance.~~ the decision to displace teachers, the site administrator or his/her designee will determine which teacher(s) shall be displaced based on the teacher receiving a satisfactory performance/effectiveness rating on their most recent evaluation, program needs at the site, and the best interests of the students.

    2.    ~~Based on program needs, the Superintendent or his/her designee will determine which teacher(s) shall be involuntarily transferred.~~ After the decision is made, the site administrator must provide the teacher written notice explaining specific reasons for the involuntary transfer.

    3.    ~~After the decision is made, the site administrator must provide the teacher written notice explaining specific reasons for the involuntary transfer.~~ After notice of displacement/involuntary transfer has been provided to a teacher, the teacher will be provided with an online list of all open positions for which she/he may be qualified to teach.  All displaced teachers will be eligible to apply for a voluntary transfer to positions for which they are highly qualified to teach.  Displaced teachers who are selected for such positions through the voluntary transfer process will have met the requirements under CRS 22-63-202 and will maintain their status.

    4.    ~~After notice of involuntary transfer has been provided to a teacher, Human Resources will assist the teacher to find another position for which she/he is qualified to teach.  The teacher must accept the offered assignment within five (5) working days.  The obligation of the District to reassign the teacher will end if the teacher refuses to accept the~~

17                    *07/01/11*

~~assignment.  Refusal to accept an assignment will be considered notification of resignation from the District, effective at the end of the current school year.~~

Mutual Consent.
In the event the teacher does not find a position through the voluntary transfer process, the teacher will become part of a priority hiring pool. Such teachers will be provided with a list of available positions for which they are highly qualified to teach.  Such teachers will be interviewed by the principal and two building teachers designated by the staff.  The hiring manager must agree to accept the displaced teacher in the position, and the displaced teacher must agree to accept the position.  The teacher must accept the offered assignment within five (5) working days. Displaced teachers who are selected for such positions through the voluntary transfer process will have met the requirements under CRS 22-63-202 and will maintain their status.  If the teacher declines the assignment, the obligation of the District to reassign the teacher will end. Refusal to accept an assignment will be considered notification of resignation from the District, effective at the end of the current school year.

5.      Direct Reassignment.
In the event the teacher is not accepted through the mutual consent process, the Superintendent or designated Human Resources Officer, may directly reassign the teacher to an available position for which the teacher is highly qualified for a period of no more than twelve months. The teacher must accept the offered assignment within five (5) working days.  If the teacher declines the assignment, the obligation of the District to reassign the teacher will end.  Refusal to accept a direct reassignment will be considered notification of resignation from the District, effective at the end of the current school year.

6.      Unpaid Leave of Absence.
Non-probationary teachers who have not found a new assignment through the voluntary transfer process or mutual consent process after a period of twelve months or two hiring cycles, whichever period is longer, will be placed on unpaid leave.

7.      Return to Position.
If a non-probationary teacher has been displaced from a building for reasons other than documented performance concerns, and ~~the teacher will have the right to return to~~ a position in that building in the content area for which ~~they are~~ the teacher is highly qualified becomes available within the same calendar year ~~six (6) months~~ of the displacement, the teacher shall be considered ~~provided with the opportunity to interview~~ for the position.  If the teacher is not ~~interviewed or~~ selected for the position by the building administrator, DCFT may, in its discretion, request a review of the decision not to select the teacher for the position.  This review shall be undertaken jointly by the Superintendent or designee(s) and a representative(s) selected by DCFT.  Any recommendation resulting from this review shall be final and cannot be grieved. ~~one year (12 months) after the teacher was displaced.  The District will notify the teacher of such available positions.~~

18

8.    Rehire.

Any non-probationary teacher who is displaced and placed on unpaid leave from the District as part of a general or program RIF will be placed on a Priority Hiring List for a period of two (2) years from the effective date of the lay-off. All such teachers on a priority hiring list will be interviewed for each position for which they are highly qualified. The District will post all open positions on the District website. Such teachers will be eligible for rehire so long as they have maintained an active application in the District's electronic application system and follow all procedures required by the application process and meaningfully participate in the interview process.

9.    If a teacher is rehired after being displaced and placed on unpaid leave, all benefits accrued at the time of the lay-off will be restored. Knowledge level and evaluation level assignment will reflect the experience of the teacher prior to the lay-off. All other benefits will follow the same conditions as applied to leave of absence status.

10.    Waiver of Mutual Consent Provision.

The provisions in this contract for mutual consent process and direct reassignment of teachers may be waived through the mutual agreement of the District and DCFT.

E.    TEACHERS ON SPECIAL ASSIGNMENTS. Teachers On Special Assignments (TOSA's) will retain their contractual rights as defined in this Agreement. TOSA's have specialized expertise, are resources to the system, and can be utilized in a variety of capacities including, non-evaluative coaching, demonstration teaching, curriculum coordination and dissemination, and administrative support. Licensed personnel who accept TOSA positions do so under the following conditions:

1.    Compensation rates for TOSA positions will be determined by the negotiated teacher salary schedule. TOSA's who work extended days beyond their contract will be compensated at their per diem daily rate of pay.

2.    TOSA's will be evaluated using a predetermined customized tool, or if one is not available, the most appropriate tool that closely matches the job description will be utilized.

3.    TOSA positions will be special assignments for one year. Should a TOSA position be eliminated, the teacher will be involuntarily transferred into another position for which she/he is qualified. Return rights for TOSA positions will follow the guidelines for extended leaves of absence. Probationary status TOSA's will have the same rights to reemployment as any probationary teacher.

4.    TOSA one-year contract positions may be renewed on an annual basis.

5.    Prior to creating a TOSA position, a job description must be approved by the office of Human Resources.

F.    NEW HIRING. Posted vacancies in the unit shall be filled with the best qualified teacher applicant from those teachers requesting voluntary transfers and new hires.

*07/01/11*

1.  The best qualified teacher shall be the person best able to perform the duties of the position to be filled as determined by the administrator in charge of filling the vacancy. The vacancy should not be filled until the administrator has had the opportunity to consult with the hiring team. Such consultation shall not be binding on the administrator.

2.  District teacher applicants who meet the minimum qualifications set forth in the posting of the vacancy will be interviewed if they so request and make themselves available for interview within the time provided for interviews.

3.  When all other qualifications and abilities are equal, preference will be given to the regular teacher employed by the School District based on length of service in the District.

G.  NEW SCHOOLS. Teacher positions at new schools upon their opening shall be filled as follows:

1.  Notwithstanding the other requirements of this Article, the District may fill up to forty percent (40%) (rounded up to the next whole number) of the teaching positions upon the opening of new schools by new hires.

2.  Out of all qualified candidates, involuntary transfers to fill positions at new schools at their opening shall be based on inverse seniority, except when a teacher with less seniority must be retained in order to meet identifiable program needs at the sending school. When a teacher is retained under the above exception, the Union will be provided with a written explanation of the identified program needs requiring such exception.

3.  Teachers transferred involuntarily to fill positions at new schools at their opening and who subsequently apply for voluntary transfers to posted vacancies in the schools from which they were transferred shall have first consideration for such transfers in the order in which they were involuntarily transferred, provided they make such requests in writing and are certified and qualified for the vacant position.

4.  Should the procedures outlined above not completely staff the new schools, the District may employ those new hires necessary to complete the staffing.

H.  REDUCTION IN FORCE (RIF). RIF may take place when the Board of Education decides that a financial exigency exists or is to occur during the next fiscal year, or a program change is to be made which requires the cancellation of one or more teaching positions.

1.  Probationary Teachers. When cancellation of a teaching position occurs within any particular endorsement area, the contract of a probationary teacher assigned the endorsement area will be cancelled before the contract of a regular teacher assigned in the endorsement area. When a RIF affects a specific certification area within an individual building, probationary teachers in that building will be released from service first. Effective February 15, 2012, the consideration of probationary and non-probationary status and the number of years a teacher has served in the District will only be considered after the consideration of the teacher's evaluation and effectiveness rating as regards classroom instruction and

20

multiple measures of student performance. Therefore, the contracts of probationary teachers may be cancelled if it is determined by the District the displaced non-probationary teacher's effectiveness rating is equal or superior to the probationary teacher whose contract is to be cancelled and only if the contract cancellation is in the best interest of students enrolled in the District. Regular teachers affected by a program RIF will have a right to continued employment if they hold certification and are endorsed for programs continuing in the District and find a position through the mutual consent process.

EFFICED Document
Defendant's Exhibit ... 4:51 PM
affected by a program RIF will
they hold certification
Be District for a position Corene

2. ~~Regular Teachers. Procedures for identification of those to be released in an RIF of the regular teachers are spelled out in Colorado Statutes. If, because of RIF, regular teachers must be moved from a building and no vacancy exists, the contracts of first-year teachers in that certification area across the District will be non-renewed in order to place all regular teachers. In the event that this does not create the needed vacancies, inverse seniority will be used to determine which teacher's contract will be cancelled, except when a teacher with less seniority must be retained in order to meet identified program needs. When a teacher is retained under the above exception, the Union will be provided with a written explanation of the identified program needs requiring such exception.~~

~~Once those regular teachers have been identified and their contracts cancelled, the remaining regular teachers being transferred from individual buildings will be considered as involuntary transfers to those available positions and must be placed prior to any additional hiring in those areas of certification ("areas of certification" refers to endorsements appearing on the teaching certificate.) Regular teachers affected by a program RIF will have a right to continued employment if they hold certification and are endorsed for programs continuing in the District and will be assigned to that area if a position exists as outlined in this Article.~~

2. ~~Return to Position. If a non-probationary teacher has been displaced from a building, for reasons other than documented performance concerns and placed on unpaid leave from the District as part of a general or program RIF, the teacher will have the right to return-interview to for a position in that building in the content area for which they are highly qualified one year (12 months) after the teacher was displaced. The District will notify the teacher of such available positions.~~

3. ~~Return to Position. If a teacher has been involuntarily transferred either within a building or to another building because of RIF, the teacher will have the right to return to that position if it becomes vacant within two (2) years of the date of transfer. The district will notify the teacher that the position is open. If the teacher refuses to accept the position, the teacher will waive all future claims to return to the position. When a teacher volunteers to leave a position to help during RIF and takes another position within the District, he/she may request a letter granting the provisions of this section.~~

2.      Rehire. Any non-probationary teacher who is displaced and placed on unpaid leave from the District as part of a general or program RIF will be placed on a Priority Hiring List for a period of two (2) years from the effective date of the lay-off. The District will post all open positions on the District website. Such teachers will be eligible for rehire so long as they

21

07/01/11

have maintained an active application in the District's electronic application system and follow all procedures required by the application process.

3. If a teacher is rehired after being displaced and placed on unpaid leave, all benefits accrued at the time of the lay-off will be restored. Knowledge level and evaluation level assignment will reflect the experience of the teacher prior to the lay-off. All other benefits will follow the same conditions as applied to leave of absence status.

4. ~~Recall. Any teacher who is affected by RIF from the District as part of a general or program RIF will be placed on a Recall List for a period of two (2) years from the effective date of the lay-off. Qualified teachers will be re-hired based on seniority, with those holding greatest seniority being re-hired first. The District will offer the positions by sending a registered or certified letter to the teacher's last known permanent address. It will be the responsibility of the teacher to notify the District of any change in permanent address. The teacher must accept the offered assignment within two (2) weeks of the postmarked date, or the position will be offered to the next qualified teacher. The obligation of the District to recall a teacher will end if a teacher refuses to accept the assignment.~~

~~No new teachers will be employed by the District to fill existing vacancies if teachers who have proper certification and endorsement to fill existing vacancies remain on the recall list. If a teacher is recalled, all benefits accrued at the time of the lay-off will be restored. Knowledge level and evaluation level assignment will reflect the experience of the teacher prior to the lay-off. All other benefits will follow the same conditions as applied to leave of absence status.~~

X. ADMINISTRATIVE, PROFESSIONAL AND TECHNICAL CAREER OPPORTUNITIES

A. POSTING VACANCIES. Vacancies in administrative, professional, and technical positions outside the unit shall be posted on the District website for a minimum of five (5) consecutive days. The posting shall specify the requirements and qualifications for the position and the salary to be paid, along with a date by which the applicant must file the application.

B. APPLICATIONS. A teacher who is qualified for an administrative, professional or technical vacancy and who desires to apply for such vacancies shall file his/her application in writing with the Office of Human Resources within the time limit specified in the notice.

C. CONSIDERATION OF APPLICANTS AND INTERVIEW STATUS: All qualified in-District and out-of-District candidates will have an opportunity to apply and be considered for administrative, professional and technical vacancies. Any in-District teacher who has applied for a position in accordance with this article and who does not receive an interview, will be promptly notified. If the teacher submits a written request, reasons for not receiving an interview will be provided.

D. POSITIONS NOT TO BE REQUIRED TO BE FILLED. Nothing herein shall require the Board to fill any administrative, professional or technical position.

22

*07/01/11*

XI.    TEMPORARY LEAVES OF ABSENCE.

A.    APPLICATIONS FOR TEMPORARY LEAVES OF ABSENCE.  Application for all temporary leaves of absence other than sick leave shall be submitted to the principal as far in advance of the dates of leave as possible, and must be submitted at least forty-eight (48) hours prior to commencement of the leave except in emergencies and in situations beyond the control of the teacher.

B.    EFFECT OF TEMPORARY LEAVES OF ABSENCE.  Temporary leaves of absence will not affect tenure, but if they exceed ninety (90) working days, the teacher will not be eligible to move vertically on the salary schedules for the following year.

C.    JURY DUTY LEAVE.  Teachers shall be granted leave with full pay for full or half days of work missed due to service on juries when officially summoned, but shall remit all compensation for such service to the School District, except compensation for mileage or other expenses separately reimbursed to the teacher.

D.    COURT APPEARANCE LEAVE

1.    Work Related.  Teachers shall be granted leave with full pay for full or half days of work missed due to necessary appearances as a witness or a party in any legal proceeding arising out of the teacher's employment with the School District when officially subpoenaed, but shall remit all compensation for such service to the School District, except compensation for mileage or other expenses separately reimbursed to the teacher.

2.    Non-Work Related Court Leave.  Teachers who are subpoenaed as a witness or who are involved as a party in litigation where the teacher's role is not connected with his/her employment may utilize personal leave provided in Section E of this article.  If additional time is needed, the teacher will be granted leave without pay for work missed due to necessary court appearances.  The teacher may request assistance from the District, through the building principal, when required to attend court in excess of available personal leave.  At the discretion of the District, the teacher may be allowed to convert up to five (5) days of sick leave to personal leave for court appearance.  The District will also explore opportunities for additional assignment where the teacher may have an opportunity to make-up lost time.  Such assignments may include substitute teaching or fulfilling track requirements in year-round schools, or projects which the District finds it necessary to staff.

E.    PERSONAL LEAVE

1.    Teachers shall be granted up to two (2) days leave per year with full pay. No approval by the principal/supervisor is required; no reasons need be given for the taking of this leave.

2.    If one or both of the personal days above have been used for the purpose of observance of a religious holiday when the teacher's religious faith requires that he/she not work on such religious holiday, or for teachers officially summoned to appear in a legal proceeding one (1) additional

23

personal day shall be granted to attend to matters of emergency or special nature. If at any time personal leave is used for purposes of court appearances or religious observances, an affidavit may be requested in order to verify the use of personal leave for those reasons. (Once each teacher provides an affidavit with regard to a religious observance day, it need not be resubmitted during the remaining period this provision is in effect.)

3.    Accrual of Personal Leave: Unused personal leave may be accrued up to a total of four (4) days. Three (3) or four (4) consecutive days of accrued Personal Leave may be used at one time with a ten (10) work days advanced notice to the principal/supervisor (solely for the purpose of making arrangements for appropriate substitute coverage). No approval by the principal/supervisor is required; no reasons need be given for taking of accrued leave. If a teacher is unable to provide a ten (10) work days notice to the principal/supervisor due to unique circumstances, the teacher must appeal to the principal/supervisor for leave approval. If denied, appeal may be made to a Director of Human Resources. Personal leave that is unused at the end of the school year and in excess of the above limit, will be added to the individual teacher's sick leave accrual.

F.    PROFESSIONAL MEETINGS and SCHOOL VISITATION LEAVE. Teachers who apply and have been authorized by the Superintendent or his/her designee to attend professional meetings and conferences, or to visit other schools shall be entitled to leave from their current assignments with full pay for the time authorized.

G.    SICK LEAVE. All regularly licensed personnel shall be entitled to sick leave for temporary absence without loss of salary in accordance with the following provisions of this section:

1.    The illness may be that of the employee or a member of the employee's immediate family. The immediate family includes the spouse, child, or parent of the employee. Extenuating circumstances will be considered.

2.    Nine (9) days of sick leave shall be available to all regular full-time employees, beginning on the first day of each school year. These days will be *pro rated* for employees who work less than full-time, or for employees who do not complete the entire school year.

3.    Unused sick leave may be accumulated without limitation.

4.    For calculating purposes, the following guidelines will be followed for full-time teaching personnel concerning absence for illness:

a.    Two (2) hours absence or less - no sick leave charged;
b.    Two to four (2-4) hours absence - one half-day (1/2) sick leave charged;
c.    Over four (4) hours absence – full day sick leave charged.

