IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-01047-MEH

DOUGLAS COUNTY FEDERATION,
KATHERINE N. DORMAN,
CHRISTINA K. THORSEN, and
SUSAN R. FORSYTH,
on their own behalves and on behalf of others similarly situated,

       Plaintiffs,

vs.

DOUGLAS COUNTY SCHOOL DISTRICT RE-1,

       Defendant.

---

## JOINT MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AGREEMENT AND ENTRY OF RELATED PROCEDURAL ORDERS

Plaintiffs Douglas County Federation ("DCF"), Katherine N. Dorman, Christina K. Thorsen, and Susan R. Forsyth (collectively the "Named Plaintiffs"), and Defendant Douglas County School District RE-1 ("Defendant"), by and through undersigned counsel, and pursuant to Fed. R. Civ. P. 23(e), respectfully request that the Court approve a Proposed Class Action Settlement Agreement on a preliminary basis and enter related procedural orders in anticipation of a final fairness hearing on the proposed agreement.  As grounds for this Joint Motion, Named Plaintiffs and Defendant state as follows:

### BACKGROUND & PROCEDURAL HISTORY

On or about February 15, 2013, Named Plaintiffs DCF, Thorsen, and others filed this lawsuit as a putative class action in Douglas County District Court, Case No. 2013CV00318.  Plaintiffs alleged as putative class action claims *inter alia* that Defendant both (a) breached a

2011-2012 collective bargaining agreement entered into between Defendant and Named Plaintiff DCF which governed certain terms and conditions of Defendant's teachers' employment (the "2011-2012 CBA"), and (b) violated the Contracts Clause of the Colorado Constitution, through its discontinuation of a sick leave bank benefit previously provided in the 2011-2012 CBA. Following expiration of the 2011-2012 CBA, Defendant replaced the sick leave bank benefit previously provided in that agreement with a Short-Term Disability Insurance ("STDI") policy covering Defendant's teachers.  At the time the sick leave bank benefit was discontinued, the bank contained approximately 7,800 unused days.

On or about April 8, 2013, Named Plaintiffs DCF, Thorsen, and others filed a First Amended Complaint in the state court alleging *inter alia* the same putative class action claims recited above arising from discontinuation of the sick leave bank benefit previously provided in the 2011-2012 CBA and replacement of that benefit with Defendant's STDI policy.

Following a motion to dismiss filed by Defendant, the Douglas County District Court entered an order on or about August 27, 2013, directing *inter alia* that the parties exhaust administrative remedies under the 2011-2012 CBA prior to plaintiffs' litigation of their breach of contract claim.

On or about July 9, 2014, Named Plaintiffs DCF, Dorman, Thorsen, and others filed a Second Amended Complaint in the state court alleging *inter alia* the same putative class claims recited above arising from discontinuation of the sick leave bank benefit previously provided in the 2011-2012 CBA.

Following a second motion to dismiss filed by Defendant in the state court, the Douglas County District Court entered an order on or about March 10, 2015, effectively directing *inter*

*alia* the parties to further exhaust administrative remedies under the 2011-2012 CBA prior to plaintiffs' litigation of their breach of contract claim.

Following multiple arbitrations held between the parties in 2016 pursuant to the exhaustion procedures contained in the 2011-2012 CBA, the Named Plaintiffs then filed a Third Amended Complaint in the state court on or about March 29, 2017, alleging *inter alia* as putative class action claims that Defendant breached the 2011-2012 CBA and violated the Contracts Clauses of both the United States and Colorado Constitutions by discontinuing the sick leave bank benefit previously provided in the 2011-2012 CBA.

Defendant filed its answer to the Named Plaintiffs' Third Amended Complaint in the state court on or about April 19, 2017, denying all material allegations and asserting a number of affirmative defenses, including, but not limited to, continued failure to properly exhaust administrative remedies and the illegality of any alleged continuing commitments Defendant purportedly owed under the expired 2011-2012 CBA.  On the basis of Named Plaintiffs' federal Contracts Clause claim, Defendant removed this case to this Court on or about April 27, 2017. *See* ECF No. 1.

On or about July 9, 2017, the Named Plaintiffs filed a Fourth Amended Complaint in this Court alleging *inter alia* as putative class action claims that Defendant breached the 2011-2012 CBA, violated the Contracts Clauses of both the United States and Colorado Constitutions, violated the Taking Clauses of both the United States and Colorado Constitutions, and were unjustly enriched by discontinuation of the sick leave bank benefit previously provided in the 2011-2012 CBA.  *See* ECF No. 34.

Defendant filed its answer to the Named Plaintiffs' Fourth Amended Complaint in this Court on or about July 24, 2017, denying all material allegations and asserting a number of

affirmative defenses, including, but not limited to, continued failure to properly exhaust administrative remedies, the illegality of any alleged continuing commitments Defendant purportedly owed under the expired 2011-2012 CBA, and defenses under the Colorado Governmental Immunity Act.  *See* ECF No. 36.

Pursuant to a bifurcated scheduling order entered by the Court, the parties then engaged in approximately three months of class discovery, during which they exchanged numerous documents and conducted depositions of Named Plaintiffs Dorman, Thorsen, and Forsyth.

