**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 17-cv-01047-MEH

DOUGLAS COUNTY FEDERATION,
KATHERINE N. DORMAN,
CHRISTINA K. THORSEN, and
SUSAN R. FORSYTH,
on their own behalves and on behalf of others similarly situated,

    Plaintiffs,

vs.

DOUGLAS COUNTY SCHOOL DISTRICT RE-1,

    Defendant.

---

**JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

---

Plaintiffs Douglas County Federation ("DCF"), Katherine N. Dorman, Christina K. Thorsen, and Susan R. Forsyth (collectively the "Named Plaintiffs"), and Defendant Douglas County School District RE-1 ("Defendant"), by and through undersigned counsel, and pursuant to Fed. R. Civ. P. 23(e), respectfully request that the Court grant final approval to their Proposed Class Action Settlement Agreement. As grounds for this Joint Motion, the parties state as follows:

## I.     Background and Procedural History.

This case arises from the termination of certain benefits provided by the collective bargaining agreement between the Douglas County School District ("DCSD" or "District") and the Douglas County Federation of Teachers ("DCF" or "Federation") effective from July 1, 2011 through June 30, 2012 ("2011-2012 CBA"). Following the expiration of that CBA, no successor

agreement was reached. The 2011-2012 CBA contained a sick leave bank benefit, which provided sick leave for qualifying employees suffering a lengthy medical absence and whose individual sick and personal leave was exhausted. Following expiration of the 2011-2012 CBA, Defendant replaced the sick leave bank benefit previously provided in that agreement with a Short-Term Disability Insurance ("STDI") policy covering Defendant's teachers. At the time the sick leave bank benefit was discontinued, the bank contained approximately 7,800 unused days.

Plaintiffs initiated this lawsuit on February 15, 2013, in the Douglas County District Court, as Case No. 2013CV00318. Plaintiffs have alleged that Defendant's termination of sick leave bank benefits breached the 2011-2012 CBA, violated the Contracts Clauses of both the United States and Colorado Constitutions, violated the Taking Clauses of both the United States and Colorado Constitutions, and unjustly enriched Defendant through discontinuation of the sick leave bank benefit previously provided in the 2011-2012 CBA. *See* ECF No. 34. Defendant strenuously denies that its actions were unlawful.

Following removal, this Court granted class certification pursuant to Fed. R. Civ. P. 23(b)(3). ECF No. 56. On April 24, 2020, the parties advised the Court that they had arrived at a proposed settlement. *See* ECF No. 82. On June 1, 2020, the parties moved the Court for preliminary approval of their proposed class action settlement agreement. By Order dated June 19, 2020, the Court Granted preliminary approval of the Proposed Settlement Agreement; ordered Class Counsel to distribute the approved Notice and Opt-Out Forms to the identified members of the Plaintiff Class; ordered that any Class Members seeking exclusion submit their Opt-Out Forms within 45 days of mailing; ordered the filing of the instant motion for final approval and attendant certifications; set a Final Approval Hearing for October 1, 2020; ordered that any Settlement Class Members wishing to make written objections to the agreement mail

2

such objections in writing to counsel and the Court by September 17, 2020; and ordered that Settlement Class Members wishing to appear and be heard at the Final Approval Hearing mail notice of such intention by September 24, 2020. ECF No. 85 pg. 1-3.

On July 17, 2020, Class Counsel filed a Notice of Completion of Mailing which certified that the approved Notice and Opt-Out Forms had been mailed to the identified members of the Plaintiff Class on July 17, 2020. ECF No. 86. The Court's Order having established an opt-out deadline of forty-five days after mailing, the bar date for such filings became August 31, 2020.