5.    Use of sick leave for purposes other than those authorized above will result in loss of pay for the days taken.

6.    Upon advance notice to a teacher, he/she shall be required to furnish

*07/01/11*

proof of illness, proof of fitness to return to duty, or proof of fitness to continue to perform duty. At any time, the District may require the teacher to be examined by a physician designated by the District at District expense.

7.    Teachers acquire immediate eligibility for the current year's sick leave allotment on the first day of each school year. If they leave District employment prior to the end of the school year, salary deduction will be made for sick leave taken, but not earned. One (1) day of sick leave is earned per month of the school year.

8.    In addition to the sick leave provided in Subsection G.2. above, teachers shall be granted up to two (2) additional days of leave per year when there is a serious illness or injury in the teacher's immediate family (as defined in Subsection G.1. above) requiring the care or attendance of the teacher. This additional leave shall not be available until all accumulated sick leave is exhausted and the teacher shall have taken one (1) day for such purposes without pay. The unused portion of such leave may not be accumulated under the provisions of Subsection G.3. above.

    a.    Additional leave requests shall be made in writing and sent to the Office of Human Resources a minimum of three (3) days in advance of the day for which the leave is required.

    b.    In emergency situations, the request may be written and submitted following the use of the leave. In emergency situations, the timing of the submission shall not be a factor in its approval or disapproval.

H.    SICK LEAVE BANK. The licensed employee sick leave bank was created by reducing licensed employees' sick leave yearly accrual by one (1) day. Prior to the creation of the sick leave bank, licensed employees accrued ten (10) such days per year. After the creation of the sick leave bank, they accrued nine (9) days per year.

The one (1) day deducted annually from each licensed employee is the basis of the sick leave bank and the amount of the days available for use by the licensed employees. When the balance in the sick leave bank is exhausted, every licensed employee will be assessed one (1) additional day. If the employee does not have one (1) day of sick leave to be assessed, the assessment will occur at the beginning of the next school year. Any days remaining in the sick leave bank at the end of a school year will be available for use during any subsequent school year.

1.    Benefits of the sick leave bank shall be used only when a teacher is deemed unable to work due to illness or disability as defined in policy and procedure established jointly by the District and the DCFT. Benefits do not cover illness or disability of family members.

2.    Teachers who have exhausted their accumulated sick and personal leave and are unable to work due to illness or disability may apply to the sick leave bank for extended sick leave coverage.

3.    A minimum of twelve (12) days of any medical or disability-related absence will not be covered by the sick leave bank, but must be covered

25

by the teacher's own accumulated sick leave and/or personal leave. If the teacher does not have twelve (12) days of accumulated leave, his/her annual salary will be reduced by the teacher's per diem rate for the portion of the twelve (12) days not covered by such accumulated leave.

The first day of absence not covered by the employee's accumulated leave will not be covered by the sick leave bank, but will result in the teacher's salary being reduced by one day's per diem rate of pay.

4.  Initial application for sick leave bank benefits will require medical certification and shall be made in writing on the form prescribed by the Office of Human Resources. Any application to extend sick leave bank benefits beyond the initial request will require updated medical verification of an employee's inability to return to work. Such application for continuation of sick leave bank benefits for the same illness will not require any days without pay.

5.  Additional medical verification may be required for any leave request that exceeds standards for a particular medical condition. The District reserves the right to request verification from a physician who specializes in the particular medical condition.

6.  A maximum of forty-eight (48) days may be withdrawn by any full-time teacher, or on a prorated basis for less than full-time, during any school year, or for any illness or disability which bridges two (2) school years. If a teacher's sick leave bank benefits bridge two school years, the nine (9) sick and two (2) personal leave days provided by this agreement at the start of a new school year, may not be used consecutively with sick leave bank benefits.

7.  Any subsequent request for sick leave bank benefits for a new and distinct illness or disability during the course of any school year must follow the same guidelines and procedures described above with the exception that only six (6) days will not be covered by the sick leave bank and will result in the teacher's salary being reduced at the rate of his/her per diem pay.

8.  The District is authorized to seek independent medical opinions at any time to determine the nature and extent of the teacher's disability. The authority to grant benefits and develop guidelines rests with the District, operating through the Office of Human Resources, and the President of the DCFT or his/her designee.

9.  Teachers who are unable to return to work due to a chronic illness or disability, and have exhausted their sick leave bank benefit, may apply for long-term disability benefits.

10.  Decisions regarding the granting of sick leave benefits are final and not subject to appeal or the grievance procedure, whether in contract or policy.

11.  The Office of Human Resources shall maintain all records and shall make forms, guidelines and procedures available to employees.

26

*07/01/11*

I.      **FAMILY MEDICAL LEAVE ACT (FMLA).** Absences for reasons covered by the FMLA shall be covered with the provisions of that Act. Further detail may be obtained by contacting the Office of Human Resources.

J.      **BEREAVEMENT LEAVE.** Regularly employed certificated personnel will be allowed up to five (5) consecutive contracted days of leave of absence without loss of pay immediately following the death of any member of the teacher's immediate family. This will include parents, grandparents, spouse, siblings, children, and spouse's immediate family. Two (2) additional consecutive days shall be deducted either from personal leave or accrued sick leave or, if neither is sufficient, shall be without pay.

When a request for bereavement leave is made for reasons other than those detailed in the above provision, a determination will be made by the Director of Human Resources as to the nature of the request and appropriate use of bereavement leave. In such cases, all decisions made by the Director of Human Resources will be final and not subject to the grievance process.

K.      **WORKER'S COMPENSATION.** Teachers absent due to injuries incurred in the scope of employment and covered by Worker's Compensation may utilize accrued sick leave or personal leave in half-day ($\frac{1}{2}$ day) increments to makeup resulting loss of income. Upon request, and not more often than monthly, the District will allow employees to convert sick leave and personal leave to extra pay in an amount not to exceed that which is necessary to provide the employee the same take home pay normally earned by the employee after deductions. Only an employee's accrued sick leave and personal leave balances may be converted. The Sick Leave Bank is not available for conversion.

L.      **OTHER ABSENCES.** Absences which are not covered under the specific provisions of short-term leaves of absence, or which are in excess of paid leave granted, shall be charged against the salary of the teacher in an amount equal to 1/370th of the year's salary for each one-half (1/2) day absence. If the absence, however, is from regularly assigned duties because of assignment to other school business, the absence shall not result in loss of salary.

XII.    **EXTENDED LEAVES OF ABSENCE**

A.      **GENERAL PROVISIONS APPLICABLE TO ALL EXTENDED LEAVES.** Teachers may apply for extended leaves of absence for a variety of reasons as described in this Article:

1.     Requests for leaves of absence should be submitted to the building principal with a copy to the Office of Human Resources as far in advance of the date of the commencement of the leave of absence as is reasonable considering the nature of the leave. The written request will include the dates for commencement of leave and return to duty from leave, and describe the circumstances surrounding the leave of absence request. Leave of absence requests are formally approved by the Board of Education following recommendation from the Office of Human Resources.

2.     If an extended leave of absence covers one (1) academic school year or less, the District will return the teacher to the school and assignment which the teacher held prior to the leave, provided the position still exists.

27

Any teacher on approved leave of absence will be considered in the same manner as a member of the staff of the school to which he/she was assigned prior to the leave of absence for such matters as determining involuntary transfers, and class, grade, or track assignments, etcetera. Notices regarding assignments provided by Article VII.F of this Agreement shall be given to teachers on leave, provided the teacher on leave has supplied the school with a mailing address. If a leave extends for more than one (1) year, the teacher will be returned to another position for which the teacher is qualified.

3. Benefits available to teachers on leaves of absence will vary based upon the nature of the leave being granted.

4. The teacher's rights and status under the Teacher Employment Act will be continued during the extended leave period.

5. During any approved extended leave of absence, teacher status will not be affected, but if such leave is granted to exceed ninety (90) working days, the teacher will not be eligible for an evaluation level increase for that year.

6. A teacher on extended leave shall send written notification to the Office of Human Resources regarding their return to active service no later than February 1st or no less than thirty (30) days prior to the end of the leave if the leave dates do not correspond to the end of the school year. Due to special or unusual circumstances, a teacher may file a "request for delay." A request for delay, if approved, allows a teacher an additional thirty (30) calendar days in which to make a decision. The request for delay will be judged on its own merit and must be filed with the Office of Human Resources no later than February 1st, or thirty (30) days prior to the end of the leave if the leave dates do not correspond to the end of the school calendar year.

B. CHILD CARE LEAVE. A teacher may take an extended leave of absence for the purpose of childcare, which includes maternity, paternity, adoption, and medical related childcare.

1. Any teacher shall be eligible to use accumulated sick leave for working days missed due to disability caused by pregnancy or childbirth or recovery therefrom. Such absence may be charged to sick leave in accordance with the provisions of the sick leave section of this contract. Any absence beyond that caused by disability, or the required care of an infant or child who is ill shall be leave without pay.

2. The teacher requesting child care leave shall notify the Office of Human Resources of his/her desire to take such leave and, unless an emergency makes such notice impossible, shall give written notice at least thirty (30) calendar days prior to the anticipated commencement of the leave.

3. The teacher will request to take childcare leave for a pre-determined period of time. The duration of the leave may include up to 12 weeks of FMLA protected unpaid leave, but shall not exceed the extended leave windows as described in this section. The teacher's written request will include a request to be returned to the same position, if desired, and the date of return to active service. For leave requested due to

28

disability/maternity, the date of return to work shall be a date determined by the employee and the employee's physician. A teacher whose leave exceeds the 12 weeks of FMLA will return only at the beginning of a semester or beginning of new school year (see examples below). At the joint request of the teacher and principal, the Department of Human Resources may consider extending the leave for one semester if it would mean having the teacher return at the beginning of a school year (see examples).

Examples:

| Birth of Child | 12 weeks (FMLA) | One Year from Birth | Return Date Options |
|---|---|---|---|
| July 28, 2007 | Oct. 20, 2007 | July 28, 2008 | Jan. 08 or July 08 |
| Dec. 15, 2007 extension) | March 9, 2008 | Dec. 15, 2008 | July 08 or Jan. 09 or July 09 (w/ approved |
| Jan. 15, 2008 extension) | April 2, 2008 | Jan. 15, 2009 | July 08 or Jan. 09 or July 09 (w/ approved |
| April 2, 2008 extension) | June 25, 2008 | April 2, 2009 | July 08 or Jan. 09 or July 09 (w/ approved |
| June 1, 2008 | Aug. 24, 2008 | June 1, 2009 | Jan. 09 or July 09 |

4.  In the event that both parents are teachers employed by the District, either teacher may request childcare leave for the periods of time permitted. However, they may agree on a plan to share child care leave up to the maximum permitted, but such shared leave must be taken in whole semesters, except child care leave in the first semester following the birth or adoption of the child, which must be taken the end of that semester. Child care leave affecting more than one (1) semester must be taken consecutively.

5.  Amending Leave. A teacher who requests amendment of his/her initial child care leave shall submit a request in writing to the District's Office of Human Resources not less than thirty (30) days prior to the teacher's original date of return. The teacher's request to amend leave will be considered as follows:

   a.  Each individual request will be judged on its own merit; and

   b.  A teacher who is granted a request to amend child care leave is not guaranteed return to the same position held at the time of leaving. The teacher's return will be based on the availability of jobs for which the teacher is qualified. In any event, the District shall not be compelled to return said teacher to a position prior to the beginning of the school year.

C.  MILITARY LEAVE.

   1.  <u>Military Training Leave.</u> Employees belonging to guard or reserve units are permitted time off when ordered to attend military training by their unit. A leave not to exceed fifteen (15) calendar days per year shall be without any loss of pay. The employee must provide the supervisor with a copy of the military orders to attend training, and apply for leave through the Human Resources Department.

   2.  <u>Military Service.</u> An employee is eligible for leave consistent with the provisions of state and federal law when entering into active military service. Employees entering into active military service should provide their supervisor with orders or other documentation regarding their military service

07/01/11

and apply for leave through the Human Resources Department. Except for the military training leave identified in section A. above, military leave is without pay.

When a former employee seeks reinstatement to employment at the conclusion of his/her military service, reinstatement will be governed by the provisions of state and federal law as it may exist at the time reinstatement is sought.

An eligible employee who is the spouse, son, daughter, parent, or next of kin of a covered service member who is recovering from a serious illness or injury sustained in the line of duty on active duty is entitled to up to 26 weeks of leave in a single 12-month period to care for the service member. (Extended/FMLA Leave Policy GBGF)

D.    ~~EDUCATION LEAVE.~~   *~~NOTE: This Education Leave section is suspended for the 2008-2011 school years.~~
~~A teacher is eligible for an education leave for professional growth through advanced study, travel, or other purpose approved by the Board after six (6) full years of active service as a contracted teacher in the School District.~~

1.    ~~The District and the Union contemplate flexibility in the period of leave to accommodate the requirements of degree or other educational programs, as well as the scheduling constraints presented by the various school calendars. Leaves are short as three (3) weeks may be appropriate depending on the educational program and school schedule constraints. Education leaves may be combined with unpaid leaves and trading of teaching assignments to accommodate scheduling problems. Applications may be for one of the following types of education leave payment plans based on the teacher's current salary:~~

    a.    ~~Leave for one (1) school year at half-pay;~~

    b.    ~~Leave for one (1) school semester at full-pay; or~~

    c.    ~~Leave for one (1) school year at 3/4-pay, 1/4 of which shall be repaid by the teacher during the year following the leave. The teacher will be required to sign a promissory note for the amount to be repaid. The teacher must agree to return to employment with the School District for a period of one (1) year following the leave and may be required to sign a contract to that effect.~~

2.    ~~Application shall be made to the Board of Education through a Professional Growth Committee by April 1st of the school year prior to the school year in which a first semester leave is requested; and by November 1st of the calendar year prior to a requested second semester leave. Applications for second semester leaves will be accepted only if funds allocated for education leaves have not be expended on applications made prior to the April 1st date.~~

3.    ~~Payments to teachers on education leave will be limited to $100,000 each school year.~~

4.    ~~Selection will be made by the Board of Education upon recommendation of the Professional Growth Committee, whose members shall consist of four (4) teachers selected by the Union; two (2) administrators appointed~~

30

~~by the Superintendent; and two (2) other members appointed by the President of the Board of Education, who may be members of the Board of Education. The Professional Growth Committee shall develop Education Leave selection criteria.~~

EFILED Document
CO Douglas County District Court 18th JD
DATE FILED: February 15, 2013 4:51 PM
CASE NUMBER 2013CV30481ST
Filing ID: 49563911
Review Clerk: Linda Gorenc

~~5. A teacher on education leave shall be entitled to receive benefits for long term disability insurance, hospital and surgical insurance, and dental insurance as if employed on a full-time basis. Public Employee Retirement Association contributions made by the School District shall be based on the actual salary paid to the teacher at the rate then in effect. No other benefit shall apply or accrue while the teacher is on education leave.~~

~~E.~~ D. OTHER EXTENDED LEAVES OF ABSENCE WITHOUT PAY. Applications for other types of extended leaves of absence without pay may be submitted to the Board of Education. These leaves may be for the purpose of further education, travel, medical leaves that extend beyond the coverage of sick leave or sick leave bank, or other personal reasons as approved by the Board upon recommendation of the Office of Human Resources.

XIII. TUITION REIMBURSEMENT

A TUITION REIMBURSEMENT PROGRAM. The District will make available to teachers covered under this Agreement, the sum of $100,000 per year for a Tuition Reimbursement Program.

1. Teachers Eligible. Tuition reimbursement is available to any teacher who has either a regular part-time or full-time contract with the District, or who is on an approved leave.

2. Covered Expenses. Tuition reimbursement is available for tuition or registration expenses in connection with programs that qualify for knowledge level advancement under Article XIV.A.7. of this Agreement. Reimbursement will be limited to registration expenses and will not cover books and supplies, travel, lodging or other such expenses.

3. Dollar Limit. Each individual teacher may be reimbursed for actual expenses, but no teacher will receive more than $750 per year in reimbursement, nor more than $2,000 in any five (5) year period.

4. Procedure. Tuition reimbursement is available in accordance with the procedures outlined by the Professional Growth Committee. A copy of these procedures is available from the DCFT office. All requests will be considered and approved or denied until the dollar limit stated above has been reached. Any decision by the Professional Growth Committee concerning tuition reimbursement is not subject to further appeal through the grievance procedure. Teachers wishing to take a program of study for which they seek reimbursement must file a "Tuition Reimbursement Request" with the DCFT office prior to undertaking the course of study. A form will be provided for such application. The Professional Growth Committee may make rules and procedures regarding the re-allocation of funds set aside for tuition reimbursement applications which are not successfully completed. Payment of an approved tuition reimbursement request will be made upon presentation to the DCFT office by the teacher of proof of payment, and successful program completion appropriate to

31

the activity. Specific documentation required will be determined by the President of the DCFT.