On or about October 2, 2017, Named Plaintiffs Dorman, Thorsen, and Forsyth filed a motion for class certification which Defendant opposed.  On or about January 11, 2018, the Court granted the motion for class certification.  Pursuant to the Court's February 2, 2018, Order (*see* ECF No. 61), plaintiffs completed distribution of an approved class notice (*see* ECF No. 60-1) on or about February 9, 2018.  Seventeen members of the certified class made timely requests for exclusion from the class.  *See* ECF No. 66.

The parties thereafter engaged in two Case Management Conferences before the Court on June 21, 2018, and January 30, 2019, and two private mediations conducted before private mediator Adrienne Fechter on April 8, 2019, and September 6, 2019, in an effort to settle this matter.  As a result of these efforts, the parties reached a settlement in principle as reflected in a term sheet executed by the parties on or about September 6, 2019.

Following additional negotiations between the parties from early September 2019 through mid-April 2020 regarding both the form of a final class action settlement agreement, and the logistics of administering the anticipated settlement, the parties ultimately agreed upon and executed a Stipulation of Agreement of Settlement incorporating the essential terms of settlement reached during the September 6, 2019, mediation (the "Proposed Class Action Settlement

Agreement"). The Proposed Class Action Settlement Agreement was fully executed by all parties and their counsel as of April 23, 2020. The agreement is submitted herewith for the Court's consideration as **Exhibit A**. On April 24, 2020, the parties advised the Court of the Proposed Class Action Settlement Agreement. *See* ECF No. 82. The Court then ordered the parties to file any motion for approval of the same pursuant to Fed. R. Civ. P. 23 by June 1, 2020. *See* ECF No. 83.

Defendant has denied and continues to deny any fault, liability, or wrongdoing of any kind and disputes that the evidence developed in the lawsuit supports in any way the claims asserted. Defendant has also denied and continues to deny each and all of the material claims and contentions alleged by the Named Plaintiffs. Defendant has further denied and continues to deny that the Named Plaintiffs or any other Plaintiff Class members were harmed or suffered any loss as a result of any of the conduct alleged in the lawsuit. Defendant has entered into the Proposed Class Action Settlement Agreement solely for the purpose of avoiding the time, cost, uncertainty, and disruption associated with ongoing litigation and to settle all outstanding claims.

The Kelman Buescher Firm ("Class Counsel") has conducted a lengthy and thorough investigation of the claims against Defendant in the lawsuit, and the impact of the Proposed Class Action Settlement Agreement on the Named Plaintiffs and the Plaintiff Class members. Based on that analysis, and an evaluation of a number of factors, including the defenses asserted by Defendant, the expense and delay associated with continued proceedings, and the uncertainty of the outcome of the lawsuit, including on any appeal asserting failure to exhaust administrative remedies and other defenses preserved by Defendant, Class Counsel believes that settlement with Defendant for the consideration and on the terms set forth in the Proposed Class Action

Settlement Agreement is fair, reasonable, and adequate and is in the best interests of the Named Plaintiffs and the members of the Plaintiff Class.

The parties and their counsel now respectfully request that the Court enter an order preliminarily approving the Proposed Class Action Settlement Agreement as fair, reasonable, and adequate and in the best interests of the Named Plaintiffs and the Plaintiff Class members, and entering other related procedural orders, including:  (1) approval of a Notice of Proposed Class Action Settlement and Hearing ("Notice"), a copy of which is attached as **Exhibit B**; (2) approval of an Election to Opt-Out Form ("Opt-Out Form"), a copy of which is attached as **Exhibit C**; (3) authorizing the mailing of the Notice and Opt-Out Form to all identified members of the Plaintiff Class; (4) setting a date for the execution and return of the Opt-Out Form (the "Response Deadline"); (5) scheduling a fairness hearing for the final approval of the Proposed Class Action Settlement Agreement and entry of a Final Judgment and Order dismissing with prejudice all claims encompassed by the agreement (the "Final Approval Hearing"); and (6) issuing an immediate stay of any outstanding case management deadlines until further order of the Court.

The parties respectfully submit that, unless the Court finds a basis to doubt the fairness of the Proposed Class Action Settlement Agreement, the Court may preliminarily approve both the agreement and the Notice and Opt-Out Form; authorize the mailing of the Notice and Opt-Out Form to identified members of the Plaintiff Class; set a date for the Final Approval Hearing; and issue an immediate stay of any outstanding case management deadlines pending further order of the Court.

The parties respectfully submit that approval of the Proposed Class Action Settlement Agreement is in the best interests of the parties and the members of the Plaintiff Class.

## SUMMARY OF THE PROPOSED
## CLASS ACTION SETTLEMENT AGREEMENT

The Proposed Class Action Settlement Agreement defines the Plaintiff Class in terms identical to those previously certified by this Court pursuant to Fed. R. Civ. P. 23(b)(3), namely:

> All teachers who were members of the Douglas County Federation in 2012, worked under the 2012 CBA with Defendant and either (1) have been approved for benefits under Defendant's STDI plan and/or (2) paid premiums to buy-up coverage under Defendant's STDI plan.

*See* **Exhibit A** at Section II.A; *see also* ECF No. 56 at 29.