Class Counsel identified 1,395 class members[1] and completed mailing of the approved Notice and Opt-Out Form ("Notice Packet") to their last known addresses on July 17, 2020. Ex. 1, Affidavit of Anotinette Vega at ¶ 4. The Notices sent were personalized to the class members and informed each of them of the minimum gross payment they could expect to receive were the preliminarily approved agreement to be granted final approval. *Id.* at ¶ 5. Fifteen of the Notice Packets sent were returned with forwarding addresses, and were immediately re-mailed to those forwarding address. *Id. at* ¶ 7. Some 84 notice mailings were returned as undeliverable without forwarding addresses. *Id.* at ¶ 6. Class Counsel hired a private investigator to seek better addresses for those 84 individuals and was successful in updating 81 of the 84 addresses. *Id.* at ¶ 8. On August 20, 2020, Class Counsel mailed the Notice Packet to those 81 updated addresses. *Id.* Ultimately, mailed notice was successfully delivered to 1,381 of the 1,395 identified class members. *Id.* at ¶ 12. This represents a success rate of 98.9%.

The approved Notice which was distributed informed the Class Members that those wishing to opt-out of the preliminarily approved settlement agreement had to return their signed

---

[1] The members of the class are named in Exhibit C to the Parties' Settlement Agreement. ECF No. 84-1 pgs. 45-77.

3

Opt-Out forms to Class Counsel by August 31, 2020.  Ex. 1, Vega Aff. at ¶ 13.  To date, Class Counsel has received five opt-out forms.[2]  *Id.*  This represents an opt-out rate of 0.0036%.  The approved Notice informed the Class Members that any written objections must be filed with the Court and served on counsel for the parties.  To date, Class Counsel has received no such written objections.  *Id.* at ¶ 14.

## II.     The Settlement Agreement is Fair, Reasonable, and Adequate.

Rule 23 class claims may only be settled with the Court's approval.  Fed. R. Civ. P. 23(e).  The authority to approve a settlement of a class action lawsuit is committed to the sound discretion of the trial court, and settlement approval will not be set aside absent an abuse of discretion.  *Jones v. Nuclear Pharmacy, Inc*., 741 F.2d 322, 324 (10th Cir. 1984).  Courts of the Tenth Circuit apply the following factors to determine whether a proposed Rule 23 class action settlement is fair, reasonable, and adequate:

(1) Whether the proposed settlement was fairly and honestly negotiated;

(2) Whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt;

(3) Whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(4) Whether the parties' judgment is that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1188 (10th Cir. 2002).

### 1.     The Proposed Settlement was Fairly and Honestly Negotiated.

This case was litigated exhaustively over the course of seven years.  In that time, the five advisory arbitrations were conducted in which the parties participated, three depositions were taken, and the parties litigated two motions to dismiss, a petition for interlocutory appeal to the

---

[2] The five Class Members to be excluded from this Settlement are named in ¶ 13 of the Affidavit of Antoinette Vega, which is filed as Exhibit 1 to this Joint Motion.

Colorado Supreme Court, and a contested motion for class certification. There can be no doubt that the Settlement Agreement was achieved in the context of legitimate adversarial litigation. Plaintiff and the absent class members were represented by counsel with extensive experience in class action employment litigation. Ex. 2, Turner Aff. at ¶¶ 7-8. The parties took extensive testimony concerning the bargaining history giving rise to the sick leave bank benefit in question. *Id.* at ¶ 12. Class Counsel undertook a painstaking review of classwide short-term disability leave, benefit purchase, and gross salary data to reconstruct the sick leave benefits to which Class Counsel believed the Class Members would have been entitled under the discontinued sick leave bank benefit. *Id.*. Class Counsel retained and utilized the services of an expert in PERA retirement benefits to determine the funds necessary to purchase service credits Class Members contend they lost as a result of Defendant's discontinuation of the sick leave bank benefit. *Id.* The parties consulted at length with PERA's legal department in crafting effective remedies. *Id.* Counsel utilized their experience in similar class employment matters, and thoroughly analyzed the legal and factual issues, as well as each party's level of litigation risk, to arrive at a fair and reasonable settlement agreement.