B.    LOW COST LOAN PROGRAM

1.    The District and the Union have agreed to the establishment of a Low Cost Loan Program administered by the DCFT for the purpose of making interest-free loans to teachers for the following purposes:

a.    To enable teachers to take college level courses which would qualify them for advancement on the Teacher Salary Schedule as provided in the current agreement between the parties; and

b.    For other professional growth in accordance with the criteria developed by the Professional Growth Committee as established by the current agreement between the parties.

2.    Administration. The DCFT will hold the funds in a trust and administer the program consistent with the purposes set forth in Subsection XIII.B.1. above. The DCFT is to establish communication as it deems appropriate with staff regarding the program. The DCFT may charge a service fee to District licensed employees who qualify for the program in order to off-set the costs of administration of the program. Funds that are not currently on loan to employees shall be maintained in an interest-bearing account in trust for the District, with the interest earned on said funds being applied to support the program and/or to cover administrative costs associated with the operation of the program.

3.    Annual Reports. At least annually, on a schedule determined by the Financial Services Division of the District, the DCFT will provide the District with information regarding the utilization of the funds in question. The information shall include the number of teachers who participated in the program, the amount of money lent to teachers, the re-payment plans in place, and the progress being made toward the re-payment of the obligation.

4.    Termination. The Low Cost Loan Program may be terminated by either party at June 30 of any year upon thirty (30) days written notice to the other. Promptly upon termination, the sum of $237,269.88 will be returned to the District, less any sums then on loan to employees and further, less any sums jointly deemed uncollectible by the DCFT and the District. The DCFT will assign to the District any right to receive re-payment of funds on loan to employees that may be in place as of the effective date of termination.

XIV.   COMPENSATION

A.    SALARY

1.    2010-2011 Compensation. Teachers covered by this Agreement shall be paid as provided in this Article effective July 1, 2010. All teachers will be paid a base salary computed as provided in Section A.2.of this Article. In addition, teachers will qualify for additional pay more fully described in subsequent subsections of this Agreement, identified as:

32

□  Group Incentive Pay
□  Responsibility Pay
□  Outstanding Teacher
□  Master Teacher
&#8319;  Skill Blocks

The District will report to the Union annually regarding the funds applied to each of these programs. Whenever in this Article reference is made to the Performance Pay Plan For Teachers, such reference is to the latest revision of such plan. This Agreement incorporates by reference, and is bound by the provisions of the then-current handbooks, guides, or Plan documents of the Performance Pay Plan For Teachers. In no event will any decision regarding any performance component regarding an individual teacher be subject to the contract grievance procedure. Rather, any such decision may be appealed or reviewed as provided in the Performance Pay Plan For Teachers or implementing documentation.

Teachers will continue to receive salary increases for additional educational attainment as under the previous salary schedule. However, the computation will be determined by the formula set forth in this section. Evaluation advancement is contingent on a determination that the teacher is proficient (satisfactory), replaces the previous experience step increase plan. A teacher rated unsatisfactory will not be entitled to an evaluation level advancement, market increase (increase related to a base pay increase), or a knowledge level increase for the year for which he/she was rated unsatisfactory.

2.    Base Salary Formula. (Frozen for 2010-2011; based on 2008-2009 formula) For the 2010-2011 school year, a teacher's compensation will be calculated using the values for base salary and the value of evaluation advancement at each corresponding level as set forth in the following tables of revised salary formula values:

a.    The Hybrid Formula (amend base salary amount to $34,134 and change dates to 2010-2011.)

$$\text{Teacher Salary} = \text{BASE} \times (1 + K_1) + E_c \ (E_v)^{K_L}$$

BASE = District Base Salary $34,134 for 2010-2011.
$K_1$ = Percentage increase for Knowledge Levels, .03 for 2010-2011
$K_L$ = Teacher's Knowledge Level (See Salary Determination Table)
$E_c$ = Teacher's current Evaluation Level (subject to limits shown on Table)
$E_v$ = Knowledge Level's Evaluation Value (See Table)

b.    Knowledge Level. Each teacher will be assigned to a knowledge level based on the number of semester hours or their equivalent, attained by the teacher and recognized by the District in accordance with the knowledge level placement provisions of this

33

Agreement. Effective July 1, 1997, knowledge levels are determined by semester hours. Previous District records were compiled on a quarter-hour basis, and those levels will now be recognized on a semester hour-basis as described in the Salary Determination Table that follows.

c.    Evaluation Level. A teacher's base salary shall be determined by multiplying the negotiated base salary of $34,134 by 1 + .03, raised to the power represented by the knowledge level factor identified on the Salary Determination Table which corresponds to the semester hours of knowledge attained by the teacher. To this product will be added an amount equal to the product of the evaluation level the teacher previously attained, not to exceed the maximum evaluation level applicable to the semester-hours knowledge attained, multiplied by the value of the evaluation advancement at that level. See Salary Determination Table. Teachers new to the District without experience recognized under Section A.7 of this Article will be at Evaluation Level "O."

d.    Evaluation Advancement after Fall 1994. Since the Summer and Fall of 1994, any further evaluation advancement will occur annually for teachers who have worked ninety (90) days or more of the school year, and who have been rated at least "satisfactory" on the teacher evaluation administered through the annual evaluation process.

Reference: Values of Evaluation Advancement for the 2010-2011 year are as set forth in the following 2010-2011 Salary Determination Table:

34

*07/01/11*

## 2010-2011 **Salary Determination Table**
### Frozen in 2010-2011

| Semester Hour Knowledge Attained | Knowledge Level Factor | Maximum Evaluation Levels | Value of Evaluation Advancement July 1, 2009 |
|---|---|---|---|
| BA | 0 | 10 | 1376 |
| BA + 14 | 1 | 11 | 1481 |
| BA + 28 | 2 | 12 | 1578 |
| BA + 36 | 3 | 13 | 1752 |
| MA | 4 | 14 | 1830 |
| MA + 16 | 5 | 14 | 1902 |
| MA + 32 | 6 | 15 | 1974 |
| MA + 48 | 7 | 16 | 2046 |
| Ph.D. | 8 | 17 | 2121 |

Notes:

1.     Only teachers who are on the BA + 54 (quarter- hour) level of the 1993-1994 schedule are eligible to be paid at the BA + 36 (semester-hour) Knowledge Level.

2.     Semester-hour totals are 2/3 of quarter-hour totals

3.     Limits on Knowledge Level BA + 36 (Semester Hours).  Effective September 1, 1991, the contract between the parties provided that no District employee could be placed on the BA + 54 (quarter-hour) lane of the then-current District Salary Schedule.  However, employees who had attained that level prior to that date could continue to move through the lane as long as they were continuously employed by the District.  In order to continue to recognize that commitment, teachers who achieved

35

placement on the BA + 54 (quarter-hour) lane of the1993-1994 Salary Schedule will be paid on the basis of an attained knowledge level of BA + 36 (semester-hour), which represents knowledge level factor 3 on the Salary Determination Table. No new teachers hired in the District may attain this level.

4.      Probationary Teachers. Probationary teachers employed by the District on and after July 1, 2005 who hold a Bachelor's Degree, will be paid 98.4% of the base salary computed in Section A.2. above. Probationary teachers who hold a Master's or a Doctorate Degree will be paid 97.4% of the base salary calculated above. Upon attaining regular teacher status in the District, these employees will be paid the full amount determined by the formula indicated above.

5.      Longevity Pay. In addition to the base salary provided by the formula above, upon completion of their 14th, 19th, 24th, and 29th years of successful teaching experience recognized by the Douglas County Schools as determined by the teacher's placement in the District salary formula, the teacher will receive an additional salary of $750.00. Those teachers with a Master's Degree and above will receive an additional $750 after successful completion of their 14th year. If a teacher moves from the BA to the MA level during a contract year, the additional longevity stipend will be prorated.

6.      Initial Salary Determination. A teacher who is new to the District will be assigned a knowledge level and evaluation level by the Superintendent or his/her designee. Placement will be based on previous teaching experience and professional preparation in accordance with the following:

        a.      An evaluation level will be assigned equivalent to successful experience. Up to six (6) years of successful experience shall be recognized, provided that it occurs in the eight (8) calendar years immediately preceding the date of employment. For positions that the Office of Human Resources and the DCFT have agreed are categorized as "hard-to-fill," the District may recognize up to eight (8) years of successful experience, provided that it occurred in the ten (10) calendar years immediately preceding the date of employment. The service recognition standards set forth in this subsection are applicable only to employees newly-hired in the District during the term of this Agreement, and no change or adjustment in compensation will result for a previously-hired employee.

        b.      Qualifying Service. Successful relevant service as a teacher or school professional will be counted, provided the service was at a public elementary or second school, a private or parochial school deemed comparable by the District and including college or university teaching, provided the teacher was a full-contract basis, and not serving as an adjunct professor.

        c.      A knowledge level will be assigned using credits from colleges or universities holding regional accreditation. Credits beyond the degree shall be accepted if obtained as part of the teacher's preparation program or in the area of the teacher's license or assignment at the time of placement.

36

d.  As a general rule, and except in extenuating circumstances, a newly hired teacher will not be assigned an evaluation or knowledge level higher than justified by his/her previous education, training, teaching experience or applicable non-teaching experience.

e.  Once a teacher's contract is signed, the matter of initial placement is closed. Any subsequent modifications to District Employment Standards will be applicable only to employees newly-hired by the District, and no adjustment in placement or compensation will occur for existing employees hired prior to the effective date of the change.

7.  Knowledge Level Advancement. Knowledge level placement changes will be made under the following conditions:

a.  The School District will recognize approved in-service programs toward knowledge advancement up to half (1/2) the number of hours required to attain the next level.

b.  To be applicable for knowledge level advancement, all college and in-service hours must be earned following receipt of the degree to which the individual's compensation is tied. Credit for in-service or college hours must be earned outside the regular contract day unless pre-approved by the Office of Human Resources.

   1)  Course work that meets the following criteria will be accepted.
       a)  Work directed toward a degree in education;
       b)  Work in the individual's area of certification or licensure;
       c)  Work in the area of the individual's current assignment;
       d)  Work improves instructional methods and/or understanding;
       e)  Work in an area the District and the DCFT annually agree are high need areas (A list of high need areas will be posted on the District website under Knowledge Level Advancement)

c.  Teachers may receive pre-approval from the office of Staff Development / Human Resources for any course not addressed by the criteria above.

   1)  Teachers requesting KLA course pre-approval must complete the appropriate KLA pre-approval form and submit it to the Office of Staff Development in advance of registering for the course.

   2)  Special consideration will be made for courses of study that can be documented to have started prior to July 1, 2005.

d.  To receive credit for KLA, teachers must submit the required documentation.

   1)  A completed Application for KLA form; and
   2)  Official college transcripts

37

*07/01/11*

3) Official DCSD Staff Development transcript, (only ½ of KLA credit my be in-service credit.)

e. KLA application materials have been modified to aid in the collection of data. Specific data that will be collected include:

1) On-line learning and correspondence courses;
2) Course work that increases a teacher's content knowledge, instructional methods and/or instructional understanding; and
3) Coursework that fits the description of self-improvement or personal productivity.

f. Half (1/2) the hours applicable to knowledge level advancement, including equivalent in-service credit, must be earned in the last six (6) years prior to the advancement date.

g. Credits required for knowledge level advancement shall be approved semester-hours from a college or university holding regional accreditation and shall be obtained in the area of work directed toward a degree in education, the area of the teacher's assignment to include curricular, co-curricular, or extra-curricular. In-service hours shall be District offered ins-service hours. Requests for credit for other courses or travel require the advance approval through the out-of-District credit approval process. This joint Staff Development/Human Resources process considers requests for credit for course work or travel if they are deemed to results in increased competence in the field to which the teacher is assigned. The decisions as herein provided are final and not subject to review in accordance with the grievance procedure set forth in the Agreement.

h. Each teacher desiring knowledge level advancement shall be responsible for completing the necessary application and pay record forms and delivering same to the Office of Human Resources, together with an official transcript verifying credits claimed. Paperwork submitted by the second Tuesday of the month will be approved for payment, results in an adjustment in salary effective the first day of the following month (appearing on the payroll on the 20th). Upon receipt and approval of the documentation for Knowledge Level Advancement by the Office of Human Resources, the payroll office will calculate the number of contract days the teacher has remaining in the year and prorate the increase in salary accordingly. The teacher will begin to earn salary at the increased rate on the first work-day of the following month.

i. A teacher who has reached a maximum salary level in a given column of the salary spreadsheet will be given no more than one year of service credit and moved no more than one vertical step down in the appropriate Knowledge Level column.

j. Teachers may submit no more than 16 credits toward knowledge level advancement on the teacher's salary schedule per six month period. Six-month periods are defined as July 1 – December 31 and January 1 – June 30.

1) Exception for KLA movement from BA00 to MA00: If a teacher

38

fails to submit a KLA for BA14 and BA28 and he/she has received a Master's degree, a teacher may apply for step MA00. The application will be considered provided two consecutive six month periods (please see above for definition of a six-month period) have passed since being placed at BA00.

2) Exception for KLA movement from BA14 to MA00: If a teacher fails to submit a KLA for BA28 and he/she has received a Master's degree, a teacher may apply for step MA00. The application will be considered provided one six month period (please see above for definition of six month period) has passed since being place at BA14.

B.   PART-TIME TEACHERS. Part-time teachers who are assigned for less than one (1) work day shall have their salary calculated in the same manner as full-time employees, but they will receive the proportion of salary, sick and personal leaves and fringe benefits that their work day bears to one (1) full work day.

C.   EXTRA CLASSES TAUGHT. Teachers who are scheduled to teach an additional class or are assigned a duty for a semester or full year must receive prior approval for such assignment, in advance of working the assignment, from the Assistant Superintendent of Human Resources or his/her designee. Payment will be based on the teacher's hourly rate (annual salary divided by 1387.5) multiplied by 1.25 in order to enhance the hourly rate. The enhanced hourly rate will be multiplied by the additional hours taught (minutes per class x number of class meetings divided by 60).

D.   CLASS COVERAGE PAY

1.   For the ~~2010-2011~~ 2011-2012 school year, regularly appointed classroom teachers who agree to cover other teachers' classes during their preparation periods at the request of the principal will be paid at an hourly rate of $30.00, in addition to their regular pay. This rate will be annually adjusted using 80% of the current year's average teacher salary divided by 1387.5 hours, rounded to the nearest half dollar.

2.   If a building splits a teacher's class between two (2) or more teachers for more than sixty (60) minutes, then each of the covering teachers will be paid at the same hourly rate as in section XIV.D.1.

E.   EXTENDED CONTRACTS. Teachers or other specialists who are asked to work extra days will be paid on a *per diem* basis. Extended contracts for working days beyond the negotiated work year are one-year only assignments. All extra work days must have the prior written approval of the Office of Human Resources.

F.   COUNSELORS WORK YEAR. The additional four (4) days counselors work, in addition to the normal teacher work year, must be worked in the week immediately before or after the school year. Payment for additional days worked beyond the normal teacher year will be paid on a *per diem* basis.

G.   CURRICULUM COMMITTEES. For the 2010-2011 school year teachers who participate on District Curriculum Committees may have released time for such

07/01/11

participation or be compensated at a rate of $24.00 per hour for the time worked beyond the 7-1/2 hour workday. Schedules for Curriculum Committee meetings will be agreed upon in advance by the District and the participants. The District may pay pre-arranged stipends for curriculum work where the District identifies the scope of the work and the expected time required before getting commitments from teachers to work on the projects.

H. PERFORMANCE PAY COMPONENTS.

1. OUTSTANDING TEACHER. In addition to other compensation provided, a teacher who achieves the designation of Outstanding Teacher shall receive a one-time payment. The District will fund the Outstanding Teacher component of the Performance Pay Plan at the 2008-2009 level plus growth for school year 2009-2010. The Performance Pay Improvement Committee (PPIC) will consider participation levels and will recommend individual stipend amounts to the Negotiation Teams for publication by November 1, 2009. Several options for attainment of the Outstanding Teacher designation will be available to eligible teachers. Criteria, standards, guidelines, procedures, and an appeals process for each of these options will be by the governed by the Performance Pay Improvement Committee. In no event will any decision regarding any teacher rendered under this program be subject to the grievance procedure.

2. MASTER TEACHER. In addition to other compensation provided, a teacher who achieves the designation of Master Teacher shall receive additional salary compensation of $2,500.00 per year. In no event will any decision regarding any teacher rendered under the Master Teacher program be subject to the grievance procedure.

3. GROUP INCENTIVE. The District will support a Group Incentive Program with funds equal to $325.00 per licensed full-time equivalent teacher employed by the District as determined on the October 1 student count day. The Group Incentive Program will be governed by the Performance Pay Improvement Committee through the Group Incentive Board that will consist of teachers appointed by the Union, District appointees, and one (1) community member.

4. SKILL BLOCKS. The District will fund the Skill Block Program with an amount equal to $160.00 per licensed full-time equivalent teacher employed by the District as determined on the October 1 student count day. The Skill Block Program is designed to reward teachers for the acquisition of new skills that support the Strategy Plan of the District. The Skill Block Program will be governed by the Performance Pay Improvement Committee through the Skill Block Advisory Committee which will consist of three (3) teachers appointed by the Union, two (2) administrators, one (1) community member chosen by the District, and one (1) liaison from the Department of Staff Development.