The Named Plaintiffs allege that these Plaintiff Class members were damaged in various respects depending upon their specific circumstances as a result of Defendant's discontinuation of the sick leave bank benefit and replacement of that benefit with Defendant's STDI policy. The Named Plaintiffs allege that these damages, depending upon each Plaintiff Class member's individual circumstances, include:  (1) alleged unlawful deprivation of the right to use remaining days in the sick leave bank to compensate for certain leave(s) of absence taken by members following expiration of the 2011-2012 CBA;[1] (2) alleged unlawful loss of future Public Employees' Retirement Association ("PERA") benefits for members who were required to use Defendant's STDI policy, rather than its sick leave bank benefit, following expiration of the 2011-2012 CBA in relation to certain leave(s) of absence taken by such members;[2] (3) alleged damages relating to certain members' payment(s) of insurance premiums under Defendant's STDI policy to "buy up" to a higher coverage level under that policy; and (4) alleged damages

---

[1] This alleged category of damages relates to the fact that Plaintiff Class members received different benefits under the sick leave bank benefit than under the STDI policy.  These benefits varied in terms of the salary replacement available for members, the tax treatment of such benefits, and the length of time the benefits were available to members, amongst other differences.

[2] This alleged category of damages relates to the fact that benefits paid under Defendant's sick leave bank benefit were "PERA-includable," meaning they could potentially contribute to the calculation of available PERA retirement benefits for teachers, whereas benefits paid under Defendant's STDI policy were not.

relating to the purportedly unlawful elimination of remaining, residual, unused days in the sick leave bank upon expiration of the 2011-2012 CBA.

For purposes of the Proposed Class Action Settlement Agreement, Named Plaintiffs Dorman, Thorsen, and Forsyth are each members of the Plaintiff Class, and have been certified as class representatives of the class. *See* ECF No. 56 at 29. The agreement provides that all members of the Plaintiff Class who do not timely opt-out of the Proposed Class Action Settlement Agreement, along with Named Plaintiff DCF, will release Defendant from all claims which were or could have been asserted in the lawsuit arising out of, or relating to, Defendant's discontinuation of the sick leave bank benefit.[3] *See, e.g.*, **Exhibit A** at Sections II.A, III.A. The agreement further provides that Plaintiff Class members who do not timely opt-out of the agreement (defined as the "Settlement Class Members") will be entitled to certain compensation to be calculated under the agreement. *See, e.g.*, *id*. at Sections II.A, III.G.

In order to resolve the individual and class claims arising from Defendant's discontinuation of the sick leave bank benefit previously provided in the 2011-2012 CBA, and the replacement of that benefit with Defendant's STDI policy, Defendant has agreed to pay a maximum settlement amount of $2,560,000 (inclusive of required employee tax withholdings, but exclusive of required employment taxes to be paid by the employer) to settle this matter. *See id.* at Section III.C. The agreement provides that this full amount shall be distributed to Settlement Class Members, with the exceptions of: (1) $75,000 in attorneys' fees to be paid to Class Counsel; (2) $80,000 in gross incentive awards to be distributed amongst Named Plaintiffs Dorman, Thorsen, and Forsyth, along with a trust established in connection with a former, and

---

[3] The agreement also provides for broader, general release to be provided to the School District from Named Plaintiffs Dorman, Thorsen, and Forsyth. *See* **Exhibit A** at Section III.B.

now deceased, Named Plaintiff and putative class representative, Sarah Staebell; and (3) $4,000 to be credited to Defendant against the $2,560,000 maximum settlement amount in recognition of Defendant's anticipated costs of administering the settlement (as detailed further below). *See id.* at Sections II.F.3, III.C.

This $2,560,000 maximum settlement amount, less the deductions for the sums reflected above, will be distributed to Settlement Class Members pursuant to a settlement award calculation methodology provided in the Proposed Class Action Settlement Agreement which is designed to compensate Settlement Class Members in differing amounts (depending on their specific circumstances) in the four categories of alleged damages discussed above. These categories and calculation methodology, which will result in different settlement award amounts depending on Settlement Class Members' specific circumstances, are as follows:

- Compensation for Unused Days in the Sick Leave Bank for Settlement Class Members Who Took Sick Leave Under the STDI Policy: Reimbursement equivalent to the number of unused sick leave bank days, calculated at $191.59 per day, required to provide each Settlement Class Member with the same equivalent payments he or she would have received had he or she been permitted to use the unused days in the sick leave bank, rather than Defendant's STDI plan, during his or her applicable leave(s).

- Compensation for Lost Future PERA Benefits by Settlement Class Members Who Took STDI Leave: Reimbursement equivalent to the purchase price of 1-2 months' worth of Individualized Service Credits (depending upon the length of the applicable leave(s)) for each Settlement Class Member who lost PERA Service Credits by virtue of being required to use Defendant's STDI plan, rather than unused days in the sick leave bank, during his or her applicable leave(s).

- Reimbursement of Insurance Premiums for Settlement Class Members Who Bought-Up to 70% STDI Coverage: Reimbursement of all premium amounts paid by each Settlement Class Member to "buy-up" to 70% coverage under Defendant's STDI plan.

- Compensation for Any Remaining Unused Days Left in the Sick Leave Bank: Reimbursement for any remaining unused days in the sick leave bank, calculated as

the remainder of the Total Payout Amount[4] (after amounts reflected [in the previous three categories of alleged damages] are deducted) divided evenly amongst all Settlement Class Members, to compensate all such individuals for any remaining unused days left in the sick leave bank after the value of certain days is paid out to specific Settlement Class Members pursuant [to the first category of alleged damages] above.

*Id*. at Sections III.G.2.a-d.