        **2.**      **<u>Serious Questions of Law Placed the Outcome of the Litigation in Doubt.</u>**

While most facts of this case were generally undisputed, Defendant presented numerous credible legal defenses to liability. Those defenses include the Named Plaintiffs' alleged failure to adequately exhaust administrative remedies as a prerequisite to maintaining their breach of contract claim, and the sick leave bank benefit's expiration along with the remainder of the 2011-2012 CBA in which the benefit was provided. Defendant has contended that a carryover of the sick leave bank benefit beyond the expiration of that CBA would violate C.R.S. § 22-32-110(5). Defendant argued that it could have no Contracts Clause liability because it look no "legislative"

5

act impairing a contract under Plaintiffs' Contracts Clause claims, and that the requirements for a "regulatory taking" were not satisfied for purposes of Plaintiffs' Takings Clause claims. *See, e.g.*, *Khan v. Gallitano*, 180 F.3d 829, 832 (7th Cir. 1999); *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978). Plaintiffs' unjust enrichment claim must confront the existence of the 2011-2012 CBA, covering the same subject matter, which Defendant argued precluded Plaintiffs' ability to bring a separate claim under an unjust enrichment theory. *See, e.g.*, *Interbank Investments, LLC v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814, 816 (Colo. App. 2003). Finally, Defendant submitted that Plaintiffs failed to satisfy certain procedural prerequisites for bringing an unjust enrichment claim against a public entity under the Colorado Governmental Immunity Act ("CGIA"). *See* C.R.S. §§ 24-10-109(1)-(2). While Plaintiffs dispute Defendant's legal arguments, the parties agree that these arguments place the litigation's ultimate outcome in doubt.

### 3.     The Settlement Agreement Provides for the Certain and Immediate Recovery of Fair Value.

As discussed above, the Settlement Agreement eliminates significant litigation risk and provides for prompt recovery at a time when public budgets are especially uncertain. Moreover, the agreed-upon recovery secures significant and fair value for Class Members. Class Counsel contends that the termination of the sick leave bank benefit damaged the Plaintiff Class in four cognizable respects: (1) it damaged those individuals who took short-term disability leaves on Defendant's replacement STDI program and who accordingly were not permitted to use sick leave bank days for those leaves (which would have provided 30-50% more salary replacement, depending on the individual taking leave) during such leaves; (2) it damaged those individuals who took STDI leaves that removed them from Defendant's payroll for entire months at a time and thereby caused such individuals to lose accrual of PERA service credits during such

6

months;[3] (3) it damaged some Class Members who chose to pay premiums out of pocket in order to secure a level of STDI salary replacement benefits equivalent to that they would have been entitled to receive without paying any premium under the discontinued sick leave bank benefit; and (4) it damaged all Class Members who were deprived of the contingent future value of being able to redeem residual, unused days existing in the sick leave bank upon expiration of the 2011-2012 CBA.  Ex. 2, Turner Aff. at ¶ 14.

The $2,560,000 maximum settlement amount agreed upon in the settlement agreement – less deductions totaling $159,000.00 for attorney's fees, administration costs, and class representative incentive awards - will be distributed to Settlement Class Members pursuant to a settlement award calculation methodology provided in the Proposed Class Action Settlement Agreement which is designed to compensate Settlement Class Members in differing amounts (depending on their specific circumstances) in the four categories of alleged damages discussed above.  ECF No. 84-1 at Sections III.G.2.a-d.  These four settlement award calculation methodologies are as follows:

(1) <u>Compensation for Unused Days in the Sick Leave Bank for Settlement Class Members Who Took Sick Leave Under the STDI Policy:</u>  Those Class Members who have taken a short-term disability leave on Defendant's replacement STDI benefit will be reimbursed for the value of sick leave bank days they were not permitted to use during that leave. This reimbursement is equivalent to the number of unused sick leave bank days, calculated at $191.59 per day, required to provide each Settlement Class Member with the same equivalent payments he or she would have received had he or she been permitted to use the unused days in the sick leave bank, rather than Defendant's STDI plan, during his or her applicable leave(s).  For example, those Class Members who received 50% of salary during their STDI leave will be reimbursed for the days necessary to pay them 50% of salary for the (maximum of 48) days on which they could have qualified for the former sick leave bank benefit.  Those Class Members who received 70% of salary during their STDI leave will be reimbursed for the days necessary to pay

---

[3] This alleged category of damages relates to the fact that benefits paid under Defendant's sick leave bank benefit were considered "PERA-includable" salary, meaning they could potentially contribute to the calculation of available PERA retirement benefits for teachers, including PERA service credits, whereas benefits paid under Defendant's STDI policy were not.

them 30% of salary for the days on which they could have qualified for the former sick leave bank benefit.  This recovery represents 100% of the gross payment this group of Class Members could possibly have recovered under Plaintiffs' legal theories.  Indeed, given that 50-70% of their salary was received as a tax free insurance benefit (during the time of their STDI leave) these Class Members will recover more net money than they would have under the sick leave bank benefit.  Any excess can be regarded as compensating them for other alleged damages.  This category of damages accounts for $654,892.96, or 27.28%, of the Total Payout Amount.[4]  Ex. 2, Turner Aff. at ¶14.