5. EDUCATIONAL RESEARCH AND DISSEMINATION PROGRAM (ER&D). The District agrees to provide fiscal support negotiated each year by the DCFT President and Superintendent or his/her designee in order to maintain and develop Skill Blocks. The ER&D Skill Block program will adhere to the following guidelines.

*07/01/11*

EFILED Document
CO Douglas County District Court 18th JD
Filing Date: Apr 25 2011 4:51 PM
Filing ID: 49563911
Review Clerk: Tanja Gorenc

    a.     All ER&D Skill Blocks and related seminars must align with the District's instructional goals and support Board Goals and Executive Limitations.

    b.     The Certified Skill Block Advisory Committee will annually evaluate the ER&D Skill Blocks for overall program alignment and quality; and,

    c.     The DCFT will retain control of decisions regarding content, structure, personnel and supervision of the ER&D Program.

6.    NATIONAL BOARD CERTIFIED TEACHERS. A teacher who is Nationally Board certified shall receive additional salary compensation in the amount of $2,500 per year.

    a.     Following a total of no more than five (5) years of such additional compensation, all National Board certified teachers must participate in and meet the criteria, standards, guidelines, procedures, for Master Teacher designation to be eligible to receive additional compensation for the remaining five (5) years of their National Board Certification.

    b.     All National Board certified teachers transitioning into Master Teacher will be required to begin collecting student growth data during the 2004-2005 school year in accordance with the Master Teacher renewal guidelines in order to submit for the Master Teacher designation during the 2009-2010 school year.

    c.     A timeline and criteria will be established by the Performance Pay Improvement Committee for current National Board certified teachers to transition into the Master Teacher program. In no event, will any decision regarding any teacher rendered under the Master Teacher program be subject to the grievance procedure.

I.    SPECIAL ASSIGNMENT PAY

1.    Secondary School Activities. Teachers who are assigned special duties will be compensated for performing such assignment according to Schedule A, attached.

2.    Elementary Co-Curricular Pay. The District will fund Elementary Co-Curricular activities at the rate of $7.75 per student per year. Student numbers will be determined as of the October 1 student count day. Each Elementary school's budget for Co-Curricular Pay shall be administered by a collaborative committee composed of administration and teachers. All monetary requests from co-curricular sponsors shall be made to the Committee, whose decisions shall be final and not subject to the grievance procedure.

3.    Site-Based Responsibility Pay. The District will fund Site-Based Responsibility Pay at the rate of $5.75 per student per year. Student numbers will be determined as of the October 1 student count day. The certified staff in each school shall develop criteria and the process by which Site-Based Responsibility Pay for that school will be distributed. Each Elementary school's budget for Site-Based Responsibility Pay shall

41

be administered by a collaborative committee composed of administration and teachers.

    4.    District-Based Responsibility Pay. The District will fund District Responsibility Pay at the rate of $25.00 per full-time equivalent teacher employed as of the October 1 student count day. The President of the Union, in cooperation with the Assistant Superintendent of Human Resources will identify activities that qualify for District Responsibility Pay, and identify the amount to be paid for those responsibilities. This money is to support joint District/Union efforts and activities relating to the Performance Pay Plan For Teachers.

J.    MILEAGE ALLOWANCE. Teachers using their vehicles on official school business shall be reimbursed at the rate at which civilian employees of the United States are reimbursed, as that amount may be changed from time to time.

K.    INSURANCE PROGRAMS.

    1.    Health/Medical Coverage. Effective July 1, 2009 through June 30, 2010, the District will contribute up to the amount of the monthly single employee premium toward health/medical insurance coverage premiums for each full-time employee covered by this Agreement. Coverage under the plan, premiums for the plan, and the designation of carriers, providers and the like, will be determined through the District Insurance Committee. Employees who work less than full-time, but at least a half-time contract, are considered eligible for the District sponsored health/medical coverage plan at a *pro rated* District contribution based on the employee's employment status.

    2.    Dental Coverage. Effective July 1, 2009 through June 30, 2010 the District will contribute up to the monthly single employee premium on the current District dental coverage plan for each full-time employee covered by this Agreement. Coverage under the plan, premiums for the plan, and the designation of carriers, providers and the like will be determined through the District Insurance Committee. Employees who work less than a full-time contract, but at least half-time contract, are considered eligible for a *pro rated* District contribution.

    Note: Effective July 1, 2010 through June 30, 2011, the District will offer two dental plans. The District will pay the full cost of the monthly single employee premium for the District's Basic Preventive Dental plan for each full-time employee covered by this Agreement. Employees may elect to buy up to the enhanced dental plan and will receive a subsidy equivalent to the single employee premium for the District's Basic Preventive dental plan. Employees who work less than a full-time contract, but at least half-time contract, are considered eligible for a pro rated District contribution. Coverage under the plan, premiums for the plan, and the designation of carriers, providers and the like will be determined through the District Insurance Committee.

    3.    Vision Coverage. Effective July 1, 2009 through June 30, 2010, the current District vision coverage plan for each full-time employee covered by this Agreement. Coverage under the plan, premiums for the plan, and the designation of carriers, providers and the like will be determined through the District Insurance Committee. Employees who work less

07/01/11

than a full-time contract, but at least half-time contract, are considered eligible for a *pro rated* District contribution.

Note: Effective July 1, 2010 through June 30, 2011, the District will offer a voluntary vision plan which will be paid for by the employee. Coverage under the plan, premiums for the plan, and the designation of carriers, providers and the like will be determined through the District Insurance Committee. Employees who work less than a full-time contract, but at least half-time contract, are considered eligible to purchase this coverage.

4.  Life and Accidental Death and Dismemberment Insurance. The District shall provide Life and Accidental Death and Dismemberment insurance for contracted teachers, working a .5 FTE or greater, in an amount equal to the teacher's annual salary, or $50,000, whichever is less. Life and Accidental Death and Dismemberment insurance benefit reductions will apply at age 70. Additionally, Douglas County teachers may participate in a supplemental group life insurance plan if approved by the District Insurance Committee and the Board of Education. Participation in any supplemental life insurance plan is at the employee's expense on a payroll deduction basis.

5.  Disability Protection Coverage. The District will provide a long-term disability protection coverage plan and will pay the premium for it. The plan design will be determined through the District Insurance Committee process set forth in this Agreement.

6.  Leave of Absence - Effect on Insurance Coverage. Teachers on approved leaves of absence may continue to keep their medical, dental and vision coverage in force at their own expense, either by payroll deduction if the leave is with benefits office if the leave is unpaid. Teachers on approved leave may continue life insurance at their own expense, with the benefit determined on the basis of their salary immediately prior to commencement of the leave.

7.  District Insurance Committee. The District and the Union agree to maintain a District Insurance Committee to provide an orderly mechanism for considering insurance benefit program issues, and to effectively manage the programs for the benefit of all employees of the District. The District Insurance Committee will operate in accordance with the following provisions:

    a.  Membership. The District Insurance Committee will consist of three (3) teachers appointed by the DCFT, three (3) classified employees, one (1) District administrator, and will be chaired by a representative of the Office of Human Resources.

    b.  Scope of Committee Activity. The District Insurance Committee will consider matters involving the District's health/medical plan, dental plan, vision plan, life insurance and disability Insurance.

    c.  Role and Responsibility of the Committee. It is agreed by the parties that the District Insurance Committee will study and make recommendations to the employee bargaining representatives, District leadership, and the Board of Education concerning the District's health/medical plan, dental plan, vision plan, life

43

insurance and disability insurance for District employees. The responsibility of the Committee shall extend to, and include consideration of such matters as:

    a.    Communication;

    b.    Selection of a consultant to advise the Committee and the District;

    c.    Philosophy of various benefit coverages;

    d.    Carriers to provide benefit coverages;

    e.    Structure and design of benefit packages;

    f.    Approval of requests for proposal or other bid documents and agreements necessary to put in place the enumerated benefit plans; and

    g.    Premium levels.

d.    Premium Levels. It shall the be the responsibility of the District Insurance Committee to ensure appropriate, open, and timely communication with employee bargaining representatives, employees, the Board of Education, officers of the DCFT and District leadership.

e.    Role of Consultant. The parties recognize that the District Insurance Committee will require the assistance of a qualified consultant who is knowledgeable in employee benefit matters. It will be the role of the consultant to provide information to the District Insurance Committee as a whole, and to provide technical assistance to the Committee in carrying out the Committee functions set forth in this Agreement, or as otherwise identified as Committee responsibilities.

f.    Access to Information. Recognizing that the Committee needs access to high quality information in order to properly carry out its function, the District commits to provide or to arrange for the providing of data to the Committee, the DCFT and District leadership. The data is to be as current as possible given the practical constraints of obtaining data through normal data collection processes or from the contracting entities. The information to be provided will include data indicating the levels of benefit plan utilization, benefit plan expenses, financial reserves, and other reasonably necessary information, all in sufficient detail as the Committee may reasonably request from time to time. The District will make every reasonable effort to distribute relevant and timely information prior to District Insurance Committee meetings.

8.    District and Employee Contributions. It is recognized by the District and the Union that the respective contributions of the District or the employee toward the benefit plans covered by this Agreement are a proper subject of negotiation between the District and the Union. Accordingly, the amount of District or employee payments toward any premiums or

07/01/11

coverages considered by the District Insurance Committee, or approved by the Board of Education, shall be determined through negotiations between the District and designated employee representatives.

L.    SEVERANCE PAY.  Teachers will be paid sixty percent (60%) of the basic substitute teacher pay at the time of separation for each day of all of their accumulated sick leave up to 130 days upon resignation or retirement from service with the District, provided they have at least ten (10) years continuous service with the District.  Employees who qualify for the sick leave severance benefit will receive a lump sum payment on or before August 31st of the year they retire and/or separate from DCSD.

1.    Employees who will not attain the age of 55 in the year of severance from employment (retirement) will receive a lump sum payment on or before August 31st of the year they retire.

M.    EXTENDED SERVICE SEVERANCE BENEFITS.

1.    Purpose.  In order to induce employees to provide long-term and quality service to the District and to reward employees who have provided such service, the Union and the District agree to provide Extended Service Severance Benefits as set forth in this Article.

2.    Eligibility.    In order to be eligible for Extended Service Severance Benefits, the employee must be a certificated or licensed teacher eligible to retire under PERA at the time service to the District ceases.   The teacher must also have completed fifteen (15) years of continuous teaching or administrative service in the District immediately prior to the effective date of retirement under this provision.  Employees must also complete the entire academic year to be eligible for the benefit, unless the provision of service is waived by the District, or unless the employee qualifies and applies for PERA disability benefits.

3.    Application.  An employee desiring Extended Service Severance Benefits may choose to do so by submitting an application to the Director of Human Resources by March 1st for retirement to be effective at the end of that school year.

4.    Benefit.  A qualified employee who makes application for, and who is approved for the Extended Service Severance Benefit will qualify for payment of an amount equal to the difference between the teacher's annual base salary as determined in accordance with Article XIV.A. of this Agreement, plus the cost of PERA retirement benefits paid by the District, less the negotiated base pay for that academic year, multiplied by 1.2696 (average cost of new hire plus PERA benefits).  For a qualified part-time employee, the negotiated base pay for that academic year will be *pro rated* consistent with the teacher's contract of employment.  This sum of money will be paid to the teacher (and/or his/her estate) in one of the following ways selected at the option of the teacher and subject to the following stated conditions:

a.    Employees who attain age 55 or older in the year of severance from employment (retirement) will receive their severance pay in an annuity account.  This benefit will be paid on or before Oct. 31st provided that such contributions shall not exceed the limits of

45

Section 415(c)(1) of the Federal Tax Code.  Remaining amounts owed that exceed an individual's available Section 415(c)(1) limit for a given year shall be carried over and paid on or before January 31st of the following year, but in no case shall continue beyond the five (5) year period authorized under Section 403(b)(3) of the Federal Tax Code.

b.    Employees who will not attain the age of 55 in the year of severance from employment (retirement) have the following options for payment.

1)    Lump sum payable on October 31st following retirement; or,

2)    Lump sum payable on January 31st following retirement; or,

3)    Half (½) payment on each of the above dates; or,

4)    If the employee's resignation has been approved by the Board of Education, the money may be paid to the employee as necessary to pay for additional service credit prior to the last day of work in each option above; and

5)    After selecting one of the above payment options, the District will enter into an Extended Service Severance Benefits Agreement providing for the payments contemplated by this Article.  These agreements will be entered into and issued after July 1st, even though Letters of Intent must be submitted by March 1st of the retirement year.

N.    ANNUAL STATEMENT.  At least annually, teachers will be provided with a statement of all Sick Leave credited to them, all unused Personal Leave credited as Accumulated Sick Leave, and the Knowledge and Evaluation Level and Step at which they have been placed on the salary schedule.

XV.    GRIEVANCE PROCEDURE

A.    DEFINITIONS

1.    A "grievance" shall mean a complaint by a teacher or the Union that:

a.    As to him/her, there has been a violation or inequitable application of the provisions of this Contract; or

b.    He/she has been treated inequitably by reason of any act or condition which is contrary to established District policy directly affecting the working conditions of the teacher or the rights granted to the Union.

The provisions of this section shall not apply where the complaint is concerned with a matter where a review is prescribed by the laws of the State of Colorado, or where the Board is without

46

authority to act.

2.    An "aggrieved party" may be the Union or a member of the bargaining unit asserting a grievance.

3.    A "party in interest" is an employee who might be required to take action, or against whom action might be taken in order to resolve a grievance.

B.    PURPOSE.  Good morale is maintained as problems arise by sincere efforts of all persons concerned to work toward constructive solutions in an atmosphere of courtesy and cooperation.  The purpose of this grievance procedure is to secure, at the lowest administrative level, equitable solutions to the problems that may arise from time to time.

C.    PROCEDURE

1.    Level I.  Any Grievance must be submitted in writing on an approved form.

a.    A grievance will first be discussed with the aggrieved party's principal or immediate supervisor with the objective of resolving the matter information.  At that time, the aggrieved party may discuss the grievance personally, or may be represented or accompanied by a Union representative.

b.    The principal or immediate supervisor may be represented or accompanied by another representative of the administration.

c.    The principal or immediate supervisor shall make his/her decision in writing at Level I.

2.    Level II.  If the aggrieved party is not satisfied with the disposition of the grievance at Level I, or if no decision has been rendered within five (5) school days after presentation of the grievance, the grievance may be filed in writing with the Superintendent within ten (10) school days after initial presentation of the grievance at Level I.

a.    The Superintendent or his/her designee will meet with the aggrieved party and the Union representative in an effort to resolve the grievance.  Such meeting will take place within seven (7) days after receipt of the written grievance by the Superintendent or his/her designee.

b.    Decisions rendered at Level II of the grievance procedure will be in writing and set forth the decision and the reasons therefor, and will be transmitted promptly to all Parties In Interest and to the Union.

3.    Level III.  If the Union is not satisfied with the disposition of the grievance at Level II, or if the decision has not been rendered within ten (10) school days after the Superintendent has heard the grievance, only the Union may notify the Superintendent and proceed to arbitration within ten (10) school days after the decision at Level II was due or rendered, provided that the aggrieved party shall have requested the Union to appeal the grievance to arbitration within five (5) school days after the decision at

47

Level II was due or rendered. In the event the parties are unable to agree upon an arbitrator within seven (7) calendar days after notification, the arbitrator will be selected in the following manner:

a.    When demand or a submission to arbitration is filed with the American Arbitration Association (AAA), the AAA will be requested to submit simultaneously to each party an identical list of the names of five (5) persons skilled in arbitration of educational matters. Each party has seven (7) days from the mailing date in which to cross-off any name to which it objects, list the remaining names in order of preference and return the list to the AAA. If a party does not return the list within the time specified, all names on the list shall be deemed acceptable.

b.    From among the persons who have been approved on both lists, and in accordance with the designated order of mutual preference, the AAA shall invite the acceptance of an arbitrator.

c.    If the parties fail to agree upon any of the persons named, or if those named decline or are unable to act, or if for any other reason an appointment cannot be made from such list of names, the AAA shall appoint an arbitrator from its other members without submitting additional lists.

d.    The arbitrator will have authority to hold hearings and make procedural rules. He/She will issue a report within fifteen (15) calendar days after the date of the close of the hearing, or if hearings have been waived, then from the date final statements and evidence are submitted to him/her, unless the time is extended by mutual agreement of the parties.

e.    All hearings held by the arbitrator shall be in closed session. The arbitrator's report shall be submitted only to the Board and Union, and set forth his/her findings of fact, reasoning and conclusions. His/Her recommendation(s) shall be consistent with the law and the terms of this Contract. His/Her report shall be advisory only and not binding on the Board or the Union.

f.    Within five (5) school days after receipt of the arbitrator's report, representatives of the Board and the Union will meet to discuss the report. No public releases of information may be made until after such meeting.

g.    The Board shall take official action on the report of the arbitrator within three (3) weeks after the meeting described above.

h.    Costs for the services of the arbitrator, including *per diem* expenses and actual and necessary expenses associated with travel shall be shared equally by the Board and the Union.