Because these settlement award amounts are to be calculated in part based on information provided to Class Counsel in discovery pertaining to individual Plaintiff Class members—*e.g.*, the lengths of any applicable leave(s) taken by such members under Defendant's STDI policy, the amount of monies expended by such members in "buy-up" premium(s), etc.—the Proposed Class Action Settlement Agreement attaches as an exhibit a list of the minimum gross settlement awards potentially payable to each identified member of the Plaintiff Class under the terms of the Proposed Class Action Settlement Agreement.  *See id*. at Ex. C.  These listed minimum gross settlement amounts for each identified member of the Plaintiff Class could increase depending upon the number of Plaintiff Class members who opt-out of the Proposed Class Action Settlement Agreement (since more of the $2,560,000 maximum settlement amount would then be available to distribute amongst the Plaintiff Class members who do not opt-out).  These listed settlement award figures also do not include any additional payments Settlement Class Members may receive pursuant to any secondary distribution of checks which could potentially be sent by Defendant after the initial distribution of checks if certain Settlement Class Members do not

---

[4] The agreement defines the "Total Payout Amount" as Defendant's $2,560,000 maximum settlement amount less the deductions discussed above for attorneys' fees ($75,000), incentive payments ($80,000), and a credit for Defendant's anticipated costs to be incurred in administering the settlement ($4,000).  *See* **Exhibit A** at Section III.G.1.

timely cash their checks after the initial distribution (as discussed further below). *See id*. at Sections II.F.4-5, III.G.2.[5]

The Proposed Class Action Settlement Agreement provides a settlement procedure to be administered solely by the parties themselves, rather than through a third-party settlement administrator, to ensure that a greater portion of the $2,560,000 maximum settlement amount is ultimately paid to Settlement Class Members. Pursuant to this proposed settlement administration procedure—and assuming this Court preliminarily approves the Proposed Class Action Settlement Agreement and the Notice and Opt-Out Form—Class Counsel will print and mail a copy of the Notice and Opt-Out Form to all Plaintiff Class members identified by Defendant as within the Plaintiff Class, and will mail these forms to the last known mailing addresses for these individuals as identified to Class Counsel by Defendant. *See id*. at Section II.C.1-2. As discussed further below, the Notice and Opt-Out Form will, among other things, advise these Plaintiff Class members of their rights to participate in the settlement, to opt-out, and to object to the settlement either before or during the Final Approval Hearing. *See id.* at Section II.C.3-4. The Notice will also inform the Plaintiff Class members that if they wish to opt-out of the settlement, they must execute and deliver the Opt-Out Form to Class Counsel prior to a Response Deadline to be ordered by this Court. *See id.* at Section II.D.1.[6]

---

[5] The proposed agreement provides for no reversion of uncashed settlement award checks to Defendant after the initial distribution of checks. Instead, the agreement provides that, should any settlement award checks not timely be cashed after the initial distribution, the uncashed checks shall be cancelled after 90 days and the funds reflected therein redistributed, on a *pro rata* basis, to Settlement Class Members who do timely cash their settlement award checks (the "Participating Settlement Class Members," as defined by the agreement). *See* **Exhibit A** at Section II.F.3-6. Only if any settlement award checks remain uncashed 90 days after any secondary distribution of funds shall those unclaimed funds revert to Defendant. *See id.* at Section II.F.5.

[6] Although Class Counsel previously distributed a notice after class certification, and although seventeen Plaintiff Class members excluded themselves from the class at that time, *see* ECF Nos. 60-1, 61, 66; Fed. R. Civ. P. 23(e)(4) empowers this Court to "refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so." The parties agree that such additional notice and opportunity to exclude is appropriate here, including because the previous class notice was distributed in the spring of 2018, and new Plaintiff Class members have joined the class since that time.

Pursuant to the proposed settlement procedure provided in the Proposed Class Action Settlement Agreement, all Plaintiff Class members who do not timely opt-out of the Proposed Class Action Settlement Agreement by the ordered Response Deadline will be deemed to have waived the right to opt-out of the settlement and will be subject to the same release of claims applicable to all Settlement Class Members.  *See id.* at Section II.D.2.

Should the Court finally approve the Proposed Class Action Settlement Agreement following a Final Approval Hearing, the agreement provides that individual and class claims which were or could have been asserted in this lawsuit arising out of, or relating to, Defendant's discontinuation of the sick leave bank benefit shall be dismissed with prejudice.  Until and unless it is approved by the Court and becomes effective under its own terms, the Proposed Class Action Settlement Agreement shall not be deemed to waive, withdraw, resolve, or prejudice any party's position, claims, defenses, or any other matter related to this action.

## THE PROPOSED SETTLEMENT AGREEMENT IS FAIR, REASONABLE, AND ADEQUATE

Courts engage in a two-step process to ensure the fairness of a class action settlement. *See Rhodes v. Olson Assocs., P.C.*, 308 F.R.D. 664, 666 (D. Colo. 2015) (citing NEWBERG ON CLASS ACTIONS § 13:12 (5th ed.)).  This Joint Motion relates to the first step of the process, in which the Court makes a preliminary determination regarding the fairness, reasonableness, and adequacy of the settlement terms.  *See id.*  The object of preliminary approval is for the Court to "determine whether notice of the proposed settlement should be sent to the class, not to make a final determination on the settlement's fairness."  *Id.* (further citation omitted).  Accordingly, the standard which governs preliminary approval is "less demanding than the standard that applies at the final approval stage."  *Id.*  (further citation omitted).  A district court will ordinarily grant preliminary approval where the proposed settlement "appears to be the product of serious,

informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *In re Motor Fuel Temperature Sales Practices Litig.*, 2011 WL 4431090, at *5 (D. Kan. Sept. 22, 2011) (further citation omitted).