(2) <u>Compensation for Lost Future PERA Benefits by Settlement Class Members Who Took STDI Leave:</u>  Reimbursement equivalent to the current purchase price of 1-2 months' worth of Individualized Service Credits (depending upon the length of the applicable leave(s)) for each Settlement Class Member who lost PERA Service Credits by virtue being required to use Defendant's STDI plan, rather than unused days in the sick leave bank, during his or her applicable leave(s).  This purchase price was calculated by Plaintiffs' retained expert utilizing PERA's current pricing formula.  That formula depends upon the individual Class Member's current age, current PERA employment, and highest average salary earned for a PERA employer, *inter alia*.  Class Counsel obtained these calculations for each of the 64 class members who lost PERA monthly service credits during the course of their STDI leaves.  The distribution formula used adds to this purchase price an estimated tax offset of 31.45%, as Class Counsel endeavored to provide these individuals with a net amount adequate to purchase their lost credits from PERA. These 64 Class Members most extensively harmed by the alleged violations of law at issue will receive 100% of the purchase price necessary to buy their lost credits from PERA during calendar year 2020.  This category of damages accounts for $292,605.29 or 12.19% of the Total Payout Amount.  Ex. 2, Turner Aff. at ¶ 14.

(3) <u>Reimbursement of Insurance Premiums for Settlement Class Members Who Bought-Up to 70% STDI Coverage</u>:  All Class Members who paid premium amounts to "buy-up" to 70% coverage under Defendant's STDI plan will be reimbursed all premiums they paid during the class period.  As Defendant has ceased to charge premiums, this amount constitutes all out-of-pocket premiums these Class Members ever paid for STDI coverage.  The Class Members' recovery should be regarded as 100% of possible attainable value for out-of-pocket premiums.  This category of damages accounts for $324,506.69 or 13.53% of the Total Payout Amount.  Ex. 2, Turner Aff. at ¶14.

(4) <u>Compensation for Remaining Unused Days Left in the Sick Leave Bank:</u>  All Class Members will receive a minimum gross payment of $809.31 to compensate them for the loss of a contingent future ability to use the days remaining in the sick leave bank after the value of certain days is paid out pursuant to category 1 above.  This category of damages accounts for $1,128,987.45, or 47.02% of the Total Payout Amount.  After

---

[4] The agreement defines the "Total Payout Amount" as Defendant's $2,560,000 maximum settlement amount less the deductions discussed above for attorneys' fees ($75,000), incentive payments ($80,000), and a credit for Defendant's anticipated costs to be incurred in administering the settlement ($4,000).  *See* ECF No. 84-1 at Section III.G.1.

8

> deduction of the 3,418.2 days awarded in damages category 1 above to compensate for the reduced benefits associated with STDI leaves taken, a hypothetical balance of approximately 4,381.8 days remains in the bank.  This payment compensates Class Members for those days at the rate of $257.65 per day.  The average daily wages earned by a Douglas County teacher (on a 185 day contract) during the class period was approximately $273.70.  By this measure, the Class Members will receive payment of 94.14% of the value of the remaining days.  That value will be divided evenly by all Class Members, all of whom contributed at least one day to the sick leave bank and each of whom was equally entitled to draw upon that collective pool of days.  Ex. 2, Turner Aff. at ¶14.

These damages distribution formulae resulted in the different individual settlement award amounts stated in Exhibit C to the parties' proposed Settlement Agreement, ECF No. 84-1 pgs. 44-77.  The approved Notice distributed to Class Members informed each Class Member of their specific, individual gross minimum damage amounts reflected in Exhibit C.  Ex. 1, Vega Aff. at ¶ 5.  Under the damages distribution formulae above, the absent Class Members will recover minimum gross settlement amounts ranging from $809.31 to $42,294.82.  The average Class Member will recover a minimum gross amount of $1,721.14.  Ex 2, Turner Aff. ¶14.