D.    MISCELLANEOUS

1.    Neither the Board, nor any member of the administration, nor any teacher organization shall take reprisals affecting the employment status or working conditions of any aggrieved party, any party in interest, any

48

*07/01/11*

Union representative, or any other participant in the grievance procedure by reason of such participation. However, a participant is not exempt from the rules and regulations of the District.

2.     Nothing contained herein will be considered as limiting the right of the Union to file a grievance on behalf of its members whenever, in its judgment, a grievance exists. Union initiated grievances shall commence at Level II.

3.     The Union shall have the right to file a grievance during the summer vacation months, if necessary. When this occurs, the days listed as "school days" described in the grievance procedure shall be interpreted as weekdays, excluding Saturday, Sunday and holidays. These time limitations shall apply while the Superintendent is on duty.

4.     All written and printed matter dealing with the processing of a grievance will be filed separately from the central office personnel files of the participants.

5.     A grievance must be filed in writing on a form approved by the Union and the Superintendent. The form shall provide the following information:

    a. Date of filing

    b. Precise statement of the nature of the grievance

    c. School District policy or provisions of the Contract allegedly violated

    d. Remedy requested

    e. Signature of the aggrieved party(ies)

6.     Nothing contained herein will be construed as limiting the right of any teacher having a grievance to discuss the matter informally with any appropriate member of the administrative staff and having the grievance adjusted, provided the adjustment is consistent with the terms of this Contract. The Union shall have the opportunity to be present and to state its views at any grievance procedure level. The Union shall be informed of any meeting provided for in this article between any teacher and any member of the administrative staff which concerns a formal grievance wherein the Union does not represent the teacher.

7.     The parties agree to make available to participants all pertinent information and documents in their possession or control not privileged by law which are relevant to the issues raised by the grievance.

8.     When it is necessary for the aggrieved party's representative, or representative designated by the Union, to attend a meeting or hearing called by the Superintendent or the arbitrator during the school day, the Superintendent's office shall so notify the principal of the school to which the representative(s) is/are assigned, and they shall be released without loss of pay for such time as their attendance is required at such meeting or hearing, and for necessary travel in connection therewith.

*07/01/11*

9.    Both parties agree that grievance proceedings will be kept as informal and as confidential as may be appropriate at any Level of the grievance procedure.

10.    Since it is important that grievances be processed as rapidly as possible, the number of days indicated at each level should be considered as a maximum, and every effort should be made to expedite the process. The time limits specified may, however, be extended by mutual agreement of the parties. A grievance that might not be finally resolved at Level III under the time limits set forth herein prior to the end of the school year and left unresolved until the beginning of the next school year could result in irreparable harm to a party in interest. In that event, the time limits set forth in this article will be reduced so that the grievance procedure may be concluded prior to the end of the school year, or as soon thereafter as practical.

11.    No grievance shall be recognized by the Board or the Union unless it shall have been presented at the appropriate Level within fifteen (15) school days after the aggrieved party knew, or should have known of the act or condition on which the grievance is based. If not presented, the grievance will be considered waived.

XVI.    YEAR-ROUND MULTI-TRACK SCHOOLS.

A.    DEFINITION.    The term "year-round" applies to any school on a multi-track schedule which operates on a year-round calendar.

B.    GENERAL.    The terms and conditions of this Agreement between the DCFT and the District shall apply to all teachers who work in year-round schools. The conditions listed in this Article will apply only to teachers at year-round schools.

C.    CLASSROOM CONDITIONS

1.    School buildings used as year-round schools will be provided with climate control systems that function in accordance with design specifications.

2.    Ventilation systems will be cleaned on a regular basis.

D.    CLASSROOM SHARING and STORAGE

1.    Room changes or rotating room assignments designed to share limited classroom space shall be distributed in a reasonable and equitable manner.

2.    Teachers who share classrooms shall be provided custodial assistance for moving heavy and cumbersome equipment and supplies to and from storage areas during transition between tracks.

3.    When limited classroom space must be shared, on-site storage facilities consisting of three (3) rolling cabinets and two (2) filing cabinets or the equivalent will be provided for teachers moving off-track.

E.    INSTRUCTIONAL SUPPORT.    All certified and non-certified support services shall be provided to year-round schools as needed to coordinate with year-round

calendars and to the same extent as those provided to conventional calendar schools.

F.     DAYS WITHOUT STUDENTS

EFILED Document
CO Douglas County District Court 18th JD
Filing Date: Feb 15 2018 3:41PM MST
Filing ID: ...
Review Clerk: Tanja Gorenc

1.     Student contact days on a 4-track, year-round calendar will be determined by the Board of Education with input from the DCFT.

2.     Teachers will receive two (2) days of compensatory time per year for time spent in parent-teacher conferences.

3..    Teachers' contracted work year includes two (2) days required in-service. In-services are to be scheduled on days adjacent to the beginning or ending of tracks.

4.     Teachers will receive one (1) day compensation for required in-service. This in-service is to be scheduled by tracks (as indicated on the District calendar). In-service will not be separate from the regular track schedule.

5.     In addition, nine (9) days will be provided for track-in/track-out activities, grading, teacher preparation, and building in-service as follows:

       a.     All teachers will have one (1) full-day for planning and preparation for the new school year, and one (1) half-day for end-of-year activities. On such days, there will be no scheduled meetings, in-services, or track-in/track-out activities required. One (1) full workday at the beginning of the year and one half day (½) workday at the end are nonnegotiable.

       b.     Each teacher will have one half (½) day for track-in activities immediately prior to a track starting, and one half (½) day immediately following the conclusion of a track for track-out activities.

       c.     All teachers will have one and one-half (1-1/2) days for grading. We recognize that these days do not fall when progress reports are due, therefore teachers may use them as workdays.

       d.     One (1) day or two half (½) days may be used for staff development. Teachers will not be required to attend these if they occur while they are off-track.

       e.     One (1) day or two half (½) days may be used as workdays or staff development days as determined by a collaborative process at each site and approved by the district.

       f.     Each 4-track, year-round building staff and administration will develop a tentative schedule for the days listed in Subsection 5.d-e by July 1st for the following school year.

       g.     For those schools transitioning to a year-round calendar, one (1) additional day for planning will be provided as each track begins.

       h.     Half-day (½) track-out days will occur in the morning. Teachers

51

07/01/11

may make special arrangements with principals for tracking-out prior to the schedule track-out day.  In these cases, teachers may be expected to return for morning meetings of reasonable duration, but total time to track-out and meet should not exceed the equivalent one (1) half-day of work.

    i.    Teachers may make special arrangements with principals for track-in/track-out in lieu of a day's attendance.  (Examples might be: track-in/track-out days that fall within the winter break times; track-out days at the end of the year.)

G.    PERSONAL LEAVE.  Teachers in year-round schools will be able to use allotted personal leave in the first and/or last week of each track.

H.    COMMUNICATION.  Policy changes and school announcements will be made available at each school site to employees who are off-track so that they have the opportunity to fully participate in District and school activities.

H.    REGULAR TEACHERS SERVING AS SUBSTITUTES

    1.    Prior to the beginning of each off-track period, teachers who wish to serve as substitute teachers shall submit the appropriate application to the Office of Human Resources

    2.    Each school shall have a list where off-track teachers from that building may sign up to substitute in that building.  This list will be shared with all teachers in that building.

    3.    Teachers who choose to substitute in their regular position or any other position outside their regular contract will receive C Level Pay under the "Rates of Pay" for substitutes.

    3.    Teachers on different tracks may mutually agree to exchange workdays at no cost to the District with the approval of the building principal, which shall not be unreasonably denied.

J.    TRACK SELECTION

    1.    Each building staff and administration shall jointly develop a "track selection process."  In keeping with that process, teachers shall select tracks in the following order:

        a.    Teachers currently employed by the District and assigned to the school; and

        b.    Newly hired teachers.

    2.    When qualifications and abilities are equal among teachers requesting the same track, preference will be given to the regular teacher employed by the District for the longest period of time.

*07/01/11*

XVII.  NEW BUILDING PLANNING TEAMS

    A.    PURPOSE.  The District and the Union recognize the importance of having teachers involved in the process of planning and opening new buildings in the Douglas County School District.  The following provisions will govern the formation, operation, and compensation of new building planning teams for the duration of this Agreement.

    B.    FORMATION.  The principal appointed to a new building will select the teachers to be involved in the new building planning team after the principal has published the expected scope of the involvement and time required of the team.   The principal will appoint teacher members based on grade level, as follows:

| | |
|---|---|
| Elementary School Members | 6 - 8 |
| Middle School Members | 8 - 10 |
| High School Members | 10 - 12 |

    C.    STIPEND.  Teachers who are selected for new building planning teams will be paid a stipend in the amount of $1500.00 per academic year in addition to their regular compensation.

    D.    RELEASE DAYS.  Each new building planning team member may be released from performing his/her teaching assignments for up to five (5) school days.  Every effort should be made to minimize program disruption caused by the scheduling of release days.

    E.    EXCEPTIONS.  The District and the Union recognize that these guidelines may need to be adjusted based on unique or special circumstances.  Whenever a waiver from the planning team size parameters identified above, or the number of release days is sought, the principal will meet with the DCFT President or designee, a Director of Human Resources, and the appropriate level director to study the increases or decreases in question.  A consensus of the DCFT representative, Human Resources Director and level directors will be required to deviate from the criteria set forth in this section.

XVIII.  NEGOTIATIONS

    A.    The DCFT and DCSD have agreed to a Living Contract. Negotiation sessions will take place monthly from September through June.  During the term of this Agreement, the parties agree that either party may reopen the Agreement on economic terms, and not to exceed three (3) issues, identified by each side.  By mutual agreement, the parties may add issues for negotiations.

    B.    The negotiations contemplated hereunder will be conducted between teams representing the Union and the Board of Education.  Each party will select its team members and may be assisted by advisors of its own choosing.

    C.    Each year, either party desiring to reopen or to negotiate a successor agreement, as appropriate, will inform the other party of the desired commencement of negotiations.   At the initial meeting, the parties will exchange proposals.  Proposals should identify the interests or objectives sought to be obtained.  Subsequent meetings will focus on alternatives for achieving the interests identified, and the benefits and detriments associated therewith.  The parties will agree on the mechanics of negotiations.  Upon reaching tentative agreement, the

proposed new contract language will be subject to ratification by teachers and approval by the Board of Education.

2

XIX.    TERM OF CONTRACT

This Contract shall be in full force and effect from ~~July 1, 2008 through June 30, 2011~~ July 1, 2011 through June 30, 2012.  Any provision of this Contract may be reopened at any time by mutual agreement of the parties.


IN WITNESS WHEREOF, the parties have executed this Contract on the _____ day of _____, ~~2010~~ 2011 at Castle Rock, Colorado.


DOUGLAS COUNTY SCHOOL                      DOUGLAS COUNTY FEDERATION
DISTRICT Re-1                                                 OF TEACHERS



_____          _____
President, Board of Education                         President, DCFT

ATTEST:                                                          ATTEST:

_____          _____
Secretary                                                         Secretary

54

*07/01/11*

## Schedule A ~~2010-2011~~ 2011-2012 Activities

| | High School Levels | | | | | Middle School Levels | | Trainers | |
|---|---|---|---|---|---|---|---|---|---|
| | **I** | **II** | **III** | **IV** | **V** | | **I** | | |
| **Step** | | | | | | **Step** | | **Step** | **Salary** |
| 1 | 3167 | 2800 | 2430 | 1945 | 1700 | 1 | 1277 | 1 | 21,634 |
| 2 | 3455 | 2964 | 2561 | 2070 | 1841 | 2 | 1426 | 2 | 23,602 |
| 3 | 3586 | 3142 | 2698 | 2190 | 1968 | 3 | 1579 | 3 | 24,498 |
| 4 | 3784 | 3306 | 2830 | 2314 | 2099 | 4 | 1712 | 4 | 25,845 |
| 5 | 4002 | 3482 | 2964 | 2430 | 2234 | 5 | 1892 | 5 | 27,318 |
| 6 | 4216 | 3650 | 3105 | 2555 | 2379 | 6 | 2041 | 6 | 28,779 |
| 7 | 4390 | 3814 | 3237 | 2673 | 2509 | 7 | 2192 | 7 | 29,958 |
| 8 | 4609 | 3991 | 3372 | 2800 | 2644 | 8 | 2344 | 8 | 31,452 |
| 9 | 4807 | 4156 | 3505 | 2923 | 2776 | 9 | 2504 | 9 | 32,804 |
| 10 | 5010 | 4325 | 3641 | 3046 | 2907 | 10 | 2671 | 10 | 34,181 |

## High School Positions

| | | |
|---|---|---|
| Level I | Head Coach: | Football, Basketball, Wrestling |
| Level II | Head Coach: | Baseball, Track, Soccer, Softball, Volleyball, Lacrosse, Field Hockey, Swimming, Band |
| Level III | Head Coach: | Golf, Tennis, Cross Country, Gymnastics, Publications, Cheerleader and Pom Pom, Vocal Music, Forensics |
| | Asst. Coach: | Football, Basketball, Wrestling |
| Level IV | Asst. Coach: | Baseball, Track, Soccer, Softball, Volleyball, Forensics, Lacrosse, Field Hockey, Swimming |
| Level V | Asst. Coach: | Golf, Tennis, Cross Country, Gymnastics, Orchestra, Drama Director (for full length play) maximum 5/yr/school; Dramatics Assistance 3/yr/school @ step 3 only; Student Council Sponsor, Cheerleader and Pom Pom |

## Other High School Positions

| | | | | | |
|---|---|---|---|---|---|
| FBLA | 763 | DECA | 763 | Auditorium Manager | 1852 |
| FCCLA | 763 | FFA | 763 | Drill Squad | 1277 |
| Hero Club | 763 | Link Crew | 1026 | Student Council | 1277 |
| TSA (Technology | 763 | | | Group Incentive Leader | 1277 |

| | | |
|---|---|---|
| Department Head | 1,680 | (Must have a minimum of 3 FTE in the Department to qualify) |
| | 137 | (Additional for each member over 6) |

## Middle School Positions

Coaches, Band, Vocal, Orchestra

8th grade football coaches can attain the maximum step of 10

## Other Middle School Positions

| | | | |
|---|---|---|---|
| Publications | 1026 | Drama Director | 2671 |
| Web Leader | 1026 | Group Incentive Leader | 1277 |
| Student Council | 1277 | Athletics/Activities Coordinator | 1719 (2 stipends per building) |
| Department Head | 1680 | (Must have a minimum of 3 FTE in the Department to qualify) |
| | 137 | (Additional for each member over 6) |

*07/01/11*

MEMORANDUM OF UNDERSTANDING REGARDING
THE 21ST CENTURY PARTNERSHIP

This partnership is for schools/departments which develop progressive approaches for improvements to operational effectiveness and efficiencies, and meeting the goals of the District's Strategic Plan to have the opportunity to request a waiver from specific contract language and or district policy. The 21st Century Partnership Committee shall operate as follows:

- The Partnership Committee shall meet as needed.
- Decisions shall be made by consensus and are final with no recourse for appeal.
- Waivers are granted for one or more school years with the opportunity to review each year.

Any request for a waiver must be submitted to the 21st Century Partnership Committee in writing as outlined below:

- A statement specifically explaining the contractual provision for which the waiver is being requested.
- A written rationale for the waiver explaining why it is necessary and how it is linked to providing improved instructional or other services.
- Evidence of support for the requested waiver from a majority of the employees who will be affected if the waiver is granted.
- All waiver requests may be sent to the 21st Century Partnership Committee –Attn: Director of Human Resources.

The membership shall include:

- Three (3) members from the DCFT leadership team
- Three (3) members from the District which would include:
  - Two from Human Resources
  - One from the department directly responsible for overseeing the site or department requesting the waiver.

DATED at Castle Rock, Colorado this _____ day of _____, 2011

DOUGLAS COUNTY SCHOOL
DISTRICT Re-1

DOUGLAS COUNTY
FEDERATION OF TEACHERS

_____
President, Board of Education

_____
President, DCFT

ATTEST:

ATTEST:

_____
Secretary

_____
Secretary

56

*07/01/11*

MEMORANDUM OF UNDERSTANDING REGARDING
THE ADDITION OF ONE WORKDAY FOR THE 2011-2012

The Douglas County School District and the Douglas County Federation of Teachers agree because our licensed employees have gone three years without any salary increase, it is desirable for the 2011-2012 school year to offer a one time opportunity for teachers to work one additional day at their regular per diem rate. The parties agree that the additional day can best be used to support the District Strategic Plan and meet reasonable standards for accountability by being placed at the start of the school year.

This day will be considered a mandatory work day, but if a teacher is unable to be in attendance, the teacher will not be eligible for the additional day's per diem, nor will the teacher be eligible to use sick leave, personal leave or any other reason for leave of absence. This additional day will be paid through the extended day spreadsheet no later than the September payroll run.  The District and the Union agree this will be a one-year only, non-annuitized salary adjustment.