Fed. R. Civ. P. 23(e)(2) instructs that a class action settlement must be "fair, reasonable and adequate." The Tenth Circuit has directed that, in deciding whether to approve a class settlement, a district court should consider whether "(1) the settlement was fairly and honestly negotiated, (2) serious legal and factual questions placed the litigation's outcome in doubt, (3) the immediate recovery was more valuable than the mere possibility of a more favorable outcome after further litigation, and (4) [the parties] believed the settlement was fair and reasonable." *Tennille v. W. Union Co.*, 785 F.3d 422, 434 (10th Cir. 2015) (further citation omitted). Approval of a proposed class action settlement is subject to the Court's sound discretion. *See, e.g.*, *U.S. v. Hardage*, 982 F.2d 1491, 1495 (10th Cir. 1993).

The parties submit that each of these criteria is satisfied by the Proposed Class Action Settlement Agreement.

### A.    **The Agreement Was Fairly and Honestly Negotiated.**

The agreement was fairly and honestly negotiated. This lawsuit has been pending since its initial filing in the state court in early 2013, and the parties have had the benefit of exchanging considerable information bearing upon the legal and factual issues in this case, including through conferrals in relation to contractual grievance adjustments, during four advisory arbitrations, during class discovery, through the depositions of three Named Plaintiffs, and through the exchange of additional information in conjunction with multiple arbitrations held in this matter.

The information exchanged has informed multiple arms-length negotiations between the parties, including during two Case Management Conferences held before this Court, and two private mediations held before mediator Adrienne Fechter.  The parties also engaged in months of additional arms-length negotiations regarding both the form of a final settlement agreement, and the logistics of administering the anticipated settlement, after reaching an agreement in principle in September 2019 but before executing the Proposed Class Action Settlement Agreement in mid-April 2020.

### B.    Serious Legal and Factual Issues Place the Litigation's Outcome in Doubt.

Serious legal and factual questions place the litigation's outcome in doubt.  Defendant has long maintained that the Named Plaintiffs failed to adequately exhaust administrative remedies as a prerequisite to maintaining their breach of contract claim, and has preserved this issue for appeal.[7]  Defendant has also long maintained that the sick leave bank benefit did not survive expiration of the 2011-2012 CBA, including because this benefit was never "vested," *see, e.g.*, *Marriage of Cardona & Castro*, 316 P.3d 626 (Colo. 2014) (holding that a right to sick leave time does not become "earned" or "vested" unless a contract creating it provides for payout of any unused sick leave time; the 2011-2012 CBA had no such provisions with respect to days in the sick leave bank), and because it also did not survive the expiration of the 2011-2012 CBA under traditional contract interpretation principles.

---

[7] Defendant has preserved this issue, amongst other ways, by filing an attempted interlocutory appeal to the Colorado Supreme Court in September 2013 after the state court found in August 2013 that plaintiffs had failed to adequately exhaust their administrative remedies, but nonetheless ordered exhaustion rather than dismiss the case. Defendant has consistently maintained that this order was in error.  *See, e.g.*, *Johnson v. District Ct.*, 654 P.2d 827, 829 (Colo. 1982) ("[I]f a court lacks jurisdiction the only order it can enter is one of dismissal."); *see also, e.g.*, *City of Boulder v. Pub. Serv. Co. of Colo.*, 996 P.2d 198, 203 (Colo. App. 1999) ("If the plaintiff fails to establish that the trial court has subject matter jurisdiction, the court must dismiss the matter; any other order or judgment entered by the court would be void and unenforceable.").

14

Defendant also has maintained that interpreting the 2011-2012 CBA's sick leave bank provisions as surviving expiration of that agreement would effectively violate a statute which precludes school districts from making multi-year contractual commitments to unions pertaining to salaries or benefits unless those agreements have reopener provisions relating to the salaries or benefits. *See* C.R.S. § 22-32-110(5). Defendant has consistently argued that plaintiffs' interpretation of the 2011-2012 CBA's sick leave bank provisions would effectively violate this statute by committing school district revenue for multiple years without the benefit of actual "reopener" bargaining. *Cf., e.g., Speedrack, Inc.*, 293 NLRB 1054, 1054-55 (1989) (contract provisions are "terminated through a reopener"); *Bridgestone*, 331 NLRB 205, 208 (2008) ("the effect of reopening certain contract provisions is to terminate the contract, at least as to the reopened provisions"); *see also Jefferson Cnty. Sch. Dist. No. R-1 v. Shorey*, 826 P.2d 830, 837 (Colo. 1992) (Colorado courts look to federal labor law in resolving public sector labor disputes).