These listed amounts are subject to increase because five Class Members opted-out of the Proposed Settlement Agreement and their shares of the $2,560,000 maximum settlement amount will be distributed amongst the Plaintiff Class members who did not opt-out.  These listed settlement award figures also do not include any additional payments Settlement Class Members may receive pursuant to any secondary distribution of checks which could potentially be sent by Defendant after the initial distribution of checks if certain Settlement Class Members do not timely cash their checks after the initial distribution (as discussed further below).  *See id*. at Sections II.F.4-5, III.G.II.[5]  The Class Members stand to recover close to 100% of value on all

---

[5] The proposed agreement provides for no reversion of uncashed settlement award checks to Defendant after the initial distribution of checks.  Instead, the agreement provides that, should any settlement award checks not timely be cashed after the initial distribution, the uncashed checks shall be cancelled after 90 days and the funds reflected therein redistributed, on a *pro rata*

claims pled under Plaintiffs' theories. Ex. 2, Turner Aff. at ¶15. The value of immediate recovery provided by the Settlement Agreement militates in favor of final approval. *Rutter & Wilbanks Corp. v. Shell Oil Co.,* 314 F.3d 1180, 1188 (10th Cir. 2002).

### a. The Settlement Agreement Provides Very Modest Attorney's Fees and Reasonable Class Representative Incentive Awards.

The Proposed Class Action Settlement Agreement also provides for Class Counsel to be reimbursed $75,000 for attorneys' fees, and for Named Plaintiffs (in addition to a trust established in connection with a former, and now deceased, Named Plaintiff) to receive $80,000 in incentive payments out of the $2,560,000 maximum gross settlement. The parties believe that such disbursements are fair and reasonable—particularly because the parties have aggressively litigated this case in various fora since early 2013.

Class Counsel has billed a total of 1,1091.8 hours to this litigation over the course of this case. Ex. 2, Turner Aff. at ¶ 12. Lead Class Counsel Andrew H. Turner has billed 906.4 hours to the matter. *Id.* At his customary lodestar rate of $400/hr., Mr. Turner's fee alone would exceed $362,000.00. The proposed attorneys' fee award of $75,000.00 constitutes less than 3% of the entire maximum settlement amount ($2,560,000). *Id.* "A 30% common fund fee award is in the middle of the ordinary 20%-50% range and is presumptively reasonable." *Vaszlavik v. Storage Tech. Corp.*, 2000 U.S. Dist. LEXIS 21140, at *11 (D. Colo. Mar. 9, 2000). This award is below the threshold for a reasonable award and should be approved.

---

basis, to Settlement Class Members who do timely cash their settlement award checks (the "Participating Settlement Class Members," as defined under the agreement). *See* **Exhibit A** at Section II.F.3-6. Only if any settlement award checks remain uncashed 90 days after any secondary distribution of funds shall those unclaimed funds revert to Defendant. *See id.* at Section II.F.5.

"Courts have held that incentive awards are an efficient and productive way to encourage members of a class to become class representatives, and to reward the efforts they make on behalf of the class." *Lucken Family Ltd., P'ship, LLLP v. Ultra Res., Inc.*, 2010 WL 5387559, at *6 (D. Colo. Dec. 22, 2010). In assessing the reasonability of incentive awards, the Court should consider "the amount of time and effort the class representative expended in pursuing the litigation." *Shaw v. Interthinx, Inc.*, 2015 WL 1867861, at *8 (D. Colo. Apr. 22, 2015). In this case, the three current Class Representatives and a former, now deceased, Class Representative, Sarah Staebell, participated in all proceedings in this matter since its inception in early 2013, including arbitrations, Case Management Conferences, private mediations, and depositions. The Named Plaintiffs (and former, and now deceased Named Plaintiff) who will receive incentive awards under the proposed agreement have all devoted considerable time, attention, and effort to this matter since early 2013. Ex. 2, Turner Aff. at ¶ 13. Now-deceased Class Representative Staebell did so while terminally ill. *Id.* The $80,000.00 in incentive awards provided by the Settlement Agreement is appropriate given the $2,560,000 maximum settlement these Class Representatives helped secure for the class over the course of seven years.