DATED at Castle Rock, Colorado this _____ day of _____, 2011

DOUGLAS COUNTY SCHOOL                    DOUGLAS COUNTY
DISTRICT Re-1                            FEDERATION OF TEACHERS


_____          _____
President, Board of Education            President, DCFT


ATTEST:                                  ATTEST:


_____          _____
Secretary                                Secretary


MOU Regarding One Extra Pre-Service Day

(From Cabinet: DBH responsible for notifying communications and budget once agreements are reached for all employee groups)


1.  Preamble – In light of the reduced cuts mandated by the state, three years frozen salary, intention to give employees modest one-time increase.

2.  Day to be one additional pre-service day at the start of the school year.

3.  Additional day is considered mandatory work day, but will not allow for use of sick or personal leave in the event a teacher, for legitimate reasons is unable to be in attendance.

4.  Payment will be made as part of the regular September paycheck and will be subject to all lawful and required deductions.

5.  This is a one-year only, non-annuitized payment for the 2011-12 school-year.

*07/01/11*

MEMORANDUM OF UNDERSTANDING REGARDING
CONTRACT LANGUAGE ALIGNMENT COMMITTEE FOR ~~THE CENTER FOR STAFF AND COMMUNITY DEVELOPMENT (CSCD)~~
THE CENTER FOR PROFESSIONAL DEVELOPMENT (CPD)


The District and the Union have a mutual interest in supporting the ~~development of The CSCD bringing~~ professional development of all staff members under one leadership focus.  Professional Development is the work of both the Union and the District and must be aligned, updated and connected to the goals of the District, schools and individual staff members.

The District and the Union enter into this Memorandum with the complete understanding that there is an inherent connection between quality professional development, job satisfaction and student achievement.

A.     COMMITTEE COMPOSITION:   ~~A CSCD Contract Language Alignment Committee~~ The Professional Development Partnership, under the supervision of the ~~Assistant Superintendent of Human Resources~~ Executive Director of Development and Innovation, will coordinate the ~~CSCD~~ Center for Professional Development contract language process.   The Professional Development Partnership chairpersons will include one (1) Center for Professional Development representative and one (1) Douglas County Federation of Teachers representative and one (1) Human Resource representative. Committee membership and information suppliers will be determined by the CSCD Contract Language Alignment Committee Co-chairpersons.


B.     MOU PARAMETERS:  The ~~CSCD~~ CPD Contract Language Alignment Committee will:

- Align contract language with The ~~CSCD~~ CPD By-Laws
- Develop contract language encompassing the following for teachers hired under the Alternative Licensure, Teacher in Residence and Professional in Residence:
  - Compensation
  - Evaluation
  - Participation in the DCSD Performance Pay Plan
  - Union membership
  - Other rights and issues

C.     WAIVERS:

1.     Teacher in Residence (TIR):  A Teacher in Residence must have a Colorado License or is eligible for one.   The program parameters for Teacher in Residence (TIR) are the following:

- The process to interview and hire waiver program applicants in Hard-to fill positions must follow the steps documented in the flow chart.  This flow chart is attached.  This process begins after the completion of in-district transfers.

- In-district applicants to the TIR program must have a satisfactory performance and a recommendation from their current supervisor.  A teacher entering the program will be guaranteed by the district, as necessary, to return to the school and the assignment which the teacher held prior to entering the program, provided the position still exists.  After the second year, the teacher will be returned to another position in the

*07/01/11*

district for which the teacher is qualified. Upon entering the third year, the teacher will be placed in a position for which they were newly endorsed.

- Out-of-district applicants must not have any previous performance issues. They are at-will employees for the first 90 calendar days. After this time, the employee will receive a one-year only contract, through the end of the current school year. They will be considered probationary and follow the evaluation model for years one, two, and three.

2.   <u>Professional in Residence (PIR):</u>  The program parameters for Professional in Residence are the following:

- The process for Professional in Residence must follow the steps outlined in the attached document.

- These professionals have no contractual rights and can be released at any time.

- A PIR can only be hired as a .2 FTE or less based on the beginning teacher salary schedule.

3.   <u>Alternative License Program (ALP):</u>

- Persons entering the Alternative License Program must hold a Bachelor's degree with subject area expertise.

- An ALP's candidate is an at-will employees for the first 90 calendar days. After this time, the employee will receive a one-year only contract. They will be considered probationary and follow the evaluation model for years one, two, and three.

➤ When performance issues arise, Human Resources and the DCF must be notified in writing within 5 days.
➤ For Waiver Candidates seeking employment and will begin their 1st year of the program: Please see the attached "Waiver Program Application and Hiring Process" flowchart.
➤ For Waiver Teachers **currently** employed in your building and entering the 2nd year of the program: All Waiver Teachers are hired on a one-year only contract until the completion of their 3rd year. However, Waiver Teachers showing satisfactory progress **do not** need to interview again. The principal has the option to repost.

D.   COMMUNICATION:  ~~The CSCD Contract Language Committee~~ The Professional Development Partnership will:

- Regularly communicate to the negotiation teams; develop, articulate and implement a comprehensive plan of communication to ensure that the District's staff and administration are consistently updated on progress.

E.   TIMELINE:  ~~The CSCD Contract Language Committee~~ The Professional Development Partnership will present preliminary contract language proposals to the negotiating teams by ~~May, 2009~~ May of each year. This committee will reconvene ~~in the school year 2009-10~~ yearly to continue the alignment process with periodic reports to the negotiating teams.

59

07/01/11

DATED at Castle Rock, Colorado this _____ day of _____, ~~2009~~ 2011.

DOUGLAS COUNTY SCHOOL
DISTRICT Re-1

DOUGLAS COUNTY FEDERATION
OF TEACHERS

_____
President, Board of Education

_____
President, DCFT

ATTEST:

ATTEST:

_____
Secretary

_____
Secretary

60

*07/01/11*



THE CENTER FOR STAFF AND COMMUNITY DEVELOPMENT

**Waiver Program Application and Hiring Process**

Candidate submits completed application to pre-qualify and documentation to HR Recruitment and Application Center

Is Candidate qualified? — No → Letter of regret and explanation sent to candidate from HR Recruitment and Application Center.

Yes

Candidate will receive a Douglas County Statement of Eligibility (DCSOE) from HR Recruitment and Application Center and qualifies as a district applicant for the waiver program.

**~ Following the completion of in-district transfers, hard-to-fill positions will be posted for ten days ~**



Building Administrators must first interview from licensed/endorsed candidate pool.

Proceed with hiring process ← Yes — Qualified Candidate Hired?

No

Waiver Program Applicants may be considered and interviewed for position.

Revisit Pool or Repost Position ← No — Building Recommends Hire?

Yes          Yes

**See following page for continued flow chart.**

61

*07/01/11*



Building administrator informs CSCD Special Project Coord. Of intent to hire waiver candidate and submits complete hiring packet to CSCD Office Mgr. Includes position, school, FTE.

If position is SPED, hiring packet will be forwarded to ISS for approval by the Executive Director.

CSCD Special Project Coordinator meets with waiver candidate to ensure program understanding and develop Individual Teaching Plan.

Candidate does not enter Waiver Training/Teaching Program

No    ISS Director Recommends Hire?

CSCD Recommends Hire?    No    Candidate does not enter Waiver Training/Teaching Program

Yes    Yes

CSCD Office Manager will prepare and forward spreadsheet listing waiver candidate hires with position, school, FTE, and DCSOE to CSCD Governing Board for approval.

No    CSCD Governing Board Approves?    Yes    CSCD Office Manager forwards complete hiring packet to Human Resources.

Building Administration notified.

Waiver addendum to contract and contract signed.    Waiver Program Participant enters Waiver Training/Teaching Program.

2/1/08

62

*07/01/11*



**Douglas County** School District
*Learn today. Lead tomorrow.*

THE CENTER FOR STAFF AND COMMUNITY DEVELOPMENT

### Process for Waiver Teachers Entering 2ⁿᵈ Year of Program

Upon Satisfactory completion of Year One of the DCSD Teacher Waiver Program, Waiver Teacher begins Year Two of the DCSD Teacher Waiver Program.



Building Principal is free to post the position. Waiver Teacher exits the program.

NO

Teacher has shown satisfactory progress?

YES

Waiver Teacher, Building Principal and CSCD Special Project Coordinator agree that Waiver Teacher will enter Year Two of DCSD Teacher Waiver Program. The Building Principal does not need to interview.

Building Principal submits "Requisition to Hire" for year two to Human Resources Specialist or ISS Records Specialist if teacher is Special Education.

Human Resources Specialist will prepare contract with addendum for signing. Cost for Year 2 of Program is $2000 to be deducted from monthly salary.

Waiver Teacher continues to receive training and support from:
- CSCD Special Project Coordinator
  - Individual Teaching Plan
  - Guidance on staff development, etc.
  - Skills Blocks
  - Portfolio work
- Building BRT
- Building Administrator

63

*07/01/11*



## Professional In Residence Hiring Process

A need for a Professional in Residence is identified. This need should be driven by the DCSD Ends Statement, should be innovative and should connect to the Waiver Program.

Proposal for program is written by the school and presented to the department and/or grade level impacted and one building advisory counsel for consensus and support i.e. SAC, site counsel, leadership counsel, etc.



Consensus and support from school advisory counsels?

Revisit/resubmit proposal. ← NO

YES

Proposal is presented to CSCD Governing Board for approval.

CSCD Governing Board approves proposal?

Return proposal to school with explanation and possible suggestions for future approval ← NO

YES

Position is posted through regular process. Approved waiver applicants must attach their DCSOE to their application

Once hired, PIR participants enter into CSCD training agreement as a condition of their employment.

64

*07/01/11*

MEMORANDUM OF UNDERSTANDING REGARDING
THE EARLY SEPARATION AGREEMENT 2009-2013

The District and DCF agree to add to the current "quality separation" language of the contract an option of an Early Separation Agreement (ESA).  This ESA is only available for school year 2008-2009. Savings from the ESA program are available to provide future compensation to employees.

## MOU Parameters

### General Description

The Employee Separation Agreement (ESA) is a program whereby current, long-service employees of the District may voluntarily elect to terminate service with the District as of June 30, 2009, and in return, receive amounts from the District in the form of contributions to a §403(b) account maintained on behalf of the terminating employee. Contributions for participating individuals will be made in five equal annual installments, and the individual will have all ownership rights of the §403(b) account.  Employees who elect to participate in the ESA are not eligible to be re-hired; however, participants are eligible to substitute.

### Eligibility and Participation

The budgeted amount available for the ESA is fixed, and the program is voluntary; final determination of the group of employees who will be participating in the ESA will be made after all enrollment materials are collected at the end of the enrollment period.  The determination will be made on the following basis:

1) Quality Separation Agreement (QSA) Eligible
Those current employees of the District who are otherwise eligible to receive the QSA (provided for under the terms of their contract) are eligible to elect to participate in the ESA.  Upon election to participate in the ESA, these QSA-eligible employees will be accepted as participants in the ESA.  Determination of QSA-eligibility will be made on the basis provided for under the QSA program and the contract describing the QSA.  Note that the ESA is an alternative to the QSA; only one or the other of these programs may be taken, not both.

2) Non-QSA Eligible
Those current employees who are not otherwise eligible to receive the Quality Separation Agreement may indicate their desire to participate in the ESA by completing the required enrollment forms.  Once the enrollment period is ended, the budgetary impact of the QSA Eligible group mentioned above who have elected to participate in the ESA will be calculated.  The electing individuals in the Non-QSA Eligible group will then be ranked by seniority with the District, and the remaining available budgeted amount will be allocated based strictly on seniority.  If the budgetary limit is reached by including some but not all employees with identical seniority with the District, then all those employees with the same seniority will in fact be included for participation.  (For these purposes, seniority with the District will be determined using only consecutive years of employment with the Douglas County School District in whatever capacity.  Note that seniority for this purpose may well be different than years of service for QSA eligibility or eligibility for PERA purposes.) Those Non-QSA Eligible employees who do elect to take the ESA, but do not have the requisite seniority with the District as described above may not participate in the ESA.  Their enrollment materials, including their agreement to separate service with the District will become void at that point, unless the employee indicates separately to the Human Resources Department of the District, in writing, that they wish to have their separation

65

notice become effective.

Obligations of District

For those employees who qualified for participation to the level ESA was funded, the District will establish a §403(b) Account on their behalf, make annual contributions, and provide a death benefit as provided below:

1) Establish a §403(b) Account
The District will complete a vendor search to determine the preferred provider for the §403(b) Account which will receive the annual contributions set forth below. If the participant currently has a §403(b) Account with the preferred vendor selected, then that Account will be used, and no additional Account need be established. If an Account does not exist with the selected vendor, a new Account will be established. The individual is the owner of the Account and has all rights and obligations of an owner, and will be determined by the terms of the resulting agreement between the Vendor and the individual. The Account is to be maintained at no additional cost to the participant, other than normal investment or management fees or other charges normally associated with the §403(b) Account.

2) Make Annual Contributions
The District shall make annual contributions to each participant's Account in an amount equal to 20% of the participant's annual base salary for the 2008 – 2009 school year. The base salary does not include any longevity pay, special pay or bonuses or similar payments, but shall be the base rate of compensation established by Contract for the 2008 -- 2009 school year. The Annual Contributions shall commence on or before October 1, 2009 and shall be made on or about the same time in each of the succeeding four (4) years, so that the total amount of the Annual Contributions shall be equal to 100% of the 2008 - 2009 Base Salary at the time of the final contribution. Notwithstanding anything else, Annual Contributions shall cease upon the death of the participant if that occurs prior to the completion of the five Annual Contributions.

3) Provide a Death Benefit
On or before October 1, 2009, the District shall provide for a $50,000 death benefit payable to the named beneficiary of the participant in the event death occurs prior to the completion of the five Annual Contributions. The death benefit shall remain at $50,000 for the entire period. The participant has the ability to name the intended beneficiary and to change the beneficiary.

DATED at Castle Rock, Colorado this _____ day of _____, 2009.

DOUGLAS COUNTY SCHOOL                 DOUGLAS COUNTY
DISTRICT Re-1                         FEDERATION OF TEACHERS


_____            _____
President, Board of Education        President, DCFT


ATTEST:                              ATTEST:


_____            _____
Secretary                            Secretary

66

*07/01/11*

## MEMORANDUM OF UNDERSTANDING REGARDING ELEMENTARY PLANNING

The District and the Union both value and recognize the importance of allotting reasonable time for elementary teachers to engage in individual and group planning for the delivery of quality instruction.

PROGRAM PARAMETERS:  For school year ~~2010-2011~~ 2011-2012 elementary planning time in addition to contractually agreed upon minutes per day will be supported in the following manner:

   A.    The District will contribute an amount equal to the negotiated base rate, multiplied by .0213 per FTE for extra planning time in each elementary school.

   B.    The purpose of these funds for additional planning time is to provide support to teachers in their efforts to address District initiatives and the accomplishment of District and/or school goals the District's Strategic Plan in the areas of Choice, World Class Education and the System Performance Framework.

   C.    Building plans for school year ~~2010-2011~~ 2011-2012 will be implemented within forty-five (45) days from the beginning of the school year, and shall be submitted for information purposes to ~~the Office of Human Resources,~~ the Assistant Superintendent of Elementary Education and the Union DCFT who will provide feedback to the schools and share them with the Union.

   D.    Elementary schools which do not have at least 31 FTE's will be granted additional support.  A school with less than 31 FTE's will receive an additional .5 FTE for each FTE under 31.  (Example: A school has a combined FTE of 25.  The difference between the actual and base is 6 FTE.  Formula: 6 FTE x .5 =3, or a total of 28 FTE's.)

   E.    The Library/Media Model entails hiring a licensed teacher to teach both library and technology skills to students.  Classes would receive two forty-minute periods per week in addition to contractually agreed upon minutes per day.  One classified person will be assigned to support the Librarian.

Reporting Process: The Elementary Programming MOU Team, of which DCFT is a member, will present to the Negotiating Teams on-going reports concerning implementation of the ETIL model. The Negotiating Teams will consider possible changes to the collective bargaining agreement based on the data collected.

*07/01/11*

DATED at Castle Rock, Colorado this _____ day of _____, ~~2010-2011~~ 2011-2012.

DOUGLAS COUNTY SCHOOL
DISTRICT Re-1

DOUGLAS COUNTY FEDERATION
OF TEACHERS

_____
President, Board of Education

_____
President, DCFT

ATTEST:

ATTEST:

_____
Secretary

_____
Secretary

*07/01/11*

ADDITIONAL ELEMENTARY PLANNING TIME
PROCESS for 2011-12
Revised  July, 2011

The District and the Union both value and recognize the importance of allotting reasonable time for elementary teachers to engage in individual and group planning for the delivery of quality instruction.  For the 2011-12 school year, the following guidelines must be utilized for developing programs to create additional elementary teacher planning time. All planning grants must be aligned to the district's strategic plan.