Defendant has further maintained that each of plaintiffs' remaining claims are derivative of their breach of contract claim (since each requires, at a minimum, that plaintiffs had a contractual right to the sick leave bank benefit which survived expiration of the 2011-2012 CBA), and that the defenses discussed above preclude recovery on plaintiffs' remaining claims. But Defendant has additionally maintained that it nonetheless has separate defenses to each of plaintiffs' constitutional claims—*e.g.*, that Defendant took no "legislative" act impairing a contract under plaintiffs' Contracts Clause claims, and that the requirements for a "regulatory taking" are not satisfied for purposes of plaintiffs' Takings Clause claims. *See, e.g., Khan v. Gallitano*, 180 F.3d 829, 832 (7th Cir. 1999); *Penn Central Trasp. Co. v. City of New York*, 438 U.S. 104, 124 (1978).

Plaintiffs dispute Defendant's legal arguments and maintain that that they adequately exhausted administrative remedies; that the sick leave bank benefit survived expiration of the 2011-2012 CBA; that the sick leave bank benefits were "vested;" that the requirements of C.R.S. § 22-32-110(5) were satisfied through bargaining which occurred between Plaintiff DCF and Defendant in 2011-2012; that Defendant discontinued the sick leave bank benefit through a School Board resolution that constituted a "legislative" act; and that the requirements for a "regulatory taking" are satisfied. Despite their disagreements on these legal issues, the parties agree that there are unresolved factual issues relating to exhaustion of administrative remedies that—like the disputed legal issues discussed above—could place the litigation's outcome in doubt.

C.    **The Immediate Recovery Is More Valuable Than the Mere Possibility of a More Favorable Outcome After Further Litigation.**

In light of the litigation uncertainty reflected in the disputed legal and factual issues discussed above, the amount which Defendant has agreed to pay Settlement Class Members constitutes a very substantial percentage of their full potential recovery after further litigation, including any appeals. The parties have considered all material factors, including the "costs, risks, and delay of trial and appeal" in arriving at the proposed Class Action Settlement Agreement. Fed. R. Civ. P. 23(e)(2)(C)(i).

The settlement consideration offered by Defendant is also more valuable than the mere possibility of potential fuller recovery after additional litigation, particularly as such litigation could potentially stretch on for additional years through any trial and/or appeal(s), with the ultimate outcome of the litigation uncertain. The Settlement Class Members face the possibility of no recovery after further additional years of litigation depending upon how the legal and factual issues discussed above may be resolved through any trial and/or appeal(s). "As a general

16

rule, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable." *In re Crocs, Inc. Secs. Litig.*, 306 F.R.D. 672, 692-93 (D. Colo. 2014) (citations omitted). The settlement award calculation methodology discussed above would compensate Settlement Class Members in differing amounts depending on the type and extent of their alleged injuries, and the parties respectfully submit that this damage allocation model is fair because "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Id.* at 692.

**D.**      **The Parties Believe the Settlement Is Fair and Reasonable.**

As discussed above, the parties have litigated this matter since early 2013, including through multiple arbitrations. They have exchanged thousands of pages of documents in both discovery and arbitration proceedings and have taken the depositions of three Named Plaintiffs. They have held two Case Management Conferences before this Court and two mediations before a private mediator. As a result of these efforts, the parties are well informed of the strengths and weaknesses of their respective cases and agree that this proposed settlement is fair and reasonable in light of the same. *Cf., e.g.*, *Quintanella v. A&R Demolition, Inc.*, 2008 U.S. Dist. LEXIS 37449, at *14 (S.D. Tex. May 7, 2008) (endorsement of a proposed settlement by counsel for both parties is a "factor that weighs in favor of approval" because "counsel for each side possess[es] the unique ability to assess the potential risks and rewards of litigation").

For all these reasons, the parties respectfully submit that the Court should hold that the Proposed Class Action Settlement Agreement is fair, reasonable, and adequate and should preliminarily approve the same.

## NOTICE TO THE CLASS AND PROCEDURES FOR
## CLASS MEMBERS TO OPT-OUT AND OBJECT

The parties have agreed on the form of a Notice and Opt-Out Form to be mailed to Plaintiff Class members which are submitted herewith as **Exhibit B** and **Exhibit C,** respectively, for the Court's consideration. The Notice advises the Plaintiff Class members of, among other things, (a) the existence of this action, (b) the maximum settlement amount ($2,560,000) Defendant has agreed to pay to resolve claims which were or could have been asserted in the lawsuit arising out of, or relating to, Defendant's discontinuation of the sick leave bank benefit, (c) the anticipated payments of $75,000 to Class Counsel in attorneys' fees, of $80,000 to current and former Named Plaintiffs in incentive payments, and of $4,000 to be credited to Defendant against the $2,560,000 maximum settlement amount in recognition of Defendant's anticipated costs of administering the settlement, (d) the date, time, and place of the Final Approval Hearing for the Court to consider final approval of the Proposed Class Action Settlement Agreement, (e) Plaintiff Class members' right to object and to be heard at the Final Approval Hearing, and (f) information on how Plaintiff Class members may review the Proposed Class Action Settlement Agreement, including its provisions relating to logistics of the payment of settlement awards to Settlement Class Members after the agreement's Effective Date. The parties respectfully submit that the Court should approve the form and content of the Notice and Opt-Out Form as providing all information required by Fed. R. Civ. P. 23(c)(2)(B).