### 4. It Is the Parties' Judgment That the Settlement Is Fair and Reasonable.

The Parties, with the advice of experienced counsel, are confident that the settlement is fair and reasonable. Ex. 2, Turner Aff. at ¶ 13. The Court should approve the settlement as fair and reasonable for the purposes of Rule 23. *See Albu v. Delta Mech. Inc.*, No. 13-cv-03087-PAB-KMT, 2015 U.S. Dist. LEXIS 95485, at *9 (D. Colo. June 30, 2015) (citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1354) (noting that settlement agreements negotiated at arm's-length by experienced counsel are entitled to "a presumption of fairness").

### III.  Conclusion

For all of the reasons stated above, Plaintiffs and Defendant jointly request the Court grant their joint motion and enter an order that:

1. Grants final approval of the Stipulation and Agreement of Settlement (the "Settlement Agreement"), ECF No. 84-1, as fair, reasonable, and adequate within the meaning of F.R.C.P. 23(e)(2);

2. Grants final certification of the F.R.C.P. 23(b)(3) class preliminarily certified by the Court's Order dated January 11, 2018, ECF No. 56;

3. Finalizes the appointment of Class Counsel and of the Class Representatives as identified in ECF No. 56;

4. Orders execution of and compliance with the Settlement Agreement;

5. Orders, upon the Effective Date, as defined in the Settlement Agreement, that the Named Plaintiffs and Settlement Class Members, as defined in that agreement, release all Released Parties from all Released Claims, as those terms are defined in the Settlement Agreement;

6. Dismisses all claims that have been asserted by the Named Plaintiffs and the Settlement Class Members, as defined in the Settlement Agreement, or that relate in any way to the sick leave bank, or the termination thereof, with prejudice as stipulated in the Settlement Agreement; and

7. Orders the parties to bear their own fees and costs, with the exception of those provided for in the Settlement Agreement.

A proposed order is submitted herewith for the Court's consideration.

Dated September 15, 2020.

Respectfully Submitted,

*/s/ Andrew H. Turner*
Andrew H. Turner
Ellen M. Kelman
The Kelman Buescher Firm
600 Grant Street – Suite 450
Denver, CO 80238
Tel: 303-333-7751
E-mail: aturner@laborlawdenver.com
　　　　ekelman@laborlawdenver.com

**CLASS COUNSEL**

*/s/ Bradford J. Williams*
Bradford J. Williams
Brian M. Mumaugh
Holland & Hart LLP
555 17th Street, Suite 3200
Denver, Colorado 80202-3979
Telephone: (303) 295-8121 (Williams)
Telephone: (303) 290-1067 (Mumaugh)
FAX: (303) 223-3271 (Williams)
FAX: (303) 290-1606 (Mumaugh)
E-mail: bjwilliams@hollandhart.com
　　　　bmumaugh@hollandhart.com

**ATTORNEYS FOR DEFENDANT DOUGLAS COUNTY SCHOOL DISTRICT RE-1**

13

**CERTIFICATE OF SERVICE**

I hereby certify that on September 15, 2020, I filed the foregoing document via CM/ECF which will effect service upon the following:

Bradford J. Williams
Brian M. Mumaugh
Holland & Hart LLP
555 17th Street, Suite 3200
Denver, Colorado 80202-3979
Telephone: (303) 295-8121 (Williams)
Telephone: (303) 290-1067 (Mumaugh)
FAX: (303) 223-3271 (Williams)
FAX: (303) 290-1606 (Mumaugh)
E-mail: bjwilliams@hollandhart.com
　　　　bmumaugh@hollandhart.com

**ATTORNEYS FOR DEFENDANT DOUGLAS COUNTY SCHOOL DISTRICT RE-1**

　　　　　　　　　　　　　　　　　　*/s/ Andrew H. Turner*
　　　　　　　　　　　　　　　　　　Andrew H. Turner