1. Each site shall receive not less than $727 per FTE to be used as a resource in support of additional planning time (negotiated base rate X 0.0213 per FTE).  The Office of Human Resources will determine the FTE count for each building.  You must use this count when calculating numbers for the planning time budget.

2. Elementary schools, which do not have at least 31 FTE's, will be granted additional support. A school with less than 31 FTE's will receive an additional .5 FTE for each FTE under 31. (Example:  A school has a combined FTE of 25.  The difference between the actual and base is 6 FTE.  The additional 6 FTE X .5 = 3 additional FTE for a total of 28 FTE.)  *Note:  Licensed Special Education and "Specials" teachers* **do** *count in the calculation.*

3. Administrative Interns, Building Resource Teachers, Read to Succeed, Social Workers, Psychologists, Nurses, and Physical / Occupational Therapists will **not** be included in your FTE count; nor should these individuals receive additional planning time.

4. Itinerant teachers (those who work in more than one building) will not be considered an FTE if they work in a building less than 0.5 FTE.

5. When sites have teachers who are contracted for more time than their case load necessitates (i.e. an owed 1.0 FTE person with less than a full 1.0 teaching load, or when the number of sections is reduced when particular tracks are off) the site can incorporate this additional planning time in lieu of Elementary Planning Time grant expenditures.

**Overview:**
Building sites will create a plan for the use of additional elementary planning time by completing the attached template.  A copy of the template must be submitted to the Director of Elementary Education assigned to the school and the Douglas County Federation of Teachers (DCFT). Teachers are reminded not to use extra plan time monies for staff development, training, supplies/materials or during track-in or track-out days.

If site resources are added to Elementary Planning Time allocations, District procedures for hiring personnel using site discretionary monies must be followed.   Should a continuing status teacher be moved into a position using Elementary Planning Time grant monies, a position for that teacher must be maintained through hiring a one-year-only status teacher for the Planning Time Grant teacher.

**Procedures:**
1. Each site shall establish an Elementary Planning Committee of classroom teachers to develop a utilization plan for additional planning time.  This committee must only involve classroom teachers, specialists and/or Special Education teachers.  After the initial planning, the

*0701/11*

plan must be brought to the staff and the site's administration for approval. After the plan has been approved, the committee may seek help from other sources (i.e., BRT, school secretary, Principal) for scheduling, implementation, etc.

2. The Elementary Planning Committee shall establish opportunities and strategies to ensure staff input and acceptance of the plan. Include a short explanation of what process was used.

3. The Elementary Planning Committee shall present the plan to the administration and the building site council for their support and acceptance. If the plan is not supported or accepted by the administration, both parties must collaborate to revise the plan.

4. The Elementary Planning Committee shall draft the narrative and required information and submit the plan to the Office of Human Resources and/or the Douglas County Federation of Teachers (DCFT) for approval. All Planning Grants must be aligned to the district's strategic plan.

5. Plans involving the use of substitutes should limit the number of substitutes used.

**Elementary Planning Time Grant Deadlines:**
Modified and Conventional calendar schools: October 14, 2011

Elementary Planning Time Grant proposals can be submitted for review between now and the above deadlines. Implementation of plans may commence as soon as the budget is verified.

**Elementary Planning Time Grant Options and Parameters:**
When completing the Elementary Planning Time Grant template, any combination of the following options may be utilized.

1. Hiring contracted, certificated teachers:
   a. Contracted teachers must have an approved teacher application on file and be appropriately licensed.
   b. Contracted teachers must be hired on 1-year only contracts.
   c. Considerations for benefit eligibility and salary schedule placement must be included in calculations when hiring contracted teachers.
      i. Teachers hired for 0.5 FTE or more are eligible for health benefits and budgets should include 30% cost for benefits.
      ii. Teachers hired for less than 0.5 FTE are not eligible for health benefits and budgets should include 14.75% cost for benefits.
   d. If a contracted teacher is entering her/his 3rd consecutive year of contracted teaching in the District, prior approval must be obtained by the Office of Human Resources. Contracted teachers entering their 4th year of employment are owed a regular contract by the District.

2. Hiring Substitute teachers:
   a. If randomly requested from Sub Finder, budget for $110 per full day. When calling in random substitutes, the Elementary Planning Time code should be selected.
   b. If utilizing current District contracted teachers (i.e. off-track teachers), budget $115 per full day.

*0701/11*

66

c.   All substitute teacher benefit withholdings are already calculated in these rates of pay. **No variation from these rates will be permitted during the 2010-11 school year.**

d.   Plans that rely extensively on full or half day substitute release days for regular teachers are discouraged due to the negative impacts on the District substitute teacher pool and the reduction of quality instruction for students.

3.   Hiring classified status employees:

a.   If classified employees are used to supervise students, a certified staff member must be assigned responsibility for direct supervision of each employee. Classified employees can NOT be responsible for the following:

   i.    Development of curriculum and/or assessments;
   ii.   Assigning progress reports and/or grades;
   iii.  Planning activities or lessons; or,
   iv.   Supervising students independent of a certificated employee.

b.   Classified positions must be hired utilizing the District hiring process. This includes posting the position with information regarding pay rate, hours to work per week, and job expectations.

c.   Depending on the number of annual hours to be worked, classified employees may be eligible for benefits. Benefit costs must be reflected in the budget. (1,183 annual hours is the threshold for eligibility for medical benefits and 30% benefits costs should be budgeted.)

d.   Adding hours to a current classified employee is an option but individuals cannot exceed 40 hours of work per week. (Benefit costs will be calculated on the total number of hours an employee works.)

4.   On a limited basis, teacher teams may elect to receive payment for collaborative planning* they do outside the regular workday in lieu of extra planning time. The amount to be paid, work to be completed, and outcomes to be achieved must be recorded prior to beginning the project. Documentation must be submitted to the principal or his/her designee for payment.

*Collaborative planning is defined as teams of teachers working together (same time/same place) on systemic projects (curriculum, instruction, assessment, etc.).*

*0701/11*

Elementary Planning Grant Template                                    2011-12 School Year

**\*\*EMAIL COMPLETED TEMPLATES TO DIRECTOR OF SCHOOLS and the DCFT\*\***

School:                                                 Date Submitted:
Site Contact Teacher:

1.  List all Elementary Planning Grant Committee members.  You are encouraged to include a cross section of teachers (i.e. regular and special education, specialists and different grade levels).

Name(s)                     Teaching Assignment              Signature Required
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

2. Explain the process used to obtain staff approval for this plan?

Our teachers were polled via email to see if they wanted to continue with the planning grant as we used it last year, or if they would like to use it for something else.  All want to continue utilizing it for planning days for assessments and team planning/lesson study.

3. Date of implementation: _____

4. Verified Grant Funds:

Kindergarten FTE:              _____
1st Grade FTE          :       _____
2nd Grade FTE:                 _____
3rd Grade FTE:                 _____
4th Grade FTE                  _____
5th Grade FTE                  _____
6th Grade FTE                  _____
Specials FTE                   _____ (Art, Music, PE, Tech)
Band/Orchestra                 _____ (If individual teacher is .5 FTE or greater at your school.)
World Lang. FTE                _____ (.5 FTE or greater)
Gifted/Talented FTE            _____ (.5 FTE or greater)
Literacy Specialist FTE        _ _____ (.5FTE or greater)
Reading Recovery FTE           _____ (.5 FTE or greater)
ESL FTE                        _____ (.5 FTE or greater)
Speech/Language FTE            _____ (.5 FTE or greater)
Moderate Needs FTE             _____ (.5 FTE or greater)

*0701/11*

68

SIED FTE                    _____ (.5 FTE or greater)
SSN FTE                     _____ (.5 FTE or greater)
DHH FTE                     _____ (.5 FTE or greater)
Other FTE                   _____ (.5 FTE or greater)

TOTAL FTE:                  _____
(If FTE is less than 31)    _____ (31-Total) X .5 = additional FTE for small schools

(Total FTE) _____ X  $727= $_____ (Total Planning Time $ to be verified by HR)

5.  Principal Signature of Approval: _____

6.  Brief explanation of Plan and how it is aligned with the district strategic plan:


NOTE:  Plans may be modified, during the course of the year, if implementation is not feasible. Revised plans must be resubmitted for approval.


## ELEMENTARY PLANNING TIME BUDGET WORKSHEET

**1. Contracted teacher(s)?   YES           NO**

Position: _____ FTE: _____
* Salary rate:          _____
* Benefit costs:        _____

Position: _____ FTE: _____
* Salary rate           _____
* Benefit costs:        _____


**2.  Substitute teacher(s):    YES          NO**

____   District teacher working off-track = $115 per full day

___    Random selection from sub-finder = $110 per full day


**3. Classified employee(s):  YES          NO**

Name:
* Salary rate:          _____
* Benefit costs:        _____

*0701/11*

- Certified employee responsible for supervision for this classified employee?
    Name:                                    Signature:

- Certified employee responsible for curriculum development for this classified employee?
    Name:                                    Signature:

- Certified employee responsible for planning for this classified employee?
    Name:                                    Signature:


Name:
\* Salary rate:                    _____
\* Benefit costs:                  _____

- Certified employee responsible for supervision for this classified employee?
    Name:                                    Signature:

- Certified employee responsible for curriculum development for this classified employee?
    Name:                                    Signature:

- Certified employee responsible for planning for this classified employee?
    Name:                                    Signature:


**4. Payment in lieu of extra planning time?**          **YES**          **NO**

On a limited basis, teacher teams may elect to receive payment for *collaborative planning*\* they do outside the regular workday in lieu of extra planning time.   The amount to be paid, work to be completed, and outcomes to be achieved must be recorded prior to beginning the project. Documentation must be submitted to the principal or his/her designee for payment.
***\* Collaborative planning is defined as teams of teachers working together (same time/same place) on systemic projects (curriculum, instruction, assessment, etc.) aligned to the district's strategic plan.***
.

Names of Teachers on Collaborative Team:

Payment amount:

Date of Work:

Project to be completed:

Administrative Signature (agreeing work was completed):


*0701/11*

70

MEMORANDUM OF UNDERSTANDING REGARDING
EXTENDED SERVICE SEVERANCE

EFILED Document
CO Douglas County District Court 18th JD
Filing Date: Feb 15 2012 4:51PM MST
Filing ID: 42426317
Review Clerk: Tanja Gorenc

DATE FILED: February 15, 2012 4:51 PM

The Douglas County School District and the Douglas County Federation have a mutual interest in paying district teacher retirees their Extended Service Severance in conjunction with working a 110-Day Agreement in SY 2010-11 2011-2012.

In order to provide for adequate cash flow issues during current fiscal constraints, the District needs to handle this payout as follows:

### *LICENSED OPTIONS* –

1. OPTION 1
    - PERA Retirement Eligible by June 30, 2010
    - 15 years of service in the District
    - Full Severance paid over 2 years; 2/3's by October 31, 2010 and 1/3 by October 31, 2011 [dependent upon BOE appropriation for the 2011 payment].
    - Can work a 110/110 in SY 2010-11 if position exists and contingent upon supervisor's approval.
    - Deadline to submit to HR the Licensed Separation Notice is *April 30, 2010.*

2. OPTION 2
    - PERA Retirement Eligible by June 30, 2010
    - 10-14 years of service in the District
    - Prorated Severance; i.e., 12 years – 12/15's of severance; 2/3's paid by October 31, 2010 and the remaining 1/3 paid by October 31, 2011 [dependent upon BOE appropriation for the 2011 payment]
    - Can work a 110/110 in SY 2010-11 if position exists and contingent upon supervisor's approval.
    - Deadline to submit to HR the Licensed Separation Notice is *April 30, 2010.*

3. OPTION 3
    - PERA Retirement Eligible by June, 30, 2010
    - Less than 10 years in the District and must have a base salary $56,000 or more
    - No Severance
    - Can work a 110/110 if position exists and contingent upon supervisor's approval.
    - Deadline to submit to HR the Licensed Separation Notice is *April 30, 2010.*

4. OPTION 4/Current Practice [Check your DCFT Contract]
    - PERA Retirement Eligible
    - 15 years or more in the district
    - Full Severance paid per Contract Language
    - No 110/110
    - Deadline to submit to HR the Licensed Separation Notice is *March 1, 2010.*

*0701/11*

OPTION 1

May work 110/110 if filling a "hard to fill" vacancy from the list below and contingent upon supervisor's approval:

- Teachers of HS Advanced Placement
- Teachers of HS IB Classes
- HS Science
- HS Math
- World Languages
- BRT
- G/T Teachers or Facilitators
- Counselors
- Library Science
- Literacy Specialist
- Speech Language Pathologist
- Occupational Therapist
- Physical Therapist
- SSN/SIED Special Education [No Moderate Needs]
  Psychologists
- Social Workers
- School Nurses
- Visually Impaired
- Deaf/Hard of Hearing
- eDCSD Teacher

- PERA – Retirement Eligible by June 30, 2011
- 15 years or more of continuous teaching or administrative service working in the District
- The 110 position is contingent upon staffing allocations and supervisor approval and is only available for the 2011-12 School Year
- Full Severance paid per Contract Language by October 31, 2011
- Deadline to submit to HR the Licensed Separation Notice is *March 1, 2011*
- The Hiring Administrator will need to submit paperwork to rehire the retiree into the 110-day position for SY 2011-12. This 110 position will not have to be posted.

*NOTE: "Hard to Fill" List has been jointly agreed upon by both the District and the DCFT*

OPTION 2

Retire under Current Practice [Check your DCFT Contract]

- PERA – Retirement Eligible by June 30, 2011
- 15 years or more of continuous teaching or administrative service working in the District
- Full Severance paid per Contract Language by October 31, 2011
- No 110/110 Offer
- Deadline to submit to HR Licensed Separation Notice is *March 1, 2011*

*0701/11*

72

DATED at Castle Rock, Colorado this _____ day of _____,~~2010~~ 2011.

DOUGLAS COUNTY SCHOOL
DISTRICT Re-1

DOUGLAS COUNTY FEDERATION
OF TEACHERS

_____
President, Board of Education

_____
President, DCFT

ATTEST:

ATTEST:

_____
Secretary

_____
Secretary

*0701/11*

MEMORANDUM OF UNDERSTANDING REGARDING
HEALTH SAVINGS ACCOUNTS

The District and DCF both recognize the importance of maintaining the district's contribution to its employee Health Savings Accounts as a part of providing quality health insurance.

MOU Parameters

1. Licensed employees who complete a 12 month contract ending June 30, 2009 and exit the system due to resignation, retirement, non-renewal or dismissal, will have their medical coverage continue through July 31, 2009 if working a 4 track calendar and August 31, 2009 if working a traditional calendar. This coverage does not include DCSD's contribution to an HSA.

2. COBRA coverage for termed licensed employees is the high deductible plan. This coverage does not include DCSD's contribution to an HSA.

3. Beginning June 30, 2010 and continuing in future years, benefit coverage for licensed employees will end on June 30 when exiting the system due to resignation, non-renewal, or dismissal.

4. Beginning June 30, 2010 and continuing in future years, a licensed employee who is retiring under PERA will have their medical coverage continue through July 31 if working a 4 track calendar and August 31 if working a traditional calendar. This coverage does not include DCSD's contribution to an HSA.

5. Both parties have an interest in developing contract language that seeks to maintain this funding at or above the previous year's funding level.

     2010 - 2011
   a) (Current Allocation) x 1.15 = DCSD pays 100%
   b) (Current Allocation) x 1.151 or greater = employee pays 100% (above 15%)
   c) If increase is less than 15%, savings remain in medical fund unless mutually agree to reopen
   d) The above can be mutually reopened at any time.

6. DCSD is committed to work with DCF to promote employee health. For the 2010-2011 school year, partial funds from the Pay For Performance budget will be utilized to pay teachers who participate in the wellness program. Any unused dollars will be transferred back into the Pay For Performance budget for the 2011-2012 school year.

7. The District and the Union have agreed establish a wellness committee to evaluate and expand the program for future years.

8. If the District chooses not to fund the wellness incentive for the 2011-2012 school year, the "out of pocket gap" for employees will be returned to its 2010-2011 limits minus the wellness incentive dollars of $800.00 per employee.

9. The District and the Union have agreed to the establishment of a HSA Loan Program administered by the DCF for the purpose of making interest-free loans to employees for the following purposes:

*0701/11*

<u>Loan Parameters</u>

In the case of demonstrated hardship or catastrophic event, this loan program enables employees to cover the gap between the district-provided HSA allocation and the IRS allowable amount.

a) Administration. The DCF will hold the funds in a trust and administer the program. The DCF is to establish communication as it deems appropriate with staff regarding the program. The DCF <u>may</u> charge a nominal service fee to District employees who qualify for the program in order to off-set the costs of administration of the program. Funds that are not currently on loan to employees shall be maintained in an interest-bearing account in trust for the District, with the interest earned on said funds being applied to support the program and/or to cover administrative costs associated with the operation of the program.

b) Annual Reports. At least annually, on a schedule determined by the Business Services Division of the District, the DCF will provide the Division with information regarding the utilization of the funds. The information shall include the number of employees who participated in the program, the amount of money lent to employees, the re-payment plans in place, and the progress being made toward the re-payment of the obligation. Any external audit performed upon said funds will be provided to the Division at such time said audit is accepted by DCF.

c) Termination. The HSA Loan Program may be terminated by either party upon sixty (60) days written notice to the other party. Promptly upon termination, the sum of $100,000 will be returned to the District, less any sums then on loan to employees and further, less any sums jointly deemed uncollectible by the DCF and the District. The DCF will assign to the District any right to receive re-payment of funds on loan to employees that may be in place as of the effective date of termination.