As reflected in the Proposed Class Action Settlement Agreement, Class Counsel has agreed to be responsible for mailing the Notice and Opt-Out Form to members of the Plaintiff Class. *See* **Exhibit A** at Section II.C.2. In accordance with the proposed procedures in that agreement, the parties request that Class Counsel be ordered to mail the Notice and Opt-Out Forms, by U.S. first-class mail, postage prepaid, to identified members of the Plaintiff Class

within ten business days of (a) when the Court preliminarily approves this Proposed Class Action Settlement Agreement, or (b) Class Counsel receives an updated list (or list) of the last known mailing addresses of identified Plaintiff Class members, whichever is later.[8]  *See id.*

The Parties request that the Court enter an order that any Plaintiff Class members wishing to opt-out of the Proposed Class Action Settlement Agreement must mail the completed Opt-Out Form to Class Counsel by a Response Deadline to be ordered by this Court, and which the parties request be forty-five (45) days after the date on which Class Counsel mails the Notice and Opt-Out Form to the identified Plaintiff Class members.  The postmark deadline for Plaintiff Class members to mail their Opt-Out Form to Class Counsel is reflected in the proposed Notice, attached hereto as **Exhibit B**.

The Parties also request that the Court enter an order that any Settlement Class Member wishing to object to, or comment on, any aspect of the Proposed Class Action Settlement Agreement must file their written objection with the Court (and the parties' respective counsel) by a deadline which is fourteen (14) calendar days before Final Approval Hearing to be scheduled by this Court, and that any Plaintiff Class member wishing to be heard at the Final Approval Hearing must file a written Notice of Intent to Appear at the Final Approval Hearing by a deadline which is seven (7) days before the scheduled date of Final Approval Hearing.

As reflected in the Proposed Class Action Settlement Agreement, Class Counsel will submit a certification to this Court that the Notice and Opt-Out process has been completed (along with a report detailing the number of timely opt-out requests received), and the parties will also submit a proposed Final Judgment and Order of Dismissal with Prejudice to the Court,

---

[8] The Proposed Class Action Settlement Agreement, in turn, provides that, unless previously provided to Class Counsel, Defendant shall provide this updated list or lists within ten business days after the Court's preliminary approval of this Proposed Class Action Settlement Agreement.  *See* **Exhibit A** at Section II.C.1.

within ten (10) business days following expiration of the Response Deadline to be ordered by this Court.  *See* **Exhibit A**, Section II.E.1.  At that same time, the proposed agreement provides that Class Counsel will also provide Defendant with a list of all Settlement Class Members entitled to a settlement award, along with the adjusted gross settlement amounts to which each member is entitled in each of the four categories of damages discussed above.[9]  *See id.* at Section II.F.1.

Following the Final Approval Hearing, and assuming the Court finally approves the Proposed Class Action Settlement Agreement and enters the Final Judgment and Order of Dismissal with Prejudice, Defendant will begin mailing settlement award checks to Settlement Class Members, along with the attorneys' fees and incentive awards, within ninety (90) calendar days after the Final Judgement and Order of Dismissal with Prejudice becomes effective.  *See id.* at Sections I.F, II.F.2.

## COSTS OF ADMINISTRING
## THE SETTLEMENT, ATTORNEYS' FEES, AND INCENTIVE AWARDS

As reflected above, the Proposed Class Action Settlement Agreement provides that Class Counsel shall send the Notice and Opt-Out Form directly to Plaintiff Class members if the Court approves these forms.  *See id*. at Section II.C.2.  Class Counsel has agreed to absorb the cost of this mailing.  As also reflected above, Defendant will ultimately process and mail the settlement award checks to the Settlement Class Members (and, potentially, to Participating Settlement Class Members in a secondary distribution if any Settlement Class Members do not timely cash their checks after the initial distribution) and the agreement provides for $4,000 to be credited

---

[9] These listed gross settlement amounts will be "adjusted" from the figures listed in Exhibit C to the Proposed Class Action Settlement Agreement to reallocate any funds due Plaintiff Class members who timely opt-out of the agreement.

against Defendant's $2,560,000 maximum settlement amount in recognition of Defendant's anticipated cost of administering the settlement in this manner.  *See id*. at Section III.C.  The parties anticipate that this proposed settlement administration procedure, which will be performed solely by themselves, as opposed to by a third-party settlement administrator, will allow considerably more of the $2,560,000 maximum settlement amount to be distributed to Settlement Class Members.

As discussed above, the Proposed Class Action Settlement Agreement also provides for Class Counsel to be reimbursed $75,000 for attorneys' fees, and for the individual Named Plaintiffs (in addition to a trust established in connection with a former, and now deceased, individual Named Plaintiff) to receive $80,000 in incentive payments out of the $2,560,000 maximum gross settlement.  *See id*.  The parties believe that such disbursements are fair and reasonable—particularly as the parties have aggressively litigated this case in various fora since early 2013.  The proposed attorneys' fee award constitutes less than 3% of the entire maximum settlement amount ($2,560,000), and the proposed attorneys' fee award, combined with the proposed incentive awards ($80,000) and the anticipated settlement administration cost to be credited to Defendant ($4,000), cumulatively constitute only approximately 6% of the maximum settlement amount.  The parties submit that these disbursements are reasonable and request that the Court assess the fairness of the same at the Final Approval Hearing.  *Cf., e.g.*, *Vaszlavik v. Storage Tech. Corp.*, 2000 U.S. Dist. LEXIS 21140, at *11 (D. Colo. Mar. 9, 2000) ("A 30% common fund fee award is in the middle of the ordinary 20%-50% range and is presumptively reasonable."); *Lucken Family Ltd., P'ship, LLLP v. Ultra Res., Inc.*, 2010 WL 5387559, at *6 (D. Colo. Dec. 22, 2010) ("Courts have held that incentive awards are an efficient and productive way to encourage members of a class to become class representatives, and to reward the efforts

they make on behalf of the class."); *Shaw v. Interthinx, Inc.*, 2015 WL 1867861, at *8 (D. Colo. Apr. 22, 2015) (in assessing incentive awards, "the amount of time and effort the class representative expended in pursuing the litigation" is a relevant consideration).[10]