DATED at Castle Rock, Colorado this _____ day of _____, 2010.

DOUGLAS COUNTY SCHOOL                    DOUGLAS COUNTY
DISTRICT Re-1                            FEDERATION OF TEACHERS

_____          _____
President, Board of Education            President, DCFT

ATTEST:                                  ATTEST:

_____          _____
Secretary                                Secretary

75

*0701/11*

MEMORANDUM OF UNDERSTANDING REGARDING
MODEL FOR TEACHER DEVELOPMENT AND EVALUATION

The Douglas County School District and the Douglas County Federation will develop and implement a continuous improvement model for teacher development and evaluation. This model will include multiple measures of teacher performance and student learning. The model will be used to revise the District's differentiated pay program as well as inform future ~~tenure~~ decisions and develop teacher leaders.

The new model will be presented to the Douglas County School Board for adoption by the end of June 2010 and piloted during the 2010 – 2011 school year. During the pilot year, all necessary adjustments to the model will be in consultation with all the parties. After the pilot year, the model will be implemented in all Douglas County Schools. Nothing set forth in this memorandum shall impede the authority of the School Board.

DATED at Castle Rock, Colorado this _____ day of _____ ~~2010~~ 2011.

DOUGLAS COUNTY SCHOOL
DISTRICT Re-1

DOUGLAS COUNTY FEDERATION
OF TEACHERS

_____
President, Board of Education

_____
President, DCFT

ATTEST:

ATTEST:

_____
Secretary

_____
Secretary

*0701/11*

## MEMORANDUM OF UNDERSTANDING REGARDING
## PAY FOR PERFORMANCE AGREEMENT ~~2010-2011~~ 2011-2012

Both the DCF and the District agree Pay for Performance is an essential component of our compensation system. The District and DCF support for one year to suspend portions of the Pay for Performance System in order to be utilized to ~~pay teachers to participate in the wellness incentive program~~ eliminate the need to have four furlough days as a result of state mandated budget cuts.

The following components will be maintained for the ~~2010-2011~~ 2011-2012 school year:
- National Board Teachers who have received their certification prior to July 1, 2010
- Master Teachers who have received their recognition prior to July 1, 2010
- ~~Site Based Responsibility~~
- ~~Skills Blocks limited number to be offered~~


The following components will be suspended for the ~~2010-2011~~ 2011-2012 school year:
- Site Based Responsibility
- Skills Blocks – limited number to be offered
- Outstanding Teacher
- Group Incentive


DATED at Castle Rock, Colorado this _____ day of _____, ~~2010~~ 2011.

DOUGLAS COUNTY SCHOOL
DISTRICT Re-1

DOUGLAS COUNTY
FEDERATION OF TEACHERS


_____
President, Board of Education

_____
President, DCFT

ATTEST:

ATTEST:


_____
Secretary

_____
Secretary

*0701/11*

## MEMORANDUM OF UNDERSTANDING REGARDING
## STUDENT LOAD/CLASS SIZE

The Douglas County School District and the Douglas County Federation have agreed to suspend article **VII.H 1-3** (student load/class size) of the certified contract for the 2010-11 school year.

**Elementary Schools:** whenever elementary classes exceed the limits specified below for any period of thirty (30) calendar days, the teacher so affected shall have fifteen (15) calendar days to file a letter with the Douglas County Federation claiming that a hardship exists. If DCF determines that a hardship exists, the instructional aide hours will be re-assigned by the principal to provide the following assistance, unless the size of such classes are reduced to the limits specified below or fewer at the end of the 30-day period.

- In grades K-2, at least one (1) hour of instructional aide time (or support teacher) per day when classes exceed thirty-two (32) students. In grades 3-6, at least one (1) hour of instructional aide time (or support teacher) per day when classes exceed thirty-five (35) students. When combination classes occur, the teacher shall be provided with one (1) hour of instructional aide time (or support teacher) per day when such classes exceed more than twenty-six (26) pupils.

**Secondary Schools:** whenever a secondary teacher's load exceeds 180 students for any period of thirty (30) days and his/her load cannot be reduced by student schedule changes, then he/she will be provided with the following assistance, unless his/her load is reduced to 180 students or less at the end of the thirty (30) day period.

- In secondary schools, at least one (1) hour of instructional aide time (or support teacher) per day when student load exceeds 180 students.

DATED at Castle Rock, Colorado this _____ day of _____, 2010.

DOUGLAS COUNTY SCHOOL
DISTRICT Re-1

DOUGLAS COUNTY FEDERATION
OF TEACHERS

_____
President, Board of Education

_____
President, DCFT

ATTEST:

ATTEST:

_____
Secretary

_____
Secretary

*0701/11*

## MEMORANDUM OF UNDERSTANDING REGARDING
## TEACHER COMPENSATION

The District and the DCFT have a mutual interest in recruiting and retaining high quality teachers in order for students to perform at their highest levels.  The District and DCFT recognize recruitment and retention of high-quality teachers is dependent on providing a competitive compensation package.  Therefore, both the District and the DCFT have a mutual interest in ~~conducting a study to examine alternative methods and structures~~ designing and implementing an alternative structure for compensating teachers.

During school year ~~2010-2011~~ 2011-2012, the Compensation Committee, composed of at least six DCFT selected teachers and five administrators, along with the respective negotiations teams, will ~~be created to study methodologies and~~ collaboratively develop an alternative pay structure for implementation beginning in ~~July of 2011~~ the 2012-2013 school year.

During school year 2011-2012 the Compensation Committee, composed of at least six DCFT selected teachers and five administrators, along with the respective negotiations teams, will collaboratively develop an alternative pay structure for implementation beginning in the 2012-2013 school year.

The alternative pay structure will provide market competitive salaries, be data driven using multiple measures for student growth and teacher effectiveness, and targeted to recognize differentiated teacher assignments, practices, and achievement levels.

By January of 2012, the Committee and respective negotiations teams will present to the Board of Education and the members of the DCFT a comprehensive alternative compensation structure and full implementation process and timeline. The Committee and respective negotiations teams will also develop a mutually agreed upon *Compensation Philosophy* to guide DCSD in future years.

DATED at Castle Rock, Colorado this _____ day of _____, 2011.

DOUGLAS COUNTY SCHOOL                  DOUGLAS COUNTY FEDERATION
DISTRICT Re-1 OF TEACHERS

_____        _____
President, Board of Education           President, DCFT


ATTEST:                                 ATTEST:

_____        _____
Secretary                               Secretary
*05/21/10*

*0701/11*



**Douglas County** School District
*Learn today. Lead tomorrow.*

DATE:        April 15, 2010
TO:          Douglas Count Federation of Teachers (DCFT)
FROM:        Douglas County School District (DCSD)
RE:          <u>Letter of Agreement</u> regarding eDCSD for 10/11 School Year
             Note: A request for review and revision may be made by DCSD or DCFT at any
time.

DCFT recognizes, supports, and agrees with Douglas County School District's development and
implementation of an on-line school.  DCFT and DCSD agree that meetings will be held as
needed (including representatives from DCFT, HR,  eDCSD teachers, and eDCSD
administration) to solve any potential contract issues at the lowest level as eDCSD continues in
the development process. Initially,  it is the understanding and agreement of DCFT and DCSD
that eDCSD will adhere to contract language with the exception of the following:

➢ Teacher evaluations within eDCSD of <u>partial</u> FTE assignments are not recognized as a
  teacher's formal evaluation record.  eDCSD will use the evaluation of <u>partial</u> FTE
  assignments to evaluate the teacher for continuation of a partial FTE assignment within
  eDCSD.  In the case of poor performance, eDCSD will follow the standard progressive
  DCSD improvement process (adequate time, adequate resources, good faith effort).
➢ All <u>partial</u> FTE assignments will be considered one-semester only assignments to be
  renewed each semester.
➢ Current eDCSD Curriculum Developers of on-line courses will be allowed to teach the
  course he/she developed, without application for continuity of program.
➢ Beginning July 1, 2008, any new eDCSD full or partial FTEs will be posted and filled
  following current DCSD Human Resources guidelines and hiring practices.

➢ eDCSD defines the secondary program as 6-12 and partial FTEs (primarily) will be for the
  10/11 school year.
  • *In-district teacher applicants to the 6-12 eDCSD program must have a satisfactory
    evaluation and a recommendation from their current Principal before consideration as
    an applicant.*
  • *Multiple content levels may be combined to equal a section.*
  • *.1 FTE = 1 Semester Course of 26-36 students at teacher's per diem based on the
    10/11 DCSD Salary Schedule.*
  • *.075 = 1 Semester Course of 22-25 students at teacher's per diem based on the 10
    /11 DCSD Salary Schedule.*
  • *.05 FTE = 1 Semester Course of 15-21 students at teacher's per diem based on the
    10/11 DCSD Salary Schedule.*

*0701/11*

80

- *.025 = 1 Semester Course of 7-14 students at teacher's per diem based on the 10/11 DCSD Salary Schedule.*
- *1.0  FTE = 12 semester courses per year of 36 students.  Teacher placed appropriately on the 10/11 DCSD Salary Schedule. 1.0 FTE assignments will follow the DCSD formal evaluation process.*

➢ eDCSD defines the elementary program as K-5.
- *1.0 FTE = 185 day contract with up to 32 students in grades K-2 and up to 35 students in grades 3-5.  Teacher placed appropriately on the 10/11 DCSD Salary Schedule.*
- *Any students less than 15 would = .5 FTE*
- *16-32 students would be 1.0 FTE*
- *1.0 FTE assignments will follow the DCSD formal evaluation process.  In the case of poor performance, eDCSD will follow the standard progressive DCSD improvement process (adequate time, adequate resources, good faith effort).*
- *In-district teacher applicants to the K-5 eDCSD program must have a satisfactory evaluation and a recommendation from their current Principal before consideration as an applicant.  Following the first year as a teacher for eDCSD, the Department of Human Resources will guarantee that a DCSD entitled teacher may return to the school and assignment which he/she held prior to entering eDCSD, provided the position still exists. This will require Principals to offer one-year-only contracts in their entitled positions.  After a second year in eDCSD, the teacher may be returned to another position in the district for which he/she is qualified. Upon entering the third year, the teacher will be considered a DCSD eDCSD teacher and must follow all voluntary transfer guidelines when interested in a different DCSD teaching position. Out-of-district applicants must not have any previous performance issues (per references) and will only be offered one-year-only contracts for the first year as an eDCSD teacher. After year one, the teacher receives probationary 2 status and will follow the standard evaluation processes in DCSD.*

➢ eDCSD utilizes a position called a Student Learning Advocate (SLA). This specialist provides guidance and support for all students by advising on course selection and developing and monitoring an educational plan that fits the needs of each student. A SLA's job is multifaceted and includes serving as a curriculum expert, guidance counselor and progress monitor.

*Curriculum Expert*
- *Serve as the liaison between students/families and teachers*
- *Know the model of each curricular product (Lincoln Interactive)*
- *Be familiar with course descriptions*
- *Be familiar with State GLE's*

*Guidance Counselor*
- *Know graduation requirements*

*0701/11*

81

- *Know students – frequent conferencing with students plus contact with parent/guardian every 2 weeks utilizing their preferred method of communication (1:1 conversation, appx 20 hrs/wk)*
- *Schedule students in appropriate courses*
- *Monitor student attendance and truancy*

*Progress Monitor*

- *Examine progress regularly*
- *Record final grades*
- *Initiate and track the RTI process where necessary, developing intervention plans within the team*
- *Support/advocate for students, helping them with time management skills*
- *Provide tutoring sessions where necessary*
- *Administer / perform face to face assessments (DRA2, MAPs, CSAP, ACT)*

In addition, this position serves a vital role in student retention and acquisition. During the enrollment window, SLA's conduct interviews, review transcripts, attend enrollment determination meetings and lead information sessions.  Therefore, eDCSD will implement the following:

- *a custom resulting in 15  days to be utilized between school years for recruiting and retention efforts*
- *a ratio of 1:125 between SLA's and students for a 1.0 FTE*
- *A percentage of FTE would be awarded in the following scale:*
  - ➢ *An additional 35 students = .1 FTE*

*0701/11*

# Douglas County School District
## 2011-2012 Teacher Salary Schedule
### Without Longevity

| LEVEL | BA 00 R | BA 00 P | BA 14 P | BA 14.5 R | BA 28 P | BA 28 R | MA 00 R | MA 00 P | MA 16 P | MA 16 R | MA 32 P | MA 32 R | MA 48 P | MA 48 R | PHD P | PHD R |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 33587 | 34134 | 34595 | 35158 | 35653 | 36202 | 37419 | 38416 | 38541 | 38570 | 39698 | 40757 | 40689 | 41980 | 42115 | 43239 |
| 2 | 34941 | 35510 | 36052 | 36639 | 37186 | 37790 | 39201 | 40394 | 40348 | 41472 | 41620 | 42731 | 42881 | 44026 | 44181 | 45360 |
| 3 | 36295 | 36886 | 37510 | 38120 | 38738 | 39358 | 42246 | 42246 | 42078 | 43374 | 43543 | 44705 | 44874 | 46072 | 46247 | 47481 |
| 4 | 37649 | 38262 | 38967 | 39601 | 40291 | 40946 | 43908 | 44039 | 43908 | 45276 | 45466 | 46679 | 46867 | 48118 | 48313 | 49602 |
| 5 | 39003 | 39638 | 40424 | 41082 | 41844 | 42524 | 45738 | 45752 | 45738 | 47176 | 47383 | 48653 | 48860 | 50164 | 50379 | 51723 |
| 6 | 40357 | 41014 | 41882 | 42563 | 43397 | 44102 | 47604 | 47604 | 47608 | 49080 | 49311 | 50627 | 50853 | 52210 | 52444 | 53844 |
| 7 | 41711 | 42390 | 43339 | 44044 | 44949 | 45680 | 49655 | 49657 | 49393 | 50982 | 51234 | 52601 | 52845 | 54256 | 54510 | 55985 |
| 8 | 43065 | 43766 | 44796 | 45525 | 46502 | 47258 | 51509 | 51509 | 51228 | 52884 | 53156 | 54575 | 54856 | 56302 | 56576 | 58085 |
| 9 | 44419 | 45142 | 46253 | 47006 | 48055 | 48836 | 53162 | 53162 | 53058 | 54786 | 55079 | 56539 | 56831 | 58338 | 58642 | 60207 |
| 10 | 45773 | 46518 | 47711 | 48487 | 49608 | 50414 | 55214 | 55214 | 54888 | 56688 | 57002 | 58523 | 58824 | 60394 | 60708 | 62328 |
| 11 | 47127 | 47894 | 49168 | 49968 | 51160 | 51992 | 57067 | 57067 | 56718 | 58580 | 58904 | 60497 | 60817 | 62440 | 62774 | 64449 |
| 12 | | | | 50273 | 52713 | 53570 | 58919 | 58919 | 58540 | 60482 | 60847 | 62471 | 62809 | 64486 | 64840 | 66570 |
| 13 | | | | 51499 | 54266 | 55148 | 60572 | 60772 | 60378 | 62394 | 62770 | 64445 | 64802 | 66532 | 66905 | 68691 |
| 14 | | | | | | | 62523 | 62624 | 62206 | 64292 | 64692 | 66416 | 66795 | 68578 | 68971 | 70812 |
| 15 | | | | | | | 64477 | 64477 | 64036 | 66190 | 66615 | 68393 | 68789 | 70624 | 71057 | 72933 |
| 16 | | | | | | | | | | | | 68838 | 70367 | 72670 | 73103 | 75053 |
| 17 | | | | | | | | | | | | | 70781 | 74716 | 75169 | 77197 |
| 18 | | | | | | | | | | | | | 72773 | | 77235 | 79296 |
| 19 | | | | | | | | | | | | | | | | |
| 20 | | | | | | | | | | | | | | | | |

The Douglas County School District Human Resources Department determines salary placement. Up to six (6) years of service credit for contract teaching/or work deemed comparable by the District will be recognized so long as it has been earned within the last eight years. For positions designated as hard to fill, service credit up to ten (10) years will be recognized so long as it has occurred within the last ten years. The School District will recognize approved in-service programs toward knowledge advancement up to half (1/2) the number of hours required to attain the next level. This month's should be utilized as a guide. Exact placement will be made in accordance with the procedures developed for initial salary placement.

Longevity: All teachers receive an additional stipend of $758 upon the successful completion of their 14th, 19th, 24th and 29th years. Those teachers with a Masters degree and above will receive an additional $750 upon their 14th year.

Approved 01.2011.2012 Salary Schedule Frozen

Based on 2008 - 2009 Formula

7/1/11