### REQUEST FOR STAY OF ALL CASE MANAGEMENT DEADLINES

Pursuant to the order this Court issued upon receipt of the parties' Notice of Settlement on April 24, 2020, *see* ECF No. 83, the July 13, 2020 Trial, and the June 24, 2020, Trial Preparation Conference, have both been vacated in light of the pending proposed settlement. To the extent any other case management deadlines remain operative in this case,[11] the parties respectfully request the stay of the same until further order of the Court.

### CONCLUSION

Based on the foregoing, the parties respectfully request that the Court enter an order:

(1) Preliminarily determining that the Proposed Class Action Settlement Agreement attached hereto as **Exhibit A** is fair, reasonable, and adequate;

(2) Approving the form and content of the Notice and Opt-Out Form attached hereto as **Exhibits B** and **C**, respectively;

(3) Ordering Class Counsel to mail the Notice and Opt-Out Form, by U.S. first-class mail, postage prepaid, to all identified members of the Plaintiff Class within ten business days of (a) the date the Court preliminarily approves this Proposed Class Action Settlement Agreement,

---

[10] As discussed above, some or all individual Named Plaintiffs (and a former, now deceased, individual Named Plaintiff, Sarah Staebell) have participated in all proceedings in this matter since its inception in early 2013, including, but not limited to, proceedings ranging from arbitrations, to Case Management Conferences, to private mediations, to depositions. The individual Named Plaintiffs (and a former, and now deceased individual Named Plaintiff) who will receive incentive awards under the proposed agreement have all devoted considerable time, attention, and effort to this matter since early 2013.

[11] All pertinent case management deadlines as ordered by this Court in its April 30, 2019, order appear to have already passed. *See* ECF No. 77. The parties are accordingly making this request to stay deadlines out of an abundance of caution.

or (b) the date Class Counsel receives an updated list (or lists) of the last known mailing addresses of such Plaintiff Class members, whichever is later;[12]

(4) Ordering a Response Deadline for any members of the Plaintiff Class to mail the completed Opt-Out Form to Class Counsel if they wish to be excluded from the Proposed Class Action Settlement Agreement, which postmark deadline the parties request be forty-five (45) days after the postmark date of Class Counsel's mailing of the Notice and Out-Out Form to identified members of the Plaintiff Class;

(5) Ordering Class Counsel to submit a certification to the Court that the Notice and Opt-Out process has been completed, along with a report detailing the number of timely opt-out requests submitted, within ten (10) business days following expiration of the Response Deadline;

(6) Ordering the parties to jointly submit a proposed Final Judgment and Order of Dismissal with Prejudice to the Court within ten (10) business days following expiration of the Response Deadline;

(7) Setting a Final Approval Hearing to consider final approval of the Proposed Class Action Settlement Agreement and the parties' proposed Final Judgment and Order of Dismissal with Prejudice;

(8) Ordering a deadline for any Settlement Class Members to submit objections or comments regarding the Proposed Class Action Settlement Agreement, which deadline the parties request be fourteen (14) days before the scheduled date of the Final Approval Hearing;

---

[12] As noted above, the Proposed Class Action Settlement Agreement provides that, unless previously provided to Class Counsel, Defendant shall provide this updated list or lists within ten business days after the Court's preliminary approval of this Proposed Class Action Settlement Agreement. *See* **Exhibit A** at Section II.C.1.

(9) Ordering a deadline for Settlement Class Members to give written notice of intent to appear at the Final Approval Hearing, which deadline the parties request be seven (7) days before the date of the Final Approval Hearing; and

(10) Staying any remaining outstanding case management deadlines until further order of the Court.

A proposed order is submitted herewith for the Court's consideration.

Dated:  June 1, 2020.

Respectfully Submitted,


/s/ Andrew H. Turner
Andrew H. Turner
Ellen M. Kelman
The Kelman Buescher Firm
600 Grant Street – Suite 450
Denver, CO 80238
Tel: 303-333-7751
E-mail: aturner@laborlawdenver.com
        ekelman@laborlawdenver.com

APPOINTED COUNSEL TO THE PLAINTIFF CLASS


/s/ Bradford J. Williams
Bradford J. Williams
Brian M. Mumaugh
Holland & Hart LLP
555 17th Street, Suite 3200
Denver, Colorado 80202-3979
Telephone: (303) 295-8121 (Williams)
Telephone: (303) 290-1067 (Mumaugh)
FAX: (303) 223-3271 (Williams)
FAX: (303) 290-1606 (Mumaugh)
E-mail: bjwilliams@hollandhart.com
        bmumaugh@hollandhart.com

ATTORNEYS FOR DEFENDANT DOUGLAS COUNTY SCHOOL DISTRICT RE-1

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2020, I filed the foregoing document via CM/ECF which will effect service upon all counsel of record for Defendant.


*s/ Andrew H. Turner*
Andrew H. Turner
*Class Counsel*

14743884